# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FLIGHTAWARE LLC,

               Plaintiff,

     - against -

KALSHI INC., KALSHIEX LLC, KALSHI KLEAR
INC., and KALSHI KLEAR LLC,

             Defendants.

Case No.: 1:26-CV-6824

---

**DECLARATION OF IAN GALLOWAY IN SUPPORT OF PLAINTIFF'S**
**ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING**
**ORDER AND PRELIMINARY INJUNCTION**

I, Ian Galloway, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am Ian Galloway, Executive Director of Application and Connectivity Solutions at Collins Aerospace, and my portfolio of programs includes FlightAware, the Plaintiff in the above-captioned action. I submit this declaration in support of FlightAware's Motion by Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction. I have personal knowledge of the matters discussed in this declaration, and, if called as a witness, I could and would testify competently to the matters discussed herein.

2.      FlightAware was founded in 2005, acquired by Collins Aerospace in 2021, and has been under my purview since 2023. I am responsible for overseeing a FlightAware team of approximately 90 professionals working to support, maintain, and expand FlightAware's global operations and data network.

3.      FlightAware is a digital aviation company that operates the world's largest flight tracking platform. FlightAware provides global flight tracking solutions, predictive technology,

analytics, and decision-making tools to more than 10,000 aircraft operators and service providers, as well as over 13,000,000 passengers, through its website and mobile application.

4.    In addition to geolocation information, FlightAware provides its users with information derived from flight plans for particular airline routes as well as timeliness performance statistics for completed flights.

## I.    FlightAware's Collection, Aggregation, and Transformation of Data

5.    FlightAware receives the data enabling its operations from a complex network of sources. First, FlightAware receives aircraft location data from Automatic Dependent Surveillance-Broadcast ("ADS-B"), which is a technology by which an aircraft in flight publicly broadcasts its position to recipients with technology to receive such broadcast. FlightAware has grown and maintains a network of over 40,000 physical antennas around the world to receive this information.

6.    Where FlightAware terrestrial receptors cannot be deployed to receive ADS-B data, such as over the ocean or in geopolitically unstable regions, FlightAware licenses ADS-B data from commercial entities with satellite receivers that can receive ADS-B data in those locations. These commercial entities license their ADS-B data to FlightAware in exchange for payment pursuant to a contract between the companies. By the terms of those contracts, FlightAware incorporates third-party data (subject to certain contractual limitations on its use of that data) alongside its other data sources.

7.    FlightAware also supplements ADS-B data with flight status and filed flight plan information. FlightAware receives flight status information directly from airlines, who are often customers of FlightAware, benefitting from FlightAware's aggregation of the data themselves. In addition, FlightAware receives filed flight plan data from government entities such as the Federal

2

Aviation Administration ("FAA"), the European Organization for the Safety of Air Navigation ("Eurocontrol"), and more than 40 additional Air Navigation Service Providers ("ANSP"). To receive flight plan data, FlightAware relies on airlines' voluntary disclosure of plans and ANSP permission to access flight feeds, which can be revoked, and have different stipulations on use.

8. FlightAware also has a commercial agreement with other aggregators of flight status information, to supplement the quality of various data elements. These agreements place certain limitations on FlightAware's use of the subject data.

9. Maintaining access to flight plan information is critical to FlightAware's operations. FlightAware informs commercial airlines and passengers not only of the active location of aircraft, but also about their planned routes, data that cannot be obtained solely through public sources. Additionally, flight plans provide information where FlightAware's ability to receive ADS-B information is limited.

10. After receiving flight plan information from airlines and regulators and ADS-B data from FlightAware's internal network and third parties, FlightAware invests heavily in compiling, evaluating, and aggregating the data through its proprietary process before securely providing it to customers and the public. FlightAware employs a team of approximately 75 software engineers, data analysts, IT infrastructure engineers, and other technicians to facilitate this process.

11. Although ADS-B data is publicly available, FlightAware's competitive advantage lies in the investments it makes in maintaining comprehensive data sources through mutually beneficial relationships with its airline customers, verifying the accuracy of that data, and synthesizing it for consumption by its customers and the public.

12. In connection with its provision of a database with comprehensive flight tracking information, FlightAware has a registered trademark, FlightAware®.

## II.    FlightAware's Policies Regarding Third Parties' Access to Data

13.    FlightAware provides certain limited data to the public through its website. The Terms of Use governing use of FlightAware's public data (and the website itself) are hyperlinked at the foot of every page of the website. The Terms of Use make it clear that, by accessing the website, the user "agree[s]" to have "read, understood, and have become legally bound by" the Terms. Ex. 1, FlightAware Terms of Use (dated July 16, 26).

14.    The Terms of Use have been in operation since 2008, and, since 2024, have specified the following:

   a. **Term 9**: "You may not modify the Website or any materials in any way, reproduce, publicly display, perform, distribute, create derivative works of, or otherwise use the Website and any materials for any public or commercial purpose, except as otherwise specifically permitted herein."

   b. **Term 11**: "You may not use the Website for any aviation, commercial, operational, law enforcement, judicial, or safety-critical activity that relies on the availability, validity, or accuracy of FlightAware data."

   c. **Term 19**: "All no-charge, web-based FlightAware products, APIs, and data are licensed solely for personal use, and you may not use them for any other purpose."

*Id.* Previous versions of the Terms of Use contained substantially similar provisions. Ex. 2, FlightAware Terms of Use (dated March 21, 2021) at Terms 7 and 12. FlightAware's Terms of Use have always forbidden commercial uses of the data FlightAware makes publicly available to users without AeroAPI Premium accounts. *Id.*

15.    Although FlightAware's existing terms already prohibited Kalshi from using FlightAware's data to run a commercial prediction market, FlightAware amended the Terms of Use on July 16, 2026, to eliminate any unfounded claim that prediction markets fell outside those restrictions. The updated terms specify that the user "shall not use . . . FlightAware products, API, and any data licensed through FlightAware products, any analyses, models, or other outputs

derived from the Website, FlightAware products, API, and any data licensed through FlightAware

products, in connection with any betting, wagering, gambling, prediction market, event contract,

or similar platform or product that enables participants to place, trade, or settle positions based on

the occurrence or outcome of future events." *Id.* at Term 20.

16.    FlightAware users may sign up for a free user account by signing up through

Google, Apple, or by using their email address. Every user is required to click to manifest their

assent to those Terms of Use before creating an account:

 

17.    FlightAware users may additionally access FlightAware's application

programming interface ("API") by signing up and creating an "AeroAPI" account. Accessing

FlightAware's API allows users to access more detailed raw data for manipulation and analysis.

There are three tiers of AeroAPI accounts: Personal, Standard, and Premium. Each tier carries

different privileges and permissions as detailed by the relevant License Agreement that the user

must agree to at the time of subscription.

18.    A Personal AeroAPI account is free to use. The "Personal" licensing agreement clearly states that the licensee may "[u]se AeroAPI data . . . for personal purposes and projects only," and shall not "[u]se AeroAPI and AeroAPI Data in furtherance of any business, whether for profit or otherwise." Ex. 3, AeroAPI Personal License Agreement (dated July 2026).

19.    Previous versions of the Personal AeroAPI Personal License Agreement contained similar provisions. Ex. 4, AeroAPI Personal License Agreement (dated February 2022) (authorizing "solely . . . personal, home, recreational, or academic uses" and prohibiting "[u]se [of] AeroAPI in furtherance of any business, whether for profit or otherwise.").

20.    Standard and Premium AeroAPI accounts require the user to pay FlightAware for access to the data, and, in exchange, offer certain permissions to users not granted to Personal AeroAPI account holders.

21.    On July 16, 2026, FlightAware updated the Personal License Agreement to specify that the holder of a Personal License Agreement "[s]hall [n]ot . . . use AeroAPI [or] AeroAPI data . . . in connection with any betting, wagering, gambling, prediction market, event contract, or similar platform or product." Ex. 3, AeroAPI Personal License Agreement (dated July 2026).

22.    When a user creates an AeroAPI account of any tier, the user must accept FlightAware's general Terms of Use, which are hyperlinked next to the box indicating agreement. The user cannot create an account without agreeing to the Terms of Use. The below images show the User Creation page, demonstrating a user cannot "Finish" account registration until they accept the Terms of Use.



23.     Once the user accepts the Terms of Use, they are redirected to a page confirming that they agree to the AeroAPI Personal License and FlightAware's Terms and Conditions. FlightAware's Terms and Conditions also "govern the sale, delivery, acceptance, and subsequent use of FlightAware Data and services." On July 16, 2026, FlightAware updated the Terms and Conditions to prohibit using FlightAware's data "in connection with any betting, wagering, gambling, prediction market, event contract, or similar platform or product that enables participants to place, trade, or settle positions based on the occurrence or outcome of future events." Ex. 5, FlightAware Terms and Conditions (dated July 16, 2026).

24.     Again, as shown below, the user cannot proceed to their account until they accept both the terms of the AeroAPI Personal License and the Terms and Conditions.





## III.    FlightAware's Mark and Reputation

25.    FlightAware owns the federally registered FlightAware trademark, United States Registration No. 3,222,789. FlightAware applied to register the FlightAware mark on May 31, 2006, and the United States Patent and Trademark Office registered the mark on the Principal Register on March 27, 2007. Ex. 6, Certificate of Registration, No. 3,222,789. The registration covers commercial and non-commercial flight-tracking services.

26. Since at least 2005, FlightAware has continuously and exclusively used the FlightAware mark in connection with its flight-tracking, flight-information, and aviation-data services. FlightAware has offered those services under the FlightAware mark to commercial airlines, aircraft operators, aviation professionals, travelers, media organizations, and other members of the public throughout the United States and around the world.

27. In 2012, after more than five consecutive years of continuous use following registration, FlightAware filed a Combined Declaration of Use and Incontestability under Sections 8 and 15 of the Lanham Act. Ex. 7, Combined Declaration of Use and Incontestability No. 3,222,789.

28. FlightAware also owns United States Registration No. 6,105,770 for the stylized FlightAware mark. The registered mark consists of the word FlightAware together with an airplane-and-flight-path design incorporated into the lettering. The registration issued on July 21, 2020, and covers services in Classes 38, 39, and 42. Ex. 8, Certificate of Registration No. 6,105,770.

29. Those services include providing access to online databases containing flight-tracking and air-transportation information; providing flight and aircraft tracking, flight-status, and historical-flight data; providing flight-tracking information through websites and mobile applications; providing API software through which users may obtain flight-tracking data; and providing software for analyzing, mining, and reporting such data. FlightAware has used the registered mark in commerce in connection with those services since at least December 5, 2006. In 2026, FlightAware filed a Combined Declaration of Use and Incontestability under Sections 8 and 15 of the Lanham Act for Registration No. 6,105,770. Ex. 9, Combined Declaration of Use and Incontestability, No. 6,105,770.

9

30.    FlightAware has invested substantial resources in developing, maintaining, and promoting the services offered under the FlightAware mark. Those investments include the extensive physical and technological infrastructure, commercial relationships, and personnel described above, all of which enable FlightAware to provide accurate and comprehensive aviation information to its customers and the public.

31.    The services offered under the FlightAware mark have achieved substantial commercial success and are used by millions of people. On average, approximately 6.34 million unique users visit FlightAware's website each week. Those users generate approximately 15 million events and 50 million page views each week. FlightAware has already recorded approximately 183 million website events and 610 million website page views during calendar year 2026.

32.    FlightAware's mobile application likewise has a substantial user base. Across the iOS and Android platforms, approximately 1.1 million unique users accessed the application during a recent seven-day period, and approximately 2.5 million unique users accessed it during a recent thirty-day period. FlightAware also distributes a weekly newsletter to approximately 7.49 million recipients.

33.    FlightAware's strong reputation is also reflected in the reviews of its mobile application. The application has a 4.9-out-of-5 rating in Apple's App Store based on approximately 380,000 ratings.



34.    Reviewers repeatedly praise FlightAware as accurate, reliable, and authoritative, describing it as the "best app in the business," the "most reliable" source of updated flight information, and more current than airline applications and airport flight boards. Other reviewers emphasize that FlightAware delivers comprehensive information quickly and accurately. Exemplary reviews appear below. These reviews further reflect the broad recognition of the FlightAware mark and the public's association of that mark with accurate and dependable flight information.

.

**The Best and Always Accurate! Amazing!!!**

★★★★★ Dec 28 · Houner

The very best flight app! I could not live without it!!

**Best app in the business**

★★★★★ 2y ago · IDrivePrivate

Most reliable, updated flight information available in this market!

**The best**

★★★★★ Mar 18 · Cubsarmy

I've tried the other flight info apps this is just all around awesome it supplies info quick

**Flight tracker**

★★★★★ Sep 19 · Nelly502ky

I am Nelson and I am in transportation and using this app to track airline flights or private flights is amazing and correct and I love this app Thanks

**The best I've found**

★★★★★ Feb 3 · DAZ1986Ely

Easy to use, bundles of information, incredibly accurate.

**The Best Flight Companion**

★★★★★ Sep 11 · Jersey Girl 1948

This App. is accurate and has saved me from missing a flight when the gate changed. FA's updates appear sooner than the airport flight boards.

It's also great when picking up passengers at the airport.

35.     FlightAware also distributes a weekly newsletter to approximately 7,488,437 recipients. In addition, as discussed above, FlightAware provides its services to more than 10,000 aircraft operators and service providers and more than 13 million passengers worldwide

36.     FlightAware has a strong history of excelling at integration arrangements, as evidenced by the number of media sites using FlightAware as well as other partnerships, such as being the official flight tracking service of the Boeing 787 and Boeing 747-8. Such uses further expose consumers to the FlightAware mark and reinforce its association with accurate and reliable aviation information.

37.     As a result of FlightAware's widespread, continuous, and exclusive use of the FlightAware mark, the commercial success of its services, and the mark's exposure to millions of users, FlightAware has acquired valid and subsisting federal and common-law rights to the marks, together with substantial goodwill. FlightAware has filed declarations of incontestability under Section 15 of the Lanham Act for both federal registrations. Travelers, aviation professionals,

12

aircraft operators, airlines, data providers, and media organizations recognize the FlightAware mark as identifying a single source of flight-tracking and aviation-information services. Those users associate the FlightAware mark with accurate, reliable, neutral, and authoritative aviation information.

38.    The FlightAware mark embodies substantial and valuable goodwill. FlightAware's customers, data providers, and members of the traveling public rely on FlightAware and the FlightAware mark as trusted sources of accurate aviation information. FlightAware's business depends on the accuracy and reliability of its information and on the trust of its customers, data providers, and the traveling public.

39.    FlightAware's role is to collect, verify, and report aviation information accurately and objectively. FlightAware has no financial interest in whether any particular flight is timely, delayed, or cancelled, and the accuracy of its reporting does not depend on any particular outcome. Airlines, aircraft operators, aviation professionals, media organizations, and travelers rely on FlightAware to provide an independent account of flight locations, delays, and cancellations when making operational, travel, and reporting decisions.

40.    FlightAware's reputation for neutrality and reliability depends in part on its independence from the aviation events it reports. FlightAware does not encourage, reward, or provide financial incentives for any person to cause a flight to be delayed or cancelled.

41.    FlightAware has carefully protected the reputation associated with the FlightAware mark. FlightAware does not authorize the use of the FlightAware mark in connection with betting, wagering, gambling, prediction markets, or other products that create incentives to interfere with aviation operations.

13

42.     FlightAware has never operated, sponsored, promoted, or participated in a market that permits customers to wager on whether flights will be delayed or cancelled. Nor has FlightAware authorized any person to use the FlightAware mark to solicit or resolve such wagers.

43.     FlightAware's reputation and the recognition of the FlightAware mark have led third parties to invoke FlightAware's name or copy FlightAware's website in attempts to lend legitimacy to their own activities. In 2006, for example, a company called Connect-A-Jet publicly claimed that it was affiliated with FlightAware and other established aviation companies, even though FlightAware had no relationship with Connect-A-Jet and had not authorized it to make that claim. FlightAware has encountered other unauthorized uses of its name, mark, website, and content. For example, in 2021, one website reproduced FlightAware's ADS-B webpage, including FlightAware's branding, navigation, text, graphics, and copyright notice, in a manner that made the website appear to be operated by FlightAware. FlightAware investigated these unauthorized uses and took steps to protect its rights and preserve its control over the FlightAware mark.

## IV.    Misconduct Giving Rise to the Action

44.     On July 14, 2022, Kalshi signed up for a Personal AeroAPI account, and accepted FlightAware's Personal Licensing Agreement, Terms of Use, and Terms and Conditions. Ex. 10, Kalshi User Account; Ex. 11, Kalshi AeroAPI User Account. Kalshi has never held a Standard or Premium AeroAPI account.

45.     As described above, Kalshi could not have completed registration for its AeroAPI Personal Account until it accepted the Terms of Use, Terms and Conditions, and AeroAPI Personal License Agreement.

46.     FlightAware records additionally show that, on July 14, 2026, a Kalshi employee named Casey Breen created a FlightAware account. Ex. 12, Casey Breen User Account. As

14

described above, Mr. Breen could not have completed registration for his User Account until he Accepted the Terms of Use.

47.    On July 14, 2026, Kalshi filed a self-certification with the U.S. Commodities Futures Trading Commission ("CFTC") that would enable it to solicit bets on the percentage of scheduled flights that would be cancelled in a particular time period. Ex. 13, Kalshi CFTC Self-Certification (dated July 14, 2026). It represented to the CFTC and to the public that it would rely on FlightAware data to "settle" the outcome of those betting markets.

48.    FlightAware had no knowledge of Kalshi's CFTC self-certification, nor the existence of these betting markets, until national media outlets contacted FlightAware for comment on July 15, 2026.

49.    After learning of Kalshi's plan to rely on FlightAware's data to settle betting markets based on flight cancellations, FlightAware investigated further and discovered that, on July 11, 2022, Kalshi had filed three self-certifications with the CFTC that enabled it to solicit bets on the number of delayed or cancelled flights at JFK, ORD, and LAX airports on a specific date. Ex. 14, Kalshi CFTC Self-Certification for JFK (dated July 11, 2022); Ex. 15, Kalshi CFTC Self-Certification for ORD (dated July 11, 2022); Ex. 16, Kalshi CFTC Self-Certification for LAX (dated July 11, 2022). FlightAware had no knowledge of these self-certifications at the time they were filed.

50.    Kalshi currently offers online betting markets for the aggregate number of flights in the United States, using FlightAware data to verify the outcome of the bets. Ex. 17, Kalshi "US flight cancellations for the week ending at 5pm EDT on 7/17" webpage (last visited Aug. 10, 2026); Ex. 18, Kalshi "US flight cancellations for the week ending at 5pm EDT on 7/24" webpage (last visited Aug. 10, 2026); Ex. 19, Kalshi "US flight cancellations for the week ending at 5pm

15

EDT on 7/31" (last visited Aug. 10, 2026); Ex. 20, Kalshi "US flight cancellations for the week ending at 5pm EDT on 8/7" webpage (last visited Aug. 10, 2026); Ex. 21, Kalshi "US flight cancellations for the week ending at 5pm EDT on 8/14" webpage (last visited Aug. 10, 2026); Ex. 22, Kalshi "Will at least 50% of scheduled flights at JFK be cancelled on October 21, 2026?" (last visited Aug. 10, 2026). At least one such bet took place as early as April 2026. Ex. 23, Kalshi "US flight cancellations for the week ending at 5pm EDT on 4/20" webpage (last visited Aug. 10, 2026). On each page, Kalshi represents that the "[o]utcome [is] verified from FlightAware" and that a flight counts as cancelled only if it is "classified as cancelled by FlightAware as of the expiration time."

51.    Immediately upon learning of Kalshi's unauthorized use of FlightAware's data, FlightAware cancelled Kalshi's Personal AeroAPI account and sent Kalshi a cease-and-desist letter demanding that Kalshi stop using FlightAware's data in violation of FlightAware's Terms of Use, Terms and Conditions, and AeroAPI Personal License. FlightAware also notified Kalshi that its conduct constituted trademark infringement. Ex. 24, July 15, 2026, Cease and Desist Letter.

52.    Kalshi refused to stop offering these markets in its response to FlightAware's cease-and-desist letter, Ex. 25, July 17, 2026, Response to Cease and Desist Letter. It has since persisted in its unauthorized use of FlightAware's data. *See* Ex. 17–22 (Kalshi webpages using FlightAware data after receipt of cease-and-desist letter).

53.    FlightAware sent a reply on July 21, 2026, emphasizing the illegality of Kalshi's conduct and reiterating its demand that Kalshi cease using FlightAware's data and mark. Ex. 26, July 21, 2026, Reply to Response to Cease and Desist Letter. And on July 30, 2026, Kalshi indicated its intention to continue using FlightAware's data and mark. Ex. 27, July 30, 2026 Response to Cease and Desist Letter.

16

54.    As discussed above, although FlightAware's Terms of Use, Terms and Conditions, and AeroAPI Personal License have prohibited the use of FlightAware's public data for commercial purposes since 2008, FlightAware added Term 20 to its Terms of Use upon learning of Kalshi's unauthorized use of its data on July 16, 2026. Term 20 specifically prohibits users from using FlightAware's data "in connection with any betting, wagering, gambling, prediction market, event contract, or similar platform or product." Ex. 1, FlightAware Terms of Use (dated July 16, 2026).

55.    Kalshi's use of FlightAware's data to "verify" the outcome of bets placed on its platform violate FlightAware's AeroAPI Personal License and Terms of Use, including Terms 9, 11, 19, and 20.

56.    There was considerable national news coverage of Kalshi's gambling operation in reliance on FlightAware's data.

**V.    Kalshi's Illicit Use of FlightAware's Data Harms FlightAware.**

57.    On the page for where Kalshi solicits bets on "US flight cancellations," Kalshi states that the "[o]utcome [is] verified from FlightAware," and provides a link to FlightAware's website. Ex. 17–23 (Kalshi webpages referencing FlightAware data). As a result, FlightAware is presently subject to ongoing irreparable harm to its reputation because of Kalshi's public—and unauthorized—reliance on FlightAware's data.

58.    Kalshi's proposed market for bets on airline delays has been met with a wide public outcry, with numerous online commenters noting the safety risks posed by incentivizing speculators and bad actors to cause airline delays to profit from bets they place. FlightAware is suffering irreparable harm to its reputation as commenters mistakenly assume that FlightAware is sponsoring or otherwise collaborating with Kalshi in establishing these markets.

17

59.     As a company whose business depends on the safety and integrity of aviation, FlightAware is facing imminent and irreparable harm by having its data and name associated with conduct that could compromise flight operations and passenger safety.

60.     Additionally, as national news sources discussed in their reports on Kalshi's proposed flight delay prediction market, Kalshi is the target of numerous state and federal lawsuits alleging it runs an illegal gambling operation. FlightAware is suffering reputational harm by being unwillingly associated with Kalshi's business, which many consumers and regulators view as illegal gambling.

61.     Kalshi's use of FlightAware's data is also harmful to the public. FlightAware's data is used by airlines and other aviation professionals in connection with the operation of air travel. A market that allows the public to wager on whether flights will be delayed or cancelled creates an incentive for participants to interfere with air travel—including by causing or contributing to flight delays—to profit from their wagers. Worse, wagers on flights being timely may incentivize airline, airport, or other aviation workers to cut corners to impact a flight's schedule. It could also dampen flight information sharing in the industry, which would negatively impact FlightAware, passengers, and other stakeholders. All of this conduct could threaten the safety, credibility, and reliability of the U.S. airline industry, an industry which serves approximately 2.5 to 3 million passengers each day.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 10, 2026 in Charlotte, North Carolina.

Ian Galloway

18

# EXHIBIT 1

Case 1:26-cv-06824-AS     Document 1-1     Filed 08/10/26     Page 21 of 199

Menu

# Legal

Privacy Notice     **Terms of Use**

Introduction ▼

Welcome to FlightAware.com. FlightAware.com ("Website") is provided, owned, and operated by FlightAware LLC ("FlightAware"), including its affiliates, as an on-line service subject to your acceptance of the terms and conditions set forth in this agreement (the "Agreement"). The Agreement governs all use of the Website and all content, services and products available at or through the Website or FlightAware applications for mobile, or use of software provided by FlightAware, including, but not limited to, the FlightAware Discussions site (collectively, "FlightAware Services").

Please read this Agreement carefully before accessing, browsing or using the Website and FlightAware Services. By accessing or using the Website and FlightAware Services, you agree that you have read, understood and have become legally bound by the following terms and conditions. If you do not agree to these terms and conditions do not access or use this Website

# Privacy

Please review our Privacy Notice, which also governs your use of the Website and FlightAware services.

# Limited License

Subject to the terms and conditions set forth herein and all applicable local laws and regulations, FlightAware grants you a revocable, non-exclusive, non-transferable, personal, limited license to access, use and display this Website. This license is not a transfer of title of the Website or materials contained herein and this license is expressly subject to the following restrictions:

1. You must retain all copyright and other proprietary notices on all copies of the Website.
2. You may not disguise the origin of your connection to the Website.
3. You may not provide false or inaccurate information to the Website.
4. You may not use the Website for the purpose of conducting illegal activity.
5. You may not abuse the Website with spam, including self-promotion, in any user contributed content.
6. You may not access the Website in any way that intentionally affects or negatively impacts the performance or reliability of the Website.
7. With the exception of FlightAware data feeds and APIs, you may only access the Website with a human-operated interactive web browser and not with any program, collection agent, or "robot" for any purpose, including the purpose of automated retrieval, display of content, or "scraping" of data or information.
8. You may not combine or integrate the Website with hardware, software or other technology not provided to you by FlightAware specifically for use with this Website.
9. You may not modify the Website or any materials in any way, reproduce, publicly display, perform, distribute, create derivative works of, or otherwise use the Website and any materials for any public or commercial purpose, except as otherwise specifically permitted herein.
10. You may not decompile, disassemble, reverse engineer or otherwise attempt to obtain or perceive the source code from which any software component of the Website are compiled or interpreted, and you acknowledge that nothing in this Agreement will be construed to grant you any right to obtain or use such code.
11. You may not use the Website for any aviation, commercial, operational, law enforcement, judicial, or safety-critical activity that relies on the availability, validity, or accuracy of FlightAware data.
12. If you create an account on the Website, you are responsible for maintaining the security of your account and you are fully responsible for all activities that occur under the account. You must immediately notify FlightAware of any unauthorized uses of your account or any other breaches of security. FlightAware will not be liable for any acts or omissions by you, including any damages of any kind incurred as a result of such acts or omissions.
13. If you post material to the Website, post links on the Website, or otherwise make (or allow any third party to make) material available by means of the Website (any such material, "Content"), You are entirely responsible for the contents of, and any harm resulting from, that Content. That is the case regardless of whether the Content in question constitutes text, graphics, an audio file, or computer software.
14. If you post Content on the Website, you grant permission to others through the Privacy Notice to see, share, edit, copy and download that Content. You grant to FlightAware, its affiliates, successors, and assigns a perpetual, worldwide, non-exclusive, sublicensable, no-charge, royalty-free, irrevocable license to use, reproduce, prepare derivative works of, publicly display, publicly perform, sublicense, and distribute all Content. This license survives termination of this Agreement by any party, for any reason.
15. You may not allow any other person or party to gain access to or use the Website, including using the Website in any time-sharing or services bureau arrangement, including, without limitation, any use to provide services or process data for the benefit of, or on behalf of, any third party.
16. You may not use the Website or any materials to design, manufacture or repair parts, or obtain FAA or other government approval to do so without FlightAware's express, written permission.
17. You are responsible for taking precautions as necessary to protect yourself and your computer systems from viruses, worms, Trojan horses, and other harmful or destructive content.

18. You represent and warrant that (i) your use of the Website will be in strict accordance with the FlightAware Privacy Notice, FlightAware Discussions FAQ, with this Agreement and with all applicable laws and regulations (including without limitation any local laws or regulations in your country, state, city, or other governmental area, regarding online conduct and acceptable content, and including all applicable laws regarding the transmission of technical data exported from the country in which this website resides or the country in which you reside), and (ii) your use of the Website will not infringe or misappropriate the intellectual property rights of any third party.

19. All no-charge, web-based FlightAware products, APIs, and data are licensed solely for personal use, and you may not use them for any other purpose. Any products, APIs, and data, for which you pay FlightAware may be used solely in accordance with the specific terms of any additional license provided to you at the time of purchase. FlightAware products (including Enterprise WX, FlightAware Global, and Aviator) containing weather provided by DTN may only be used for personal and internal business purposes. You may not reproduce, publish, or distribute any FlightAware product, API, or data, or make any commercial use of those products, APIs, or data, unless FlightAware has granted you an express license that allows you to do so.

20. You shall not use, or permit any third party to use, directly or indirectly, the Website, FlightAware products, API, and any data licensed through FlightAware products, any analyses, models, or other outputs derived from the Website, FlightAware products, API, and any data licensed through FlightAware products, in connection with any betting, wagering, gambling, prediction market, event contract, or similar platform or product that enables participants to place, trade, or settle positions based on the occurrence or outcome of future events. Any such use constitutes a material breach of this Limited License.

# Disclaimers

1. FlightAware has the right, but not the obligation, to moderate any and all conversations, discussions, topics, posts, and images, in the discussion forums, photo system, or squawks section without prejudice.

2. FlightAware may choose to refuse service, account privileges, or access to any individual at any time without explanation or justification.

3. FlightAware makes no representations about the results to be obtained from using FlightAware. Any use is at your own risk.

4. FlightAware has not reviewed, and cannot review, all of the material, including computer software, posted to the Website, and is not responsible for that material's content, use or effects.

5. FlightAware provides this Website and its contents on an "as is" basis and makes no representations or warranties of any kind with respect to this Website or its contents.

6. FlightAware disclaims any and all warranties, either express or implied, statutory or otherwise, including but not limited to the implied warranties of merchantability, non-infringement of third parties' rights, and fitness for any purpose. FlightAware makes no representations or warranties about the accuracy, completeness, security, or timeliness of the content, information, or services provided on or through the use of FlightAware. No information obtained by you from FlightAware shall create any warranty not expressly stated by FlightAware.

7. This Website is provided with no "service level agreement" unless expressly negotiated in a writing signed by the parties.

8. FlightAware disclaims any responsibility for any harm resulting from the use by visitors of the Website, or from any downloading by those visitors of content there posted. The Website may contain content that is offensive, indecent, or otherwise objectionable, as well as content containing technical inaccuracies, typographical mistakes, and other errors. The Website may also contain material that violates the privacy or

Case 1:26-cv-06824-AS    Document 1-1    Filed 08/10/26    Page 24 of 199

publicity rights, or infringes the intellectual property and other proprietary rights, of third parties, or the downloading, copying or use of which is subject to additional terms and conditions, stated or unstated.

9. You are responsible for taking precautions as necessary to protect yourself and your computer systems from viruses, worms, Trojan horses, malware and other harmful or destructive content.

# Changes

All content contained herein is subject to change without notice. FlightAware reserves the right to change or modify the terms and conditions applicable to the use of this Website at any time. Such changes, modifications, additions, or deletions to the terms and conditions of use shall be effective immediately upon notice thereof, which may be given by any means including, but not limited to, posting new terms and conditions on the Website. Any use of the Website after such change or modification shall be deemed to constitute acceptance by you of such changes, modifications, additions, or deletions. FlightAware may terminate, change, suspend or discontinue any aspect of the Website, including the availability of any features of the Website, at any time. FlightAware may also impose limits on certain features and services or restrict your access to parts of the Website without notice or liability.

# Hyperlinks

Certain links provided on this Website will launch Internet sites that are not under the control of FlightAware. FlightAware provides connections to these outside linked Internet sites solely as a convenience to its users and the provision of any such link is not an endorsement by FlightAware of that Internet site or any of the contents, products, or services contained or offered therein. FLIGHTAWARE MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER CONCERNING AVAILABILITY OF OR CONTENT, INCLUDING SUB-LINKS, FOUND ON THOSE INTERNET SITES.

When registering for, ordering or purchasing products or services from any party, which is linked to this Website, you will be entering into an agreement with that third party and not with FlightAware. In these cases, you should review and understand the terms and conditions posted by such third party and its privacy policy before you register, order or purchase. Except to the extent specifically stated herein, the Privacy Notice and Terms of Use stated by FlightAware herein will not apply. FlightAware is committed to linking to Internet sites of companies that share our privacy concerns. However, we cannot and do not control the way these parties use or collect information or operate their businesses. When you link to another party's Internet site, you should be aware that those companies may use cookies or other means to collect information about you. As FlightAware does not control these Internet sites, you should be aware that FlightAware Privacy Notice and terms do not apply.

# Limitation of Liability and Indemnity

Neither FlightAware nor any of its subsidiaries, employees, or other representatives shall be liable for any damages arising out of or in connection with the use of this Website, FlightAware Services or any linked site. Under no circumstances shall FlightAware have any liability for any consequential, incidental, indirect, special, or

punitive damages or costs, including, but not limited to, lost profits, business interruption, loss of information or data, or loss of goodwill, loss of or damage to property, and any claims of third parties, arising out of or in connection with the use, copying, or display of this Website or its contents, FlightAware Services or any linked website, regardless of whether FlightAware has been advised, knew, or should have known of the possibility thereof.

You agree to indemnify and hold harmless FlightAware, including its affiliates, its contractors, and its licensors, and their respective directors, officers, employees and agents from and against any and all claims and expenses, including attorneys' fees, arising out of your misfeasance or malfeasance in use of the Website, and FlightAware Services including but not limited to your violation of this Agreement.

# International Users and Jurisdiction

This Website is maintained and controlled by FlightAware in the United States of America. FlightAware makes no representation that materials on this Website are appropriate or available for use at other locations outside of the United States and access to this Website from territories where this Website's contents are illegal is prohibited. If you access this Website from locations outside the United States, you are responsible for compliance with all local laws. The laws of the State of New York shall govern the content and use of this Website, without giving effect to any of the conflict of law principles or rules thereof. Information contained in this Website and FlightAware Services may be subject to Global Trade Compliance "GTC" laws. "GTC Laws" shall mean the customs, export control, anti-boycott, and sanctions laws of the United States and other countries applicable to your subscription or access. You agree you will comply with all applicable GTC Laws. FlightAware reserves the right to delay delivery of FlightAware Services pending GTC Laws due diligence and review.

You will not re-export or otherwise transfer the FlightAware data and FlightAware Services to entities, individuals, and/or governments of countries or regions that are subject to sanctions or other restrictions as stated in the GTC Laws. You will not re-export or otherwise transfer FlightAware data and FlightAware Services to any country or person without authorization if required by GTC Laws. FlightAware may terminate your access and subscription for noncompliance of this provision with no further liability to FlightAware.

The recipient of this information acknowledges that they will be responsible for compliance as necessary with such laws, regulations and administrative acts. Prior to the disclosure of information presented on this website or FlightAware Services to any foreign national, the recipient will obtain any such approvals in a manner consistent with the terms and conditions of this Agreement.

If any part of this Agreement is held invalid or unenforceable, that part will be construed to reflect the parties' original intent, and the remaining portions will remain in full force and effect. A waiver by either party of any term or condition of this Agreement or any breach thereof, in any one instance, will not waive such term or condition or any subsequent breach thereof. You may assign your rights under this Agreement to any party that consents to, and agrees to be bound by, its terms and conditions; FlightAware may assign its rights under this Agreement without condition. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and permitted assigns.

# Intellectual Property, Patent and Trademark Notice

1. All Website design, text, graphics, and the selection and arrangement thereof, as well as the look and feel of the Website, are the property of FlightAware and its affiliates. Any text or images bearing logos or the symbols TM, SM or ® are trademarks or registered trademarks and are used herein by permission of their respective owners. Any trademarks, product names, company names, etc., whether or not appearing with trademark symbols, in all capital letters or otherwise denoting ownership of the same, belong to their respective owners.

2. Any intellectual property or content associated with FlightAware is the sole property of FlightAware, including its affiliates. Unless expressly authorized otherwise, you may not copy, reproduce, distribute, modify, lease, loan, sell, or create derivative works of any FlightAware content. By submitting information and material to FlightAware, whether via e-mail, through the Website, or otherwise, including, but not limited to, feedback, questions, comments, suggestions, ideas, graphics, submitted photography, media content or computer files of any type, you warrant that the owner of such material has thereby, irrevocably waive/waived all moral rights, all rights or privacy and publicity, and the like, and expressly grant/granted FlightAware a worldwide, royalty-free, perpetual, irrevocable, non-exclusive right and license to use, reproduce, modify, adapt, publish, translate, prepare derivative works and distribute such material (in whole or in part and without any obligation of attribution) worldwide and to incorporate it in other works in any form, media or technology now known or hereafter developed, subject to the FlightAware Privacy Notice included on the Website. You acknowledge that any ideas, concepts, or techniques ("suggestions") for new or existing services submitted to FlightAware or discussed on the FlightAware Discussions forums are not confidential or proprietary.

3. You agree that by posting content to https://www.flightaware.com, the Content you post is licensed to FlightAware under a Creative Commons Attribution-NonCommercial-ShareAlike 3.0 Unported License (the "CC BY-NC-SA License"), under the terms of which you grant to FlightAware a worldwide, royalty-free, non-exclusive, perpetual (for the duration of the applicable copyright) license to exercise the following rights in the Work (all capitalized terms in section a-d below are as defined in CC BY-NC-SA License):
   a. to Reproduce the Work, to incorporate the Work into one or more Collections, and to Reproduce the Work as incorporated in the Collections;
   b. to create and Reproduce Adaptations provided that any such Adaptation, including any translation in any medium, takes reasonable steps to clearly label, demarcate or otherwise identify that changes were made to the original Work. For example, a translation could be marked "The original work was translated from English to Spanish," or a modification could indicate "The original work has been modified."
   c. to Distribute and Publicly Perform the Work including as incorporated in Collections; and,
   d. to Distribute and Publicly Perform Adaptations.

4. The above rights may be exercised in all media and formats whether now known or hereafter devised. The above rights include the right to make such modifications as are technically necessary to exercise the rights in other media and formats.

5. Without limiting any of those representations or warranties, FlightAware has the right (though not the obligation) to, in FlightAware's sole discretion, (i) refuse or remove any content that, in FlightAware's opinion, violates any FlightAware policy or is in any way harmful or objectionable, or (ii) permanently terminate or deny access to and use of the Website to any individual or entity for any reason. FlightAware will have no obligation to provide a refund of any amounts previously paid.

6. DMCA notice - As FlightAware asks others to respect its intellectual property rights, it respects the intellectual property rights of others. If you believe that material located on or linked to by FlightAware.com violates your copyright, notify FlightAware, LLC in writing at 11 Greenway Plaza, Suite 2900, Houston, TX 77046, or via email to legal@flightaware.com.

7. Aspects of the FlightAware Website, services, and technology are covered by one or more of the following FlightAware patents: U.S. Patent No. 7,786,899; U.S. Patent No. 7,907,067; U.S. Patent No. 8,160,759; U.S. Patent No. 8,165,809; U.S. Patent No. 8,214,144; U.S. Patent No. 8,296,281; U.S. Patent No. 8,332,136; U.S. Patent No. 8,497,803 U.S. Patent No. 8,606,508; U.S. Patent No. 8,958,931; and U.S. Patent No. 8,963,776.

8. FlightAware®, FlightAware.com™, AirportAware®, FuelAware®, FlightAware WeatherAware™, MiseryMap®, FlightFeeder®, FlightAware PiAware™, HyperFeed®, FlightAware FBO ToolBox℠, FlightAware FlightXML℠, FlightAware Ready to Taxi℠, SkyAware®, Pro Stick®, AeroAPI®, FlightAware Foresight℠, FlightAware Aviator℠, FlightAware Firehose℠, FlightAware Global℠, FlightAware TV℠, GlobalBeacon®, Central to Aviation® and the FlightAware logos are all trademarks of FlightAware, LLC. Other trademarks are the property of their respective owners.

*Last Updated: July 16, 2026*

**ABOUT**

**COMMUNITY**

**TRACKING**

**PRODUCTS**

**CUSTOMER SERVICE**

📱 Get our mobile apps

○ ○ ○ ○

© 2026 FlightAware

Privacy  /  Terms of Use

Cookie Settings

# EXHIBIT 2

The Wayback Machine - https://web.archive.org/web/20211231102941/https://flightaware.com/about/termsofuse/



The following terms and conditions govern all use of the FlightAware.com website and all content, services and products available at or through the website, including, but not limited to, the FlightAware Discussions site (taken together, the "Website"). The Website is owned and operated by FlightAware, LLC ("FlightAware").

*The FlightAware Website is only available to you on the condition that you understand and agree to all terms and presented. **Your use of the Website constitutes your agreement to these terms. If you do not agree to the terms, don't use the Website.***

*The Website is offered subject to your acceptance without modification of all of the terms and conditions contained herein and all other operating rules including FlightAware.com's privacy policy at https://flightaware.com/about/privacy. This document is subject to regular change in FlightAware's sole discretion; please view regularly.*

# Your Obligations To FlightAware

1. You will not disguise the origin of your connection to the FlightAware Website.
2. You will not provide false or inaccurate information to the FlightAware Website.
3. You will not use the FlightAware Website for the purpose of conducting illegal activity.
4. You will not abuse the FlightAware Website with spam, including self-promotion, in any user contributed content.
5. You will not access the FlightAware Website in any way that intentionally affects or significantly negatively impacts the performance or reliability of the FlightAware Website.
6. With the exception of FlightAware data feeds and APIs, you will only access the FlightAware Website with a human-operated interactive web browser and not with any program, collection agent, or "robot" for the purpose of automated retrieval or display of content.
7. You will not use the FlightAware Website for any aviation, commercial, operational, law enforcement, judicial, or safety-critical activity that relies on the availability, validity, or accuracy of FlightAware data.
8. If you create an account on the Website, you are responsible for maintaining the security of your account and you are fully responsible for all activities that occur under the account. You must immediately notify FlightAware of any unauthorized uses of your account or any other breaches of security. FlightAware will not be liable for any acts or omissions by you, including any damages of any kind incurred as a result of such acts or omissions.
9. If you post material to the Website, post links on the Website, or otherwise make (or allow any third party to make) material available by means of the Website (any such material, "Content"), You are entirely responsible for the contents of, and any harm resulting from, that Content. That is the case regardless of whether the Content in question constitutes text, graphics, an audio file, or computer software.
10. You are responsible for taking precautions as necessary to protect yourself and your computer systems from viruses, worms, Trojan horses, and other harmful or destructive content.
11. You represent and warrant that (i) your use of the Website will be in strict accordance with the FlightAware Privacy Policy, FlightAware Discussions FAQ, with this Agreement and with all applicable laws and regulations (including without limitation any local laws or regulations in your country, state, city, or other governmental area, regarding online conduct and acceptable content, and including all applicable laws regarding the transmission of technical data exported from the country in which this website resides or the country in which you reside) and (ii) your use of the Website will not infringe or misappropriate the intellectual property rights of any third party.
12. All no-charge, web-based FlightAware products, APIs, and data are licensed solely for personal use, and you may not use them for any other purpose. Any products, APIs, and data, for which you pay FlightAware may be used solely in accordance with the specific terms of any additional license provided to you at the time of purchase. FlightAware products (including Enterprise WX, FlightAware Global, and Aviator) containing weather provided by DTN may only be used for personal and internal business purposes. You may not reproduce, publish, or distribute any FlightAware product, API, or data, or make any commercial use of those products, APIs, or data, unless FlightAware has granted you an express license that allows you to do so.

# FlightAware's Obligations To You

1. FlightAware has the right, but not the obligation, to moderate any and all conversations, discussions, topics, posts, and images, in the discussion forums, photo system, or squawks section without prejudice.
2. FlightAware may choose to refuse service, account privileges, or access to any individual at any time without explanation or justification.
3. FlightAware makes no representations about the results to be obtained from using FlightAware. Any use is at your own risk.
4. FlightAware has not reviewed, and cannot review, all of the material, including computer software, posted to the Website, and is not responsible for that material's content, use or effects.
5. The FlightAware Website is provided exclusively on an "as is" basis, with no "service level agreement" unless expressly negotiated in a writing signed by the parties.
6. FlightAware disclaims any and all warranties, either express or implied, statutory or otherwise, including but not limited to the implied warranties of merchantability, non-infringement of third parties' rights, and fitness for any purpose. FlightAware make no representations or warranties about the accuracy, completeness, security, or timeliness of the content, information, or services provided on or through the use of FlightAware. No information obtained by you from FlightAware shall create any warranty not expressly stated by FlightAware.
7. FlightAware disclaims any responsibility for any harm resulting from the use by visitors of the Website, or from any downloading by those visitors of content there posted. The Website may contain content that is offensive, indecent, or otherwise objectionable, as well as content containing technical inaccuracies, typographical mistakes, and other errors. The Website may also contain material that violates the privacy or publicity rights, or infringes the intellectual property and other proprietary rights, of third parties, or the downloading, copying or use of which is subject to additional terms and conditions, stated or unstated.
8. FlightAware disclaims any responsibility for any harm resulting from your use of non-FlightAware.com websites and webpages. FlightAware has not reviewed, and cannot review, all of the material, including computer software, made available through the websites and webpages to which FlightAware.com links, or that link to FlightAware.com. FlightAware does not have any control over those non-FlightAware.com websites and webpages, and is not responsible for their contents or their use. By linking to a non-FlightAware.com website or webpage, FlightAware does not represent or imply that it endorses such website or webpage.
9. You are responsible for taking precautions as necessary to protect yourself and your computer systems from viruses, worms, Trojan horses, malware and other harmful or destructive content.
10. You agree to indemnify and hold harmless FlightAware, its contractors, and its licensors, and their respective directors, officers, employees and agents from and against any and all claims and expenses, including attorneys' fees, arising out of your misfeasance or malfeasance in use of the Website, including but not limited to your violation of this Agreement.

# Intellectual Property, Patent and Trademark Notice

1. Any intellectual property or content associated with FlightAware is the sole property of FlightAware. With the exception of data retrieved through the FlightXML service, you may not copy, reproduce, distribute, modify, lease, loan, sell, or create creative derivative works of any FlightAware content.
2. You grant FlightAware a worldwide, royalty-free, unlimited, irrevocable license to use, transmit, distribute, and sell any submitted photography or media content. You acknowledge that the owner of any submitted content continues to retain ownership to the submitted content.
3. You acknowledge that any ideas, concepts, or techniques ("suggestions") for new or existing services submitted to FlightAware or discussed on the FlightAware Discussions forums are not confidential or proprietary. FlightAware will have an unrestricted, irrevocable, world-wide, royalty free right to use, disseminate, display, distribute, and exploit any suggestions.
4. You agree that by posting content to FlightAware.com, the Content you post is licensed to FlightAware under a Creative Commons Attribution-NonCommercial-ShareAlike 3.0 Unported License (the "CC BY-NC-SA License"), under the terms of which you grant to FlightAware a worldwide, royalty-free, non-exclusive, perpetual (for the duration of the applicable copyright) license to exercise the following rights in the Work (all capitalized terms in section a-d below are as defined in CC BY-NC-SA License):
    a. to Reproduce the Work, to incorporate the Work into one or more Collections, and to Reproduce the Work as incorporated in the Collections;
    b. to create and Reproduce Adaptations provided that any such Adaptation, including any translation in any medium, takes reasonable steps to clearly label, demarcate or otherwise identify that changes were made to the original Work. For example, a translation could be marked "The original work was translated from English to Spanish," or a modification could indicate "The original work has been modified.";
    c. to Distribute and Publicly Perform the Work including as incorporated in Collections; and,
    d. to Distribute and Publicly Perform Adaptations.
5. The above rights may be exercised in all media and formats whether now known or hereafter devised. The above rights include the right to make such modifications as are technically necessary to exercise the rights in other media and formats.
6. Without limiting any of those representations or warranties, FlightAware has the right (though not the obligation) to, in FlightAware's sole discretion, (i) refuse or remove any content that, in FlightAware's opinion, violates any FlightAware policy or is in any way harmful or objectionable, or (ii) terminate or deny access to and use of the Website to any individual or entity for any reason. FlightAware will have no obligation to provide a refund of any amounts previously paid.

Terms Of Use - FlightAware

7. DMCA notice - As FlightAware asks others to respect its intellectual property rights, it respects the intellectual property rights of others. If you believe that material located on or linked to by FlightAware.com violates your copyright, notify FlightAware, LLC in writing at 11 Greenway Plaza, Suite 2900, Houston, TX 77046.

8. Aspects of the FlightAware Website, services, and technology are covered by one or more of the following FlightAware patents: U.S. Patent No. 7,786,899; U.S. Patent No. 7,907,067; U.S. Patent No. 8,160,759; U.S. Patent No. 8,165,809; U.S. Patent No. 8,214,144; U.S. Patent No. 8,296,281; U.S. Patent No. 8,332,136; U.S. Patent No. 8,497,803 U.S. Patent No. 8,606,508; U.S. Patent No. 8,958,931; and U.S. Patent No. 8,963,776.

9. FlightAware®, FlightAware.com™, AirportAware®, FuelAware®, WeatherAware™, MiseryMap™, FlightFeeder®, PiAware™, HyperFeed®, FBO ToolBox™, FlightXML™, Ready to Taxi™, SkyAware®, Pro Stick®, AeroApps™, AeroAPI®, Foresight™, Central to Aviation® and the FlightAware logos are all trademarks of FlightAware, LLC. Other trademarks are the property of their respective owners.

This Agreement constitutes the entire agreement between FlightAware and you concerning use of the Website and the terms above, and it may only be modified by a written amendment signed by an authorized executive of FlightAware, or by the posting by FlightAware of a revised version. Except to the extent applicable law, if any, provides otherwise, this Agreement, any access to or use of the Website will be governed by the laws of the state of Texas, U.S.A., excluding its conflict of law provisions, and the proper venue for any disputes arising out of or relating to any of the same will be the state and federal courts located in Houston, Harris County, Texas. Claims for injunctive or equitable relief or claims regarding intellectual property rights may be brought by FlightAware without the posting of a bond, unless a bond is required by state law or practice, in which event a nominal bond shall suffice. The prevailing party in any action or proceeding to enforce this Agreement shall be entitled to costs and attorneys' fees. If any part of this Agreement is held invalid or unenforceable, that part will be construed to reflect the parties' original intent, and the remaining portions will remain in full force and effect. A waiver by either party of any term or condition of this Agreement or any breach thereof, in any one instance, will not waive such term or condition or any subsequent breach thereof. You may assign your rights under this Agreement to any party that consents to, and agrees to be bound by, its terms and conditions; FlightAware may assign its rights under this Agreement without condition. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and permitted assigns.

*Last Updated: March 30, 2021*

Terms Of Use - FlightAware

# EXHIBIT 3

**AeroAPI® Personal License Agreement**

The version of the "FlightAware Terms and Conditions", current as of the Effective Date, is applicable to Orders and Licenses hereunder as indicated therein and is hereby incorporated by reference herein. FlightAware Terms and Conditions referenced above are made available at the following URL: https://flightaware.com/commercial/termsandconditions. The parties recognize that the URL may change from time to time and agree that any such change will not affect the applicability of the material referenced. Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such terms in FlightAware Terms and Conditions.

In consideration of the mutual promises in this Agreement and further conditioned upon timely payment of all License Fees when due, FlightAware will provide access to AeroAPI on a monthly subscription basis and authorize Licensee's use of the information provided therein (the "AeroAPI Data") obtained from such access solely to individuals as follows:

**Personal License** - So long as Licensee is an individual and such individual is not in breach of this Agreement, FlightAware hereby grants Licensee a limited, non-transferable, non-sublicensable, revocable, worldwide license to access and use AeroAPI and AeroAPI Data solely for Licensee's personal, home, recreational, or academic uses and for the creation of Licensee's Derivative Works (defined below). All such licensed use shall be the "**Permitted Purposes**" limited for the Term of the Order, and subject to the following permissions and limitations:

Licensee May:

1. Access AeroAPI by a single authorized Licensee account.
2. Search, retrieve, download and store AeroAPI Data.
3. Access AeroAPI solely via FlightAware's proprietary API.
4. Create and use new data points derived from AeroAPI Data (the "**Derivative Works**").
5. Use AeroAPI Data and Derivative Works for personal purposes and projects only.
6. Use AeroAPI Data and Derivative Works for research purposes within a bona fide academic setting. AeroAPI Data may be published in research papers with proper attribution to FlightAware, but only when AeroAPI Data is provided in other than raw format, either embedded in Licensee's academic research or otherwise incorporated into Derivative Works of Licensee. The attribution shall be substantially similar to: Contains AeroAPI data © FlightAware LLC [year]. Licensee shall at all times comply with FlightAware's Brand Guide, available at: https://flightaware.com/about/logo/.

Licensee Shall Not:

1. Use AeroAPI and AeroAPI Data in furtherance of any business, whether for profit or otherwise, including by employee(s), representatives, or contractors of any business, corporation, company, startup venture, trust, or other juridical entity.
2. Use AeroAPI by, through, for, or on behalf of any government agency or government purpose.
3. Lend, rent, sell or grant sublicenses, leases or any other rights to access AeroAPI.
4. Access AeroAPI or use AeroAPI Data for any other purposes other than as provided under this Agreement.
5. Sell, sublicense, or otherwise transfer any part of the AeroAPI Data other than except as expressly permitted in this License.
6. Reverse engineer, disassemble, or decompile the AeroAPI API or AeroAPI Data, or any password or security device used with AeroAPI, or make any attempt to discover the source code or scripts used to provide AeroAPI.
7. Modify the AeroAPI API or the AeroAPI Data without the prior written permission of FlightAware.
8. Remove any FlightAware or third-party names, trademarks, copyright notices or other proprietary rights notices.
9. Use AeroAPI access or the AeroAPI Data in any way that violates or may violate rights of publicity or privacy of any individual.
10. Use AeroAPI Data for commercial aircraft situational displays.
11. Store AeroAPI data in raw format as received via AeroAPI for a period longer than thirty (30) days from the date first received by Licensee. Derivative Works may be stored in perpetuity.
12. Use the AeroAPI Data in conjunction with or as a backfill to data sourced from any other real-time or near-real-time flight data provider without the prior written permission of FlightAware.
13. Use AeroAPI or the AeroAPI Data in any way that may infringe any copyright or proprietary interests of FlightAware or FlightAware's third-party data providers, or any other third parties.
14. Use AeroAPI or the AeroAPI Data (including historical data) to substantiate claims received directly from passengers in regard to passenger claims or actions against air carriers, for example actions pursuant to EU Regulation 261/2004, the United Kingdom's APR, Canada's APPR, and other similar regulations.
15. With the exception of FlightAware's proprietary API, including AeroAPI (this product), access AeroAPI with any program, collection agent, or "robot" for the purpose of automated retrieval or display of content.
16. Use or permit any third party to use AeroAPI, AeroAPI Data, Derivative Works, or any analyses, models, or other outputs derived from the AeroAPI Data or Derivative Works, in connection with any betting, wagering, gambling, prediction market, event contract, or similar platform or product that enables participants to place, trade, or settle positions based on the occurrence or outcome of future events. Any such use constitutes a material breach of this Agreement.

**AeroAPI® Personal License Agreement**

**Ownership and Use of Data Services.** Licensee agrees that AeroAPI Data, the AeroAPI API, and all associated documentation are owned by and shall remain the exclusive property of FlightAware. No rights are granted or conveyed by FlightAware other than as expressly stated in this Agreement, and nothing in this Agreement will be deemed to otherwise grant a party any license, sublicense, copyright interest, proprietary right, or other claim against or interest in the other party's copyrights, patents, trade secrets, or other intellectual property. Licensee agrees that all FlightAware data provided or available to Licensee or Licensee Users through AeroAPI is owned either by FlightAware or by FlightAware' third-party data providers, and that Licensee does not and shall not acquire any ownership or interest whatsoever in such data.

# EXHIBIT 4

# FLIGHTAWARE®
## AeroAPI® "Personal" License

In consideration of the mutual promises in this Agreement and further conditioned upon timely payment of all License Fees when due, FlightAware will provide access to AeroAPI on a monthly subscription basis and authorize Licensee's use of the information provided therein (the "FlightAware Data") obtained from such access solely to individuals as follows:

**Personal License** - So long as Licensee is an individual and such individual is not in breach of this Agreement, FlightAware hereby grants Licensee a limited, non-transferable, non-sublicensable, revocable, worldwide license to access AeroAPI (solely via FlightAware's proprietary API) and to download and use FlightAware AeroAPI Data solely for Licensee's personal, home, recreational, or academic uses (the "**Permitted Purposes**") subject to the following permissions and limitations:

Licensee May:

1. Access AeroAPI by any number of simultaneous users by use of a single authorized Licensee account.
2. Search, retrieve, download and store FlightAware AeroAPI Data.
3. Create and use new data points derived from FlightAware Data (the "**Derivative Works**").
4. Provide FlightAware AeroAPI Data via derivative works to third-parties for any Permitted Purpose, but only when FlightAware AeroAPI Data is provided in other than raw format, either embedded in Licensee's academic research or otherwise incorporated into a Derivative Work created by Licensee.

Licensee May Not:

1. Use AeroAPI in furtherance of any business, whether for profit or otherwise, including by employee(s), representatives, or contractors of any business, corporation, company, startup venture, trust, or other juridical entity.
2. Use AeroAPI by, through, for, or on behalf of any government agency or government purpose.
3. Lend, rent, sell or grant sublicenses, leases or any other rights to access AeroAPI.
4. Access AeroAPI or use FlightAware AeroAPI Data for non-personal planning, analysis or research (other than for educational research in an academic setting).
5. Sell, sublicense, or otherwise transfer any part of the FlightAware AeroAPI Data to third parties, other than except as expressly permitted in this License.
6. Reverse engineer, disassemble, or decompile the AeroAPI API or FlightAware AeroAPI Data, or any password or security device used with AeroAPI, or make any attempt to discover the source code or scripts used to provide AeroAPI.
7. Modify the AeroAPI API or the FlightAware AeroAPI Data without the prior written permission of FlightAware.

8. Remove any FlightAware or third-party names, trademarks, copyright notices or other proprietary rights notices.
9. Use AeroAPI access or the FlightAware AeroAPI Data in any way that violates or may violate rights of publicity or privacy of any individual.
10. Store FlightAware AeroAPI data in raw format as received via AeroAPI for a period longer than thirty (30) days from the date first received by Licensee.
11. Use the FlightAware data in conjunction with or as a backfill to data sourced from any other real-time or near-real-time flight data provider without the prior written permission of FlightAware.
12. Use AeroAPI or the FlightAware Data in any way that may infringe any copyright or proprietary interests of FlightAware or FlightAware's third-party data providers, or any other third parties.
13. Use AeroAPI or the FlightAware Data (including historical data) for any passenger rights claims or actions, for example actions pursuant to EU Regulation 261/2004.
14. With the exception of FlightAware's proprietary API, including AeroAPI (this product), access FlightAware Data with any program, collection agent, or "robot" for the purpose of automated retrieval or display of content.

Ownership and Use of Services and Data - Licensee agrees that AeroAPI, the AeroAPI API, and all associated documentation are owned by and shall remain the exclusive property of FlightAware. No rights are granted or conveyed by FlightAware other than as expressly stated in this Agreement, and nothing in this Agreement will be deemed to otherwise grant a party any license, sublicense, copyright interest, proprietary right, or other claim against or interest in the other party's copyrights, patents, trade secrets, or other intellectual property. Licensee agrees that all FlightAware Data provided or available to Licensee or Licensee Users through AeroAPI is owned either by FlightAware or by FlightAware' third-party data providers, and that Licensee does not and shall not acquire any ownership or interest whatsoever in such data.

**WARRANTY DISCLAIMER & ASSUMPTION OF RISK**: AEROAPI (INCLUDING WITHOUT LIMITATION THE AEROAPI API AND AEROAPI DATA) ARE PROVIDED *AS-IS* AND *WITH ALL FAULTS*. NO WARRANTY OF ANY KIND IS PROVIDED WITH RESPECT TO AEROAPI UNDER THE TERMS OF THIS PERSONAL LICENSE. FLIGHTAWARE HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF FITNESS OR OF MERCHANTABILITY. LICENSEE ASSUMES ALL RISKS ASSOCIATED WITH ACCESSING AEROAPI AND USE OF AEROAPI DATA.

# EXHIBIT 5



**July 2026**

# FLIGHTAWARE® TERMS AND CONDITIONS

These Terms and Conditions (the "**Terms**") between FlightAware LLC, a Texas limited liability company ("**FlightAware**") and you (the "**Licensee**") govern the sale, delivery, acceptance, and subsequent use of FlightAware Data and services, including without limitation through FlightAware products, reports, https://flightaware.com, and any FlightAware API and software (as applicable) necessary for access (collectively, "**Data Services**"). "**FlightAware Data**" shall mean data sets and feeds obtained through the Data Services, as further described in applicable Order. FlightAware and Licensee may be collectively referred to as "**Parties**" or individually as "**Party**".

In addition to these Terms, Data Services licensed through https://flightaware.com are subject to Terms of Use and Privacy Notice (collectively "**Additional Terms**"). By using the Data Services, Licensee agrees the Additional Terms apply.

### ART. 1.  PROVISION OF DATA SERVICES

1.1    FlightAware licenses Data Services either via web-based forms completed by Licensee through self-sign-up at https://flightaware.com or via orders facilitated by FlightAware personnel (collectively, the "**Order**" or "**Orders**").

1.2    Each Order will be effective when executed by both Parties (the "**Effective Date**") and will form a separate agreement which incorporates these Terms. The Effective Date for web-based Orders shall be the date Licensee completes the self-sign-up. The Effective Date for non-web-based Orders shall be according to the Order's express terms or, if no Effective Date is stated on the Order, then the last date in the signatory block of the Order executed by both Parties.

1.3    Orders shall specify the Data Services to be provided, the specific license terms, the length of license term, license fees and any other costs associated with the Data Services, and all other relevant and material terms specific to the Order.

1.4    <u>Terms Control</u>. These Terms and Orders are to be read together and harmonized. Negotiated clauses in Orders control over a conflicting Article in these Terms, if the Order specifically provides separate negotiated terms or references a conflicting Article. Otherwise, in the event of a conflict between these Terms and Order, these Terms shall control.

### ART. 2.  DELIVERY, ACCEPTANCE AND TITLE

Data Services are accepted by Licensee upon delivery by FlightAware. Delivery occurs when FlightAware first makes any data available for use by Licensee.

### ART. 3. INTELLECTUAL PROPERTY, SCOPE OF LICENSE AND PROPRIETARY RIGHTS

3.1    <u>Intellectual Property Rights</u>. All text, software (including source and object codes), visual, oral or other digital material, advice, counseling, information, data (including all data developed, collected, or otherwise obtained by FlightAware during or in relation to the Data Services, and all other content of any description available through or included in the Data Services (collectively, the "**Content**"), and all world-wide copyrights, trademarks, service marks, patents, patent registration rights, trade secrets, know-how, database rights, and all other rights in or relating to the Content and Data Services (collectively, the "**Intellectual Property**") are owned by FlightAware and/or another FlightAware affiliated entity and/or their licensors. Licensee may only use the Content (excluding any source code), Data Services, or Intellectual Property as expressly permitted in these Terms and for no other purposes.

3.2    <u>Feedback.</u> With respect to any feedback, questions, comments, suggestions, ideas, graphics or computer files of any type provided to FlightAware in relation to the Data Services (collectively "**Feedback**"), Licensee grants FlightAware a royalty-free, perpetual, irrevocable, non-exclusive right and license to use, reproduce, modify, adapt, publish, translate, prepare derivative works and distribute such Feedback (in whole or in part and without any obligation of attribution) worldwide and to incorporate it in other works in any form, media or technology now known or hereafter developed.

3.3    <u>Limited Licenses</u> – FlightAware does not convey any rights or interests to Licensee other than licenses. Licenses are personal to the Licensee specified in the Order and may not be transferred or sub-licensed by Licensee except as expressly authorized in either these Terms or in the Order.

3.4    <u>License for Data Services</u>

    i.    Conditioned on compliance with these Terms and the Order, Licensee is granted a personal, revocable, non-exclusive, nontransferable, non-sublicensable license to utilize Data Services as described in the Order. Any rights granted are licensed and not sold or otherwise transferred or assigned to Licensee. Licensee is not granted title to Data Services or any data provided through them. No other use of the Data Services is permitted by Licensee.

    ii.    Data Services will begin on the date specified in the Order, for the length of term specified in the Order.

    iii.    Licensee may retain and store FlightAware Data for a maximum of twenty-four (24) hours from receipt, or as otherwise allowed in the Order.

    iv.    Licensee shall maintain reasonable and appropriate processes and mechanisms to store FlightAware Data in compliance with the time limits of the license. Upon expiration or termination of the Order, Licensee will eliminate FlightAware Data from Licensee's data centers and other systems.

    v.    Licensee shall comply with all applicable laws and regulations related to use of FlightAware Data and Data Services.

3.5    <u>License and Terms Specific to Aireon Space-Based ADS-B Data</u> ("**Aireon SBADS-B Data**"). Solely to the extent that any Data Services include Aireon SBADS-B Data, then the following non-negotiable terms as required by Aireon apply with respect thereto:

i.   Part or all of FlightAware Data provided by FlightAware to Licensee under these Terms will be Aireon SBADS-B Data supplied by and licensed to FlightAware by Aireon, LLC ("**Aireon**"). These Terms, however, are solely between Licensee and FlightAware. Notwithstanding anything to the contrary herein or in any agreement between Licensee and FlightAware, Licensee agrees that Licensee's only recourse with respect to any issues or concerns related to Licensee's use, availability, reliability, or accuracy of Aireon SBADS-B Data supplied by Aireon to FlightAware is with FlightAware, and not with Aireon or Aireon's affiliates.

ii.  The Aireon SBADS-B Data are owned and reserved by FlightAware and its licensors (including Aireon), including all industrial and proprietary rights therein and thereto. All intellectual property rights and ownership in Aireon SBADS-B Data and modifications thereto and derivatives thereof are retained by FlightAware and its licensors, as applicable.

iii. FlightAware grants Licensee (or any permitted successor, assignee or affiliate thereof) a nonexclusive, worldwide license for the Order Term to use Aireon SBADS-B Data solely for Aircraft Operator Purposes in an Order. "**Aircraft Operator Purposes**" means providing tools or data to aircraft operators for flight following and flight tracking for aircraft operations. Aireon SBADS-B Data may not be used for any other purpose, including, without limitation, to provide or enable the provision of, directly or indirectly, Air Traffic Services, in-flight or on-ground navigation, traffic advisories or airport operations. "**Air Traffic Services**" means the use of the Aireon SBADS-B Data for air traffic control, air space management or air traffic flow management; provided, however, Air Traffic Services and "airport operations" do not include flight following and flight tracking by commercial airlines and other aircraft operators for their own internal aircraft operations.

iv.  Licensee's right to use Aireon SBADS-B Data is personal to Licensee. Licensee shall not sublicense, assign or transfer the Aireon SBADS-B Data or Licensee's rights to use Aireon SBADS-B Data, to any -party, except in connection with the permitted use as detailed in the Order. Additionally, Licensee shall not authorize any portion of Aireon SBADS-B Data to be copied onto or accessed from another individual's or entity's systems or facilities, in each case except as expressly permitted under these Terms.

v.   Licensee is prohibited from: (a) using the Aireon SBADS-B Data on behalf of third-parties; (b) renting, leasing, lending or granting other rights in Aireon SBADS-B Data including rights on a subscription basis; and/or (c) providing use of Aireon SBADS-B Data in a data service business, third-party outsourcing facility or service, service bureau arrangement, network, or time sharing basis.

vi.  Licensee agrees that Aireon SBADS-B Data will not be shipped, transferred or exported into any country or used in any manner prohibited by any laws or regulations applicable to Aireon and FlightAware. If FlightAware determines in its sole discretion that the use of Aireon SBADS-B Data is prohibited by such laws or regulations or if Licensee otherwise violates these Terms, FlightAware has the right to suspend access and use of Aireon SBADS-B Data by Licensee, including immediately terminating these Terms. Licensee agrees not to use or transfer Aireon SBADS-B Data to any jurisdiction if such use or transfer will cause Aireon or FlightAware to violate such laws or regulations.

3.6     Termination of License Terminates Sublicenses. Upon termination of any licenses to Licensee, all sublicenses under the terminated license also terminate.

3.7     License Grant by Licensee to FlightAware. Licensee hereby grants to FlightAware and its affiliates: a royalty-free, worldwide, non-exclusive, sublicensable, perpetual and transferable license to use any Licensee data processed under the Data Services (the "**Licensee Data**") (i) for the purpose of FlightAware delivering or performing the Data Services; (ii) for data analytics to improve the Data Services FlightAware offers; and (iii) to create, compile, and/or use as aggregate datasets, which will be owned by FlightAware and its affiliates. The Parties recognize and agree that Licensee data shall not contain any personal data and FlightAware shall bear no responsibility nor have any liability to Licensee for Licensee Data.

## ART. 4. STANDARD TERMS FOR DATA SERVICES

4.1     FlightAware will distribute Data Services to Licensee as described in the Order.

4.2     Licensee will import Data Services in a secure way and only for use by authorized parties as described in the Order.

4.3     Licensee is not allowed to re-sell or redistribute Data Services to any third-party unless expressly authorized in the Order.

4.4     Licensee agrees that any data in any form provided by FlightAware to Licensee under these Terms (including any data provided to FlightAware by Licensee for inclusion in the Data Services) is not intended to be used for, directly or indirectly, and may not be used for, directly or indirectly, a) any safety of life activities, safety critical activities, real-time or near real-time in-flight or on-ground navigation for aircraft or any other vehicle or equipment, collision avoidance, air traffic control, airport operations control, or aircraft separation, or any similar uses where an intended end-use of the Data Services is real-time avoidance of property damage, loss of life, or personal injury; b) mass surveillance, racial profiling, or any use that violates or encourages the violation of basic human rights; c) to distribute false, misleading, disparaging or obscene information or content; d) to provide fully automated decision making in connection with use cases involving the risk of loss of life, or property; e) in a manner that impersonates another for deceptive purposes or conceals the fact a user is interacting with artificial intelligence; or f) to distribute or intentionally generate malware or other harmful code.

4.5     Licensee acknowledges that Data Services are subject to geographical and technical coverage restrictions, which vary by aircraft operator and location.

4.6     Licensee shall not reverse engineer, disassemble, or decompile the Data Services or the FlightAware Data, or any

password or security device used with the Data Services, or make any attempt to discover the source data, source code or scripts used to provide the Data Services or the FlightAware Data.

4.7     Licensee shall not use, or permit any third party to use, directly or indirectly, Data Services, or any analyses, models, or other outputs derived from the Licensed Data, in connection with any betting, wagering, gambling, prediction market, event contract, or similar platform or product that enables participants to place, trade, or settle positions based on the occurrence or outcome of future events. Any such use constitutes a material breach of these Terms.

4.8     Licensee shall not disclose, transfer, process, upload or otherwise use any data provided by FlightAware with any AI System without FlightAware's prior written authorization. For purposes of these Terms, "**AI System**" means any system that implements Artificial Intelligence, and "**Artificial Intelligence**" means any technology that can make decisions, create predictions, generate content, recognize patterns, or perform tasks that ordinarily require human intelligence without being explicitly programmed to do so, including without limitation generative artificial intelligence, large language models, and/or machine learning systems.

4.9     Third-Party Suppliers. FlightAware products and services may rely, in whole or in part, on third-party suppliers that impose terms and restrictions upon FlightAware that FlightAware must flowdown to its customers ("**Supplier Flowdowns**"). If due to changes in Supplier Flowdowns Licensee determines to terminate the affected Data Services, Licensee may notify FlightAware in writing of its determination and reasons therefore, in which case FlightAware shall provide a written response to Licensee's notification. Following receipt of FlightAware's response, if Licensee still wishes to terminate affected Data Services, FlightAware shall permit Licensee to terminate the relevant portion of the affected Data Services and/or the applicable Order within thirty (30) days' written notice without penalty or further payment obligations, provided Licensee pays FlightAware at the agreed-upon rates for Data Services actually provided through the effective date of such termination and FlightAware refunds to Licensee a pro-rata portion of the purchase price for the Data Services.

## ART. 5. CHARGES AND TERMS OF PAYMENT

5.1     The license fee for each Data Services licensed hereunder will be specified in the applicable Order (the "**License Fee**"). In no event shall any charges exceed the rates set forth in the Order, or if not set forth in the Order, FlightAware's applicable standard published rates, which published rates FlightAware shall provide to Licensee upon request.

5.2     FlightAware will invoice Licensee in accordance with the applicable Order, or otherwise upon delivery, due and payable within thirty (30) days of the invoice date. Payments shall be made in US Dollars.

5.3     In the event that payment is not paid in full when due, FlightAware shall assess, and Licensee shall pay a late payment charge equal to the greater of i) US$20.00 or ii) 1.5% of the outstanding unpaid balance per month.

5.4     If Licensee disputes an invoice, Licensee shall promptly notify FlightAware of the dispute, and in any event within thirty (30) days of the grounds therefore becoming

known to Licensee, the amount disputed, stating within such notice the reasons Licensee believes the disputed amount was improperly invoiced. Licensee shall pay the undisputed portion of every invoice when due. The Parties shall attempt to resolve any dispute in accordance with Art. 22, below.

5.5     Except as stated in Article 5.4 above, Licensee hereby waives any right to dispute any invoice more than one hundred twenty (120) days after such invoice was issued by FlightAware.

5.6     Price Adjustments. FlightAware may increase prices after reasonable notice to Licensee, which notice shall in no event be less than thirty (30) days' prior notice. Licensee may reject any such price increase by written notice received by FlightAware prior to the date such price increase is to go into effect. Upon receipt of such rejection notice FlightAware shall terminate the Order and Licensee shall be under no additional payment obligation. Licensee's continued use of Data Services following notice and absent objection constitutes Licensee's acceptance of such price increase.

## ART. 6. TAXES

6.1     For the purposes of these Terms, taxes shall include, but not be limited to, sales taxes; use taxes; withholding taxes; value added taxes; goods and services taxes; stamp taxes; excise taxes; gross receipts taxes; transfer taxes; profits taxes; turnover taxes; port dues; import, export and custom duties; and any related penalties and interest or other similar taxes ("**Taxes**").

6.2     All fees stated in these Terms or in the Orders shall be exclusive of Taxes.

6.3     Licensee shall pay the cost of any Taxes which FlightAware is required by applicable law to charge to Licensee as a result of the transactions contemplated by these Terms, unless Licensee have timely provided to FlightAware a valid and properly completed exemption certificate certifying that Licensee is not subject to such Taxes.

6.4     FlightAware shall have no liability for any Taxes, whether imposed on FlightAware or Licensee, in connection with the performance by FlightAware of its obligations under these Terms other than, for the avoidance of doubt, taxes imposed on FlightAware's net income.

6.5     In the event any amounts described in Art. 6.4 (other than, for the avoidance of doubt, taxes imposed on FlightAware's net income) are imposed on FlightAware, Licensee shall reimburse the FlightAware for such amounts within 15 days of written request.

6.6     All payments shall be made without deduction or withholding.  In the event that Licensee is required by any law to make any deduction or withholding from any amount payable to FlightAware, then the amount payable to FlightAware shall be increased such that after all deductions and withholdings, the amount paid to FlightAware shall be equal to the amount to which FlightAware would have been entitled under these Terms had no deduction or withholding been required.

6.7     Any amounts withheld by Licensee shall be timely remitted to the relevant authority as required by law. Licensee shall promptly provide FlightAware with an official receipt or certificate in respect of the payment of such amounts.

6.8     Both Parties agree to co-operate to eliminate or

reduce, consistent with applicable law, any Taxes or similar charges which may be payable by either Party, including, where applicable, providing or issuing the necessary documentation to support or secure exemptions or recoveries. Furthermore, if as a result of a change in law or a change in the tax practice of any tax authority, either Party becomes subject to additional Taxes or similar charges which increase its financial liability during the Order Term, both Parties will negotiate in good faith to attempt to reduce or eliminate such additional Taxes or similar charges; provided, however, that neither Party need take any steps which, in its reasonable opinion and acting in good faith, would increase its obligations or would be prejudicial or adverse to it (whether in respect of tax affairs or otherwise).

## ART. 7. REPRESENTATIONS AND DISCLAIMERS

7.1      FlightAware provides the following representations:

i.     FlightAware has the requisite corporate power and authority to enter into each Order;

ii.    FlightAware has the right to furnish the Data Services free of all liens;

iii.   Data Services will be provided by qualified personnel consistent with commercially reasonable standards;

iv.    FlightAware shall comply with applicable (i) laws, regulations and government-issued rules, and (ii) self-regulatory standards established by FlightAware. As a general example and not a limitation, FlightAware shall comply with the United States Foreign Corrupt Practices Act of 1977 and the United Kingdom Bribery Act of 2010 (together, the "**Anti-Bribery Laws**"); and

v.     FlightAware will use commercially reasonable efforts to (i) provide Data Services without any viruses, or similar programs or mechanisms that disrupt, modify, delete, harm or otherwise impede the operation of Licensee's systems ("**Destructive Elements**"); (ii) test Data Services prior to delivery to Licensee; and (iii) expeditiously incorporate, install and make available all security patches, bug fixes and/or modifications required to render the Data Services free from known security risks.

7.2   DISCLAIMERS:

i.    FLIGHTAWARE DOES NOT WARRANT THAT THE DATA SERVICES WILL OPERATE EITHER UNINTERRUPTED OR ERROR-FREE. UNLESS A DIFFERENT STANDARD IS EXPRESSED IN THE ORDER, FLIGHTAWARE DISCLAIMS ANY LIABILITY FOR THE ACCURACY, QUALITY, AVAILABILITY OR COMPLETENESS OF DATA SERVICES, INCLUDING ANY RECEIVED BY FLIGHTAWARE FROM THIRD-PARTIES. DATA SERVICES ARE PROVIDED "*AS-IS*" AND WITH "*ALL FAULTS*". EXCEPT AS SPECIFICALLY PROVIDED IN THESE TERMS, THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF NON-INFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## ART. 8. TERM AND TERMINATION

8.1      Order Term. Each Order will become effective as of its stated Effective Date and will expire on its stated term (the "**Order Term**"), unless sooner terminated under these Terms. Unless otherwise provided in the Order, the Order Term will extend for additional automatic terms, and FlightAware reserves a right to terminate any Order by providing Licensee a prior written notice of its intent to not renew before the expiration of the then-current term.

8.2      Termination for Cause. In addition to any other rights either Party may have, including under Arts. 5.4 above and 22 below:

i.     Other than in the event of an invoice dispute under Art. 5.4, either Party may terminate the Order upon a material breach which remains uncured after thirty (30) days' written notice.

ii.    FlightAware may immediately terminate any and all Orders for cause if Licensee fails to pay any undisputed fee when due under any Order following attempted resolution in accordance with Art. 5.4.

iii.   Upon termination for cause, Licensee shall pay FlightAware at the agreed-upon rates for Data Services actually provided through the effective date of termination, plus the lesser of (i) all fees remaining to be paid during the balance of the terminated Order, or (ii) twelve times the average monthly payment invoiced by FlightAware during the twelve months (or any portion thereof) of the Order Term of the Order immediately preceding the date of termination. Licensee agrees that FlightAware's damages in the event of breach would otherwise be difficult or impossible to quantify, such that this clause shall constitute liquidated damages and not a penalty in such event, plus any late fees as may be assessed under Art. 5.3.

8.3      Discontinued Data Services. In the event FlightAware discontinues offering any Data Services during the Order Term, Parties agree to mutually negotiate a transition to other Data Services when available at the then current rates. In the absence of such agreement, either Party may terminate an applicable Order with no further liability to the other Party, provided Licensee pays FlightAware at the agreed-upon rates for Data Services provided through the effective date of such termination.

8.4      Termination for Insolvency. If either Party (i) becomes insolvent; (ii) voluntarily becomes the subject of any insolvency proceeding; whether under the United States Bankruptcy Code or other applicable insolvency law; (iii) involuntarily becomes the subject of any insolvency proceeding, whether under the United States Bankruptcy Code or other applicable insolvency law, that is not dismissed within sixty (60) days; (iv) makes any assignment for the benefit of a Party's creditors; (v) consents to or is subject to the appointment of a receiver, liquidator or trustee of any of a Party's assets; (vi) generally fails to pay its obligations as they come due; or (vii) experiences the liquidation, dissolution or winding up of its business (each, an "**Event of Insolvency**"), then the Party affected by any Event of Insolvency must immediately give notice of the Event of Insolvency to the other Party, and the other Party may terminate all Orders by notice to the affected Party.

## ART. 9. LIMITATION OF LIABILITY

9.1    THE AGGREGATE LIABILITY OF FLIGHTAWARE AND ITS SUPPLIERS AND LICENSORS TO LICENSEE FOR ALL CLAIMS RELATED TO DATA SERVICES, OR FLIGHTAWARE'S PERFORMANCE OR LACK OF PERFORMANCE OF ANY ORDER, WHETHER BASED ON AN ACTION IN CONTRACT, EQUITY, NEGLIGENCE, WARRANTY, STRICT LIABILITY, TORT OR OTHER THEORY, EVEN IF FLIGHTAWARE HAS BEEN ADVISED OF THE POSSIBILITY OF THAT LIABILITY, WILL NOT EXCEED AN AMOUNT EQUAL TO TWELVE (12) MONTHS OF AGGREGATE FEES ACTUALLY PAID BY LICENSEE TO FLIGHTAWARE DURING THE TWELVE-MONTH PERIOD PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY (OR IF THE LIABILITY ARISES IN THE FIRST TWELVE (12) MONTHS OF PERFORMANCE OF THE ORDER, THE AMOUNT OF FEES PAYABLE BY LICENSEE TO FLIGHTAWARE DURING THE FIRST TWELVE (12) MONTHS OF SUCH ORDER).

9.2    NOTWITHSTANDING ANY OTHER PROVISION HEREOF, IN NO EVENT SHALL FLIGHTAWARE, ITS SUPPLIERS OR LICENSORS, OR THEIR RESPECTIVE DIRECT OR INDIRECT SUBSIDIARIES, AFFILIATES, AGENTS, EMPLOYEES OR REPRESENTATIVES BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND, IN CONNECTION WITH OR ARISING OUT OF THESE TERMS EVEN IF FLIGHTAWARE OR LICENSEE HAS BEEN ADVISED OF THE POSSIBILITY OF THOSE DAMAGES.

### ART. 10. INDEMNIFICATION

10.1    Each Party shall, at its own expense, defend, indemnify and hold harmless the other Party, its parent, and its respective employees, agents, subsidiaries, and affiliates, from and against any and all claims, losses, judgments, costs, awards, expenses (including reasonable attorneys' fees, expert witness fees and costs of settlement) where damages are suffered by the Party to be indemnified arising out of an act or omission of the indemnifying Party, which act or omission proximately causes a violation of an applicable law, or other legally enforceable and applicable government ordinance, requirement, mandate, or regulation.

10.2    Licensee will, at its own expense, defend, indemnify and hold harmless FlightAware and its respective employees, agents, subsidiaries, and affiliates, from and against any and all claims, losses, judgments, costs, awards, expenses (including reasonable attorneys' fees, expert witness fees and costs of settlement) and liability of any kind arising out of or relating to:

   i.    actual or alleged infringement or violation of any intellectual property right, including, without limitation, trademarks, service marks, patents, copyrights, misappropriation of trade secrets or any similar proprietary rights, Confidential Information or any violation of any third-party rights based upon Licensee's use of the Data Services; and

   ii.    any use of Data Services in any manner which fails to comply with the applicable license and permitted use terms, conditions and restrictions.

10.3    If any Data Services become, or in FlightAware's sole discretion are likely to become, the subject of an intellectual property infringement claim based on an allegation that Data Services rendered or sold by FlightAware under these Terms directly infringe a valid and enforceable United States patent, FlightAware shall defend or at its option settle, any claim, suit, or proceeding ("**Claim**") brought against Licensee, and FlightAware shall indemnify Licensee against any court awarded damages incurred by Licensee as a result of such Claim, provided: (a) FlightAware is notified promptly by Licensee in writing of the Claim and (b) FlightAware is given exclusive authority by Licensee and reasonable information and assistance by Licensee for the defense and/or settlement thereof. In addition to FlightAware's rights and obligations in the foregoing sentence, if, in FlightAware's reasonable opinion, sale or use of any Data Services to Licensee under these Terms is likely to be enjoined, FlightAware may, at its option: (a) obtain for Licensee the right to continue using the Data Services; (b) replace the Data Services with non-infringing goods; (c) modify the Data Services so they become non-infringing; or (d) refund to Licensee a pro-rata portion of the purchase price for the Data Services. FlightAware has no liability for, and will not indemnify, any Claim based upon any infringement: (a) by Data Services rendered according to a design, specification, or instruction provided or requested by Licensee; (b) based upon the combination, operation or use of the Data Services with other products, services, processes or data not supplied by FlightAware; (c) resulting from changes made to the Data Services without FlightAware's prior written consent, or (d) resulting from improvements and modifications to Data Services, including derivative works, made by Licensee. Notwithstanding any other Article to the contrary, the foregoing in this Article 10.3 states the entire obligation of FlightAware with respect to intellectual property infringement indemnification.

10.4    The indemnified Party will give the indemnifying Party a prompt written notice of any threat, warning or notice of any such claim or action.

10.5    The indemnifying Party may conduct the defense of any such claim or action and, consistent with the indemnified Party's rights, all negotiations for its settlement. The indemnified Party may participate in such defense or negotiations to protect its interests. Unless the indemnified otherwise agrees, any settlement reached shall be confidential, shall contain no admissions of wrongdoing or fault on the part of the indemnified, and will not obligate the indemnified in any way.

10.6    This Article 10 contains the entirety of FlightAware's indemnification obligations to Licensee.

### ART. 11. CONFIDENTIAL INFORMATION, DATA PRIVACY AND CYBERSECURITY

11.1    Confidential Information.

   i.    Definitions. Each Party (the "**Disclosing Party**") may from time to time during the term of the Order disclose to the other Party (the "**Receiving Party**") certain non-public, commercially proprietary or sensitive information, which shall be designated and marked as "confidential" or "proprietary" or similar designation, that relates to the past, present or future business activities of the Disclosing Party or its subsidiaries or affiliates, or their respective employees, customers or third-party suppliers or contractors, including technical, marketing, financial, employee, planning,

and other confidential and proprietary information (the "**Confidential Information**").

ii.  Duty of Care. The Receiving Party will hold such Confidential Information as is actually designated in a clear and conspicuous way in trust and confidence for the Disclosing Party and, except as may be authorized by the Disclosing Party, will not disclose such information to any person, firm or enterprise. The Receiving Party will not use any Confidential Information of the Disclosing Party for any purpose not expressly permitted by the Disclosing Party, and will treat all Confidential Information of the Disclosing Party with the same degree of care that the Receiving Party treats its own confidential or proprietary information, but in no event less than reasonable care. The Receiving Party may disclose Confidential Information of the Disclosing Party to the Receiving Party's employees, and to any of the Receiving Party's contractors who are bound to the Receiving Party by confidentiality obligations substantially equivalent to those set forth in this Art. 11, solely as required in order for the Receiving Party, but only to the extent those employees or contractors have a need to know such Confidential Information in performance of the Parties' mutual purposes under the Order, or in the case of Licensee, as and to the extent necessary for the conduct of its business or to the extent necessary for performance of services for Licensee but subject to and in compliance with these Terms. Receiving Party may disclose Disclosing Party's Confidential Information to its professional advisors, and to the employees and contractors of its parent, subsidiaries and subsidiaries of its parent who are bound to the Receiving Party by confidentiality obligations substantially equivalent to those set forth in this Ar.11 and bound to use such Confidential Information solely for the benefit of the Receiving Party. Except as expressly stated herein, FlightAware shall not resell, assign, or permit any third-party to access Licensee's Confidential Information, any other Licensee data, or Licensee systems. Except as expressly stated herein, Licensee shall not resell, assign, or permit any third-party to access FlightAware's Confidential Information, any FlightAware data, or the Data Services, all of which are the Confidential Information of FlightAware.

iii.  Exclusions. Information shall not be considered Confidential Information to the extent, but only to the extent, that such information:

   a.  was already known to the Receiving Party free of any restriction at the time it is obtained from the Disclosing Party;

   b.  is subsequently learned from an independent third-party free of any restrictions and without breach of these Terms, any Order or any other agreements;

   c.  is or becomes publicly available through no wrongful act of the Receiving Party; or

   d.  is independently developed by the Receiving Party without reference to any Confidential Information.

iv.  Disclosure under law, rule or order. The Receiving Party may disclose Confidential Information of the Disclosing Party if required to do so under applicable law, rule or order, provided that the Receiving Party, where reasonably practicable and to the extent legally permissible, provides the Disclosing Party with prior written notice of the required disclosure so that the Disclosing Party may seek a protective order or other appropriate remedy, and provided further that the Receiving Party discloses no more Confidential Information of the Disclosing Party than is reasonably necessary in order to respond to the required disclosure in the opinion of the Disclosing Party's legal counsel.

v.  Breach or Threatened Breach. In the event of a breach or threatened or attempted breach of the Receiving Party's obligations with respect to the Confidential Information, the Disclosing Party may have no adequate remedy in damages and, accordingly, may immediately seek injunctive relief against such breach or threatened or attempted breach. The Parties agree that no bond need be first obtained or, in the event that the requirement of a bond cannot be waived, then that a nominal bond shall suffice.

vi.  Return of Confidential Information. Each Party may retain copies of the Confidential Information, as applicable, to the extent required to comply with applicable legal and regulatory requirements and on its backup and passive data storage systems. Such Confidential Information, as applicable, will remain subject to the terms and conditions herein. Otherwise, at the reasonable request of the Disclosing Party, the Receiving Party agrees to: (i) return to the Disclosing Party the Confidential Information; or (ii) destroy or permanently erase on all forms of recordation the Confidential Information and, if requested by the Disclosing Party, acknowledge in writing that all such Confidential Information has been destroyed or permanently erased.

11.2  Data Privacy.

i.  Compliance. The Parties recognize and agree that, in relation to the Data Services, each shall have the responsibility of acting as an independent controller for personal data in its possession, custody, or control. As such, the exchange of personal data from either Party for the purposes of managing the business transaction under these Terms shall be protected in accordance with the confidentiality requirements contained herein as well as the applicable data protection regulations, including without limitation, the General Data Protection Regulation ("**GDPR**"), the Data Protection Act of 2018, and any other applicable privacy laws and regulations, as updated, amended or replaced from time to time.

ii.  Data Transfers. If, as a result of managing the business transaction between the Parties, personal data will be cross- border transferred from any country in the European Economic Area, the United Kingdom or Switzerland (collectively, "**EEA/UK/CH**") to outside the EEA/UK/CH that do not have an adequacy decision, then the Parties hereby agree that the Standard Contractual Clauses adopted by the

European Commission in Decision 2021/914/EU (hereinafter the "**SCCs**") are incorporated by reference as if set forth herein. In addition, transfers from the UK to locations outside the UK that do not have an adequacy decision shall also be governed by the Mandatory Clauses of the Approved Addendum, being the template Addendum B.1.0 issued by the Information Commissioner's Office and laid before Parliament in accordance with s119A of the Data Protection Act 2018 on 2 February 2022, as it is revised under Section 18 of those Mandatory Clauses, which are incorporated by reference as if set forth herein (hereinafter "**UK Mandatory Clauses**"). In furtherance of the foregoing, the Parties agree that:

a.    Module One shall be applicable to the transaction.

b.    Option 2 for Clause 17 of the SCCs applies and the data exporter at issue shall be the relevant one. Except for transfers from the UK, which shall be governed by the law of England and Wales, the law of Belgium shall be the governing law if the applicable EU Member State does not allow for third-party beneficiary rights.

c.    For clause 18 of the SCCs, disputes shall be resolved in the courts of the EU Member State for the relevant data exporter. If there are multiple relevant data exporters, the Parties agree to jurisdiction and forum of the courts of Belgium, except for disputes arising solely out of a transfer from the UK, for which the Parties agree to the jurisdiction and forum of the courts of England and Wales.

d.    If there is any conflict between the SCCs (as modified by the UK Mandatory Clauses where applicable), the Terms, this Art.11.2, or any statement of work or order thereunder, the SCCs shall prevail.

e.    If the SCCs are modified by law or regulation (such as by action of the European Union), the Parties agree that, to the extent permitted by law, the modified version will automatically become effective and replace previous version

11.3    EU Data Act (EU Regulation 2023/2854, "**EU Data Act**"). The Data Services under these Terms may generate or collect data. FlightAware will make or has made certain information to Licensee relating to such data available to Licensee under the EU Data Act, if applicable. The type, format, and volume of data generated or collected will vary depending on the product or service, including whether the product or service can generate data continuously and in real-time and its data storage capabilities. Some FlightAware products or services can by themselves send data to a server. Duration of any data storage will also depend on whether Licensee or FlightAware is storing the data. Access, retrieval, and erasure of data may also vary by product or service and Licensee's Order. In the event the Licensee does not have access to the above information, Licensee may contact support at flightaware.com.

11.4    Cybersecurity. Both Parties are responsible for maintaining the security of their own systems, servers, and communications links, and, as the case may be, for providing secure access to those systems and information, including to the personal data, if any, that may be provided pursuant to the use of the Data Services. Licensee acknowledges that FlightAware does not control the transfer of data over telecommunications facilities and that the Internet is inherently insecure and provides opportunity for unauthorized access by third-parties.

## ART. 12. INSURANCE

Each Party agrees to obtain and maintain in effect at all times at its sole option and expense such minimum insurance coverages as are reasonable, necessary and appropriate for the conduct of its business.

## ART. 13. ADVERTISING AND PUBLICITY

Unless expressly authorized in the Order, neither Party may use the names, characters, artwork, designs, trade names, trademarks or service marks of the other Party without express consent of the other Party prior to each such use.

## ART. 14. ASSIGNMENT AND ASSUMPTION

Licensee may not assign any of its rights or delegate any of its duties under the Order, nor assign the Order in whole or part, without the prior written consent of FlightAware, which consent shall not be unreasonably delayed, denied or conditioned.

## ART. 15. NOTICES

All notices will be in writing and may be delivered in any commercially reasonable manner to the addresses specified in the Order.

## ART. 16. OVERALL AGREEMENT

16.1    The Order and These Terms Constitute an Entire Agreement. The Parties understand that they may enter into one or more Orders. Each Order will incorporate these Terms, and each is an integrated contract. Each Order constitutes the entire agreement between the Parties as to its own subject matter, and supersedes all previous agreements, promises, proposals, representations, understandings and negotiations, whether written or oral, between the Parties pertaining to that subject matter. All other terms proposed by Licensee are expressly rejected. This shall constitute the final, complete, and exclusive statement of the Terms.

16.2    Modification to These Terms. FlightAware reserves the right to make non-material changes (e.g. typographical errors, grammatical mistakes, and similar changes) without a prior notice to its Licensees. Terms may otherwise change from time to time by modification, amendment or supplement. FlightAware will provide written notice of any material change to these Terms prior to the effective date of any such change. Such notice to be provided in advance to the extent commercially reasonable. No material change to these Terms shall have any effect on the Order unless: (i) in FlightAware's sole discretion, the material change is required to comply with

**FLIGHTAWARE TERMS AND CONDITIONS**                    **July 2026**

law; or (ii) the Licensee has accepted the material change. Licensees accepts material changes either in any commercially reasonable writing, or by continuing to use Data Services following the effective date specified in the notice of a material change.

16.3    Modifications to Orders. The Parties may modify Orders at any time in any commercially reasonable way, or as otherwise specified in the Order. Orders may be executed by electronic signature by one or both Parties, as the Parties choose.

16.4    Waiver. At no time will any failure or delay by either Party in enforcing any provisions, exercising any option, or requiring performance of any provisions, be construed to be a waiver of same.

## ART. 17. COUNTERPARTS

The Orders may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission, by e-mail delivery of a ".pdf" format data file, or by other electronic means, such signature shall create a valid and binding obligation of the Party executing (or on whose behalf such signature is executed).

## ART. 18. THIRD-PARTY BENEFICIARIES

Except as set forth in the Order, Orders are for the sole benefit of the Parties hereto and their successors and permitted assigns and nothing herein express or implied shall give or be construed to give any person other than the Parties any legal or equitable rights.

## ART. 19. RELATIONSHIP OF THE PARTIES

The Parties are independent contractors. Nothing in the Order or these Terms will be construed to create any franchise, joint venture, trust, partnership or any other similar relationship between the Parties for any purpose whatsoever.

## ART. 20. SEVERABILITY

If any term, provision or part of these Terms is to any extent held invalid, void or unenforceable, the remainder of will not be impaired or affected thereby, and each term, provision and part will continue in full force and effect and will be valid and enforceable to the fullest extent permitted by law.

## ART. 21. SURVIVAL

Any provision of these Terms which contemplates performance or observance subsequent to termination or expiration of the Order will survive termination or expiration of such Order and continue in full force and effect.

## ART. 22. GOVERNING LAW AND VENUE

22.1    Resolution. In the event of a dispute, controversy or claim arising out of or in connection with the Order, or these Terms, or their interpretation, including allegations of breach, rights to termination, or validity, the Parties shall attempt to resolve the same through good faith consultation within thirty (30) days' written notice and demand therefore, subject to the hundred and twenty (120) day limitation on invoice disputes under Art. 5.5. If any dispute other than a dispute solely over timely payment remains unresolved following such consultation, or any dispute regarding payment remains unresolved for sixty (60) days after the original due date, either Party may exercise its rights as for breach, including those under Art. 8.2 above.

22.2    Choice of Law. In all respects these Terms will be governed by, and construed in accordance with, the substantive laws of the State of New York without regard to conflict of law principles. The Parties agree that the UN Convention on Contracts for the International Sale of Goods (Vienna) shall not apply to these Terms or to any dispute or transaction arising hereunder.

22.3    Venue. Licensee agrees that the state and federal courts located in New York, USA, shall constitute the sole and exclusive forum for the resolution of any and all claims and disputes arising out of or in connection with the Terms. Licensee hereby consents to the jurisdiction of such courts and irrevocably waives any objections thereto, including on grounds of forum non conveniens, regardless of the location from which Licensee accesses the Data Services.

## ART. 23. FORCE MAJEURE

For the Data Services paid in arrears, Force Majeure shall not excuse timely performance of any obligation to pay money. Neither Party will be liable to the other Party for any interruption, delay, failure in performance, loss or damage due to fire, explosions, power blackouts, pandemic, earthquakes, floods, the elements, strikes, embargo, labor disputes, acts of civil or military authority, war, terrorism, acts of God, terrorism or other causes similar to the foregoing ("**Force Majeure Events**"); provided (i) such Party promptly notified the other party of the Force Majeure Event where reasonably feasible; (ii) such Party did not contribute in any way to such event; (iii) such occurrence could not have been avoided by commercially reasonable precautions and cannot be circumvented through the use of commercially reasonable alternative sources, workaround plans or other means; and (iv) such Party continues to use all commercially reasonable efforts to recommence performance whenever and to whatever extent possible. If such Force Majeure Event continues for more than thirty (30) days, the Party not under Force Majeure may deem the same to constitute frustration of purpose and may therefore terminate any affected Orders without liability as of the date specified in a written notice thereof to the other Party.

## ART. 24. EXPORT REQUIREMENTS

"**GTC Laws**" shall mean the customs, export control, anti-boycott, and sanctions laws of the United States and other countries applicable to these Terms and the Order. Licensee agrees it will comply with all applicable GTC Laws. Licensee agrees that none of its personnel who will have access to the Data Services are restricted by law or regulation, including but not limited to, the Export Administration Regulations (EAR), Office of Foreign Asset Controls (OFAC) and the International Traffic in Arms Regulation (ITAR). FlightAware reserves the right



to delay delivery of Data Services pending GTC Laws due diligence and review, provided such due diligence does not unreasonably delay delivery of Data Services. The Licensee will not re-export or otherwise transfer the FlightAware Data or Data Services to entities, individuals, and /or governments of countries or regions that are subject to sanctions or other restrictions as stated in the GTC Laws. The Licensee will not re-export or otherwise transfer FlightAware Data and Data Services to any country or person without authorization if required by GTC Laws. FlightAware may terminate the Order for noncompliance of this provision with no further liability to FlightAware.

### ART. 25 ETHICS AND COMPLIANCE

25.1    FlightAware is committed to conducting its business fairly, impartially, and in an ethical and proper manner. Accordingly, FlightAware represents that:

  i.    as a Supplier, it has adopted its own Business Code of Conduct (the RTX Code of Conduct);

  ii.   FlightAware requires its employees to certify on annual basis that they have read and understand the RTX Code of Conduct; and

  iii.  its employees are required to conduct their affairs in accordance therewith.

25.2    For more information, please visit RTX Ethics and Compliance.

# EXHIBIT 6

Int. Cl.: 39

Prior U.S. Cls.: 100 and 105

**United States Patent and Trademark Office**

Reg. No. 3,222,789

Registered Mar. 27, 2007

## SERVICE MARK
### PRINCIPAL REGISTER

# FlightAware

FLIGHTAWARE. LLC (TEXAS LTD LIAB CO)
2450 LOUISIANA STREET. SUITE 400-510
HOUSTON. TX 77006

FOR: COMMERCIAL AND NON-COMMERCIAL FLIGHT TRACKING SERVICES, NAMELY, PROVIDING ARRIVAL. DEPARTURE. AND REAL-TIME POSITION INFORMATION FOR COMMERCIAL AND NON-COMMERCIAL FLIGHTS. IN CLASS 39 (U.S. CLS. 100 AND 105).

FIRST USE 9-30-2005; IN COMMERCE 9-30-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT. STYLE. SIZE. OR COLOR.

SER. NO. 78-897,299, FILED 5-31-2006.

ALICE BENMAMAN. EXAMINING ATTORNEY

# EXHIBIT 7

PTO Form 1583 (Rev 5/2006)
OMB No. 0651-0055 (Exp 07/31/2018)

# Combined Declaration of Use and Incontestability under Sections 8 & 15

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **REGISTRATION NUMBER** | 3222789 |
| **REGISTRATION DATE** | 03/27/2007 |
| **SERIAL NUMBER** | 78897299 |
| **MARK SECTION** | |
| **MARK** | FLIGHTAWARE |
| **ATTORNEY SECTION (current)** | |
| **NAME** | John C. McNett |
| **FIRM NAME** | WOODARD, EMHARD, MORIARTY, MCNETT & HENR |
| **STREET** | 111 MONUMENT CIR STE 3700 |
| **CITY** | INDIANAPOLIS |
| **STATE** | Indiana |
| **POSTAL CODE** | 46204-5137 |
| **COUNTRY** | United States |
| **PHONE** | (317) 634-3456 |
| **FAX** | (317) 637-7561 |
| **ATTORNEY SECTION (proposed)** | |
| **NAME** | John C. McNett |
| **FIRM NAME** | WOODARD, EMHARDT, MORIARTY, MCNETT & HENRY LLP |
| **STREET** | 111 MONUMENT CIR STE 3700 |
| **CITY** | INDIANAPOLIS |
| **STATE** | Indiana |
| **POSTAL CODE** | 46204-5137 |
| **COUNTRY** | United States |
| **PHONE** | (317) 634-3456 |
| **FAX** | (317) 637-7561 |
| **EMAIL** | jmcnett@uspatent.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | Yes |
| **DOCKET/REFERENCE NUMBER** | 006296-000002 |
| **OTHER APPOINTED ATTORNEY** | John V. Moriarty; John C. McNett; Thomas Q. Henry; James M. Durlacher; Charles R. Reeves; Vincent O. Wagner; Steve Zlatos; Spiro Bereveskos; Daniel J. Lueders; Kenneth A. Gandy; Timothy N. Thomas; Kurt N. Jones; Charles J. Meyer; Lisa A. Hiday; Christopher A. Brown; Charles P. Schmal; Quentin G. Cantrell; Marta L. Paul; Elizabeth A. Shuster; Timothy B. Paul; |

| | James R. Blaufuss; Bobak P. Jalaie; William A. McKenna; Jeremy J. Gustrowsky. |
|---|---|

## CORRESPONDENCE SECTION (current)

| | |
|---|---|
| **NAME** | JOHN C. MCNETT |
| **FIRM NAME** | WOODARD, EMHARD, MORIARTY, MCNETT & HENR |
| **STREET** | 111 MONUMENT CIR STE 3700 |
| **CITY** | INDIANAPOLIS |
| **STATE** | Indiana |
| **POSTAL CODE** | 46204-5137 |
| **COUNTRY** | United States |
| **PHONE** | (317) 634-3456 |
| **FAX** | (317) 637-7561 |

## CORRESPONDENCE SECTION (proposed)

| | |
|---|---|
| **NAME** | JOHN C. MCNETT |
| **FIRM NAME** | WOODARD, EMHARDT, MORIARTY, MCNETT & HENR |
| **STREET** | 111 MONUMENT CIR STE 3700 |
| **CITY** | INDIANAPOLIS |
| **STATE** | Indiana |
| **POSTAL CODE** | 46204-5137 |
| **COUNTRY** | United States |
| **PHONE** | (317) 634-3456 |
| **FAX** | (317) 637-7561 |
| **EMAIL** | jmcnett@uspatent.com;docketing@uspatent.com; gkellermeier@uspatent.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | Yes |
| **DOCKET/REFERENCE NUMBER** | 006296-000002 |

## GOODS AND/OR SERVICES SECTION

| | |
|---|---|
| **INTERNATIONAL CLASS** | 039 |
| **GOODS OR SERVICES** | Commercial and non-commercial flight tracking services, namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights |
| **SPECIMEN FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | SPN0-206532382-093721236_._FlightAware_Specimen.pdf |
| **CONVERTED PDF FILE(S) (1 page)** | \\TICRS\EXPORT11\IMAGEOUT11\788\972\78897299\xml2\8150002.JPG |
| **SPECIMEN DESCRIPTION** | home page of their website |

## OWNER SECTION (current)

| | |
|---|---|
| **NAME** | FlightAware, LLC |
| **STREET** | Eight Greenway Plaza, Suite 1300 |
| **CITY** | Houston |

| STATE | Texas |
|---|---|
| ZIP/POSTAL CODE | 77046 |
| COUNTRY | United States |
| PHONE | 713-877-9010 |
| FAX | 713-877-9020 |
| **LEGAL ENTITY SECTION (current)** | |
| TYPE | limited liability company |
| STATE/COUNTRY WHERE LEGALLY ORGANIZED | Texas |
| **LEGAL ENTITY SECTION (proposed)** | |
| TYPE | limited liability company |
| STATE/COUNTRY WHERE LEGALLY ORGANIZED | Texas |
| **PAYMENT SECTION** | |
| NUMBER OF CLASSES | 1 |
| NUMBER OF CLASSES PAID | 1 |
| SUBTOTAL AMOUNT | 300 |
| TOTAL FEE PAID | 300 |
| **SIGNATURE SECTION** | |
| SIGNATURE | /John C. McNett/ |
| SIGNATORY'S NAME | John C. McNett |
| SIGNATORY'S POSITION | Attorney for Applicant |
| DATE SIGNED | 04/20/2012 |
| SIGNATORY'S PHONE NUMBER | 317-713-4906 |
| PAYMENT METHOD | CC |
| **FILING INFORMATION** | |
| SUBMIT DATE | Fri Apr 20 12:57:07 EDT 2012 |
| TEAS STAMP | USPTO/S08N15-XXX.XX.XXX.X -20120420125707412347-322 2789-4903ccefd77cb92c5263 81dfd9cde961c66-CC-10075- 20120420093721236464 |

PTO Form 1583 (Rev 5/2006)
OMB No. 0651-0055 (Exp 07/31/2018)

### Combined Declaration of Use and Incontestability under Sections 8 & 15
**To the Commissioner for Trademarks:**

**REGISTRATION NUMBER:** 3222789
**REGISTRATION DATE:** 03/27/2007

**MARK:** FLIGHTAWARE

The owner, FlightAware, LLC, a limited liability company legally organized under the laws of Texas, having an address of
    Eight Greenway Plaza, Suite 1300
    Houston, Texas 77046
    United States
is filing a Combined Declaration of Use and Incontestability under Sections 8 & 15.

For International Class 039, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Commercial and non-commercial flight tracking services, namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services, or to indicate membership in the collective membership organization, listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods/services, or to indicate membership in the collective membership organization, exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one(or more) specimen(s) for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) home page of their website.

**Original PDF file:**
SPN0-206532382-093721236_._FlightAware_Specimen.pdf
**Converted PDF file(s)** (1 page)
Specimen File1
The registrant's current Attorney Information: John C. McNett of  WOODARD, EMHARD, MORIARTY, MCNETT & HENR
    111 MONUMENT CIR STE 3700
    INDIANAPOLIS, Indiana (IN) 46204-5137
    United States


The registrant's proposed Attorney Information: John C. McNett of  WOODARD, EMHARDT, MORIARTY, MCNETT & HENRY LLP
    111 MONUMENT CIR STE 3700
    INDIANAPOLIS, Indiana (IN) 46204-5137
    United States
The docket/reference number is 006296-000002.
The Other Appointed Attorney(s): John V. Moriarty; John C. McNett; Thomas Q. Henry; James M. Durlacher; Charles R. Reeves; Vincent O. Wagner; Steve Zlatos; Spiro Bereveskos; Daniel J. Lueders; Kenneth A. Gandy; Timothy N. Thomas; Kurt N. Jones; Charles J. Meyer; Lisa A. Hiday; Christopher A. Brown; Charles P. Schmal; Quentin G. Cantrell; Marta L. Paul; Elizabeth A. Shuster; Timothy B. Paul; James R. Blaufuss; Bobak P. Jalaie; William A. McKenna; Jeremy J. Gustrowsky..

The phone number is (317) 634-3456.

The fax number is (317) 637-7561.

The email address is jmcnett@uspatent.com.
The registrant's current Correspondence Information: JOHN C. MCNETT of  WOODARD, EMHARD, MORIARTY, MCNETT & HENR
    111 MONUMENT CIR STE 3700
    INDIANAPOLIS, Indiana (IN) 46204-5137
    United States

The registrant's proposed Correspondence Information: JOHN C. MCNETT of  WOODARD, EMHARDT, MORIARTY, MCNETT & HENR
   111 MONUMENT CIR STE 3700
   INDIANAPOLIS, Indiana (IN) 46204-5137
   United States
The docket/reference number is 006296-000002.


The phone number is (317) 634-3456.

The fax number is (317) 637-7561.

The email address is jmcnett@uspatent.com;docketing@uspatent.com; gkellermeier@uspatent.com.

A fee payment in the amount of $300 will be submitted with the form, representing payment for 1 class(es), plus any additional grace period fee, if necessary.

**Declaration**


*The mark is in use in commerce on or in connection with the goods and/or services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce. There has been no final decision adverse to the owner's claim of ownership of such mark, or to the owner's right to register the same or to keep the same on the register; and there is no proceeding involving said rights pending and not disposed of either in the U.S. Patent and Trademark Office or in the courts.*

The undersigned being hereby warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of this document, declares that he/she is properly authorized to execute this document on behalf of the Owner; and all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true.


Signature: /John C. McNett/     Date: 04/20/2012
Signatory's Name: John C. McNett
Signatory's Position: Attorney for Applicant
Signatory's Phone Number: 317-713-4906

Mailing Address **(current):**
  WOODARD, EMHARD, MORIARTY, MCNETT & HENR
  111 MONUMENT CIR STE 3700
  INDIANAPOLIS, Indiana 46204-5137

Mailing Address **(proposed):**
  WOODARD, EMHARDT, MORIARTY, MCNETT & HENRY LLP
  111 MONUMENT CIR STE 3700
  INDIANAPOLIS, Indiana 46204-5137

Serial Number: 78897299
Internet Transmission Date: Fri Apr 20 12:57:07 EDT 2012
TEAS Stamp: USPTO/S08N15-XXX.XX.XXX.X-20120420125707
412347-3222789-4903ccefd77cb92c526381dfd
9cde961c66-CC-10075-20120420093721236464

FlightAware - Flight Tracker / Flight Status / Flight Tracking                    http://flightaware.com/



## ROUTING SHEET TO POST REGISTRATION (PRU)

**Registration Number:** 3222789



**Serial Number:** 78897299



**RAM Sale Number:** 10075

**RAM Accounting Date:** 20120420

**Total Fees:** $300

Note: Process in accordance with Post Registration Standard Operating Procedure (SOP)

| Transaction | Fee Code | Transaction Date | Fee per Class | Number of Classes | Number of Classes Paid | Total Fee |
|---|---|---|---|---|---|---|
| §8 affidavit | 7205 | 20120420 | $100 | 1 | 1 | $100 |
| §15 affidavit | 7208 | 20120420 | $200 | 1 | 1 | $200 |

Physical Location: 900  - FILE REPOSITORY (FRANCONIA)

Lost Case Flag: False

In TICRS (AM-FLG-IN-TICRS): True

**Transaction Date:** 20120420



# EXHIBIT 8

# United States of America
## United States Patent and Trademark Office

**FlightAware**

**Reg. No. 6,105,770**

**Registered Jul. 21, 2020**

**Int. Cl.: 38, 39, 42**

**Service Mark**

**Principal Register**

FlightAware LLC  (TEXAS LIMITED LIABILITY COMPANY)
Eleven Greenway Plaza, Suite 2900
Houston, TEXAS 77046

CLASS 38: Providing access to an on-line computer database featuring information on flight tracking and air transportation; data as a service (DAAS), namely, providing access to data stored electronically in central files for remote consultation and multiple-user access in the field of flight tracking and air transportation

FIRST USE 12-5-2006; IN COMMERCE 12-5-2006

CLASS 39: Flight and aircraft tracking services , namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights; flight and aircraft data tracking services, namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights; providing flight and aircraft tracking information via mobile applications; flight tracking and flight status reporting services, namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights, providing a real-time display of aircraft positions based on automatic dependent surveillance-broadcast (ADS-B) signals received, and providing flight arrival and departure information; providing historical flight data; providing data from an online computer database featuring information on flight tracking and air transportation; providing a website featuring flight and aircraft tracking information

FIRST USE 12-5-2006; IN COMMERCE 12-5-2006

CLASS 42: Application service provider featuring application programming interface (API) software for providing data in the field of flight tracking and air transportation; software as a service (SAAS) featuring software for data analysis and data reporting in the field of flight tracking and air transportation; data mining in the field of flight tracking and air transportation

FIRST USE 12-5-2006; IN COMMERCE 12-5-2006

The mark consists of the stylized words "FLIGHTAWARE" with the silhouette of an airplane facing right in front of a flight path consisting of a curved dotted line, the flight path forms the horizontal part of the letter "A" and extends upward to the plane above the letters "RE".

SER. NO. 88-640,986, FILED 10-03-2019

Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT 9

PTO- 1583
Approved for use through 01/31/2025. OMB 0651-0055
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Combined Declaration of Use and Incontestability under Sections 8 & 15

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **REGISTRATION NUMBER** | 6105770 |
| **REGISTRATION DATE** | 07/21/2020 |
| **SERIAL NUMBER** | 88640986 |
| **MARK SECTION** | |
| **MARK** | FLIGHTAWARE (stylized and/or with design, see mark) |
| **ATTORNEY INFORMATION (current)** | |
| **NAME** | Charles J. Meyer |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | WOODARD, EMHARDT, HENRY, REEVES & WAGNER, LLP |
| **STREET** | 111 MONUMENT CIRCLE, SUITE 3700 |
| **CITY** | INDIANAPOLIS |
| **STATE** | Indiana |
| **POSTAL CODE** | 46204 |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| **PHONE** | 317-634-3456 |
| **FAX** | (317) 637-7561 |
| **EMAIL** | cjmeyer@uspatent.com |
| **DOCKET/REFERENCE NUMBER** | 6296-101 |
| **ATTORNEY INFORMATION (proposed)** | |
| **NAME** | Erik N. Lund |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | Whitestone Law PLLC |
| **STREET** | 8000 Westpark Drive. Suite 250 |
| **CITY** | Mclean |
| **STATE** | Virginia |
| **POSTAL CODE** | 22102 |

| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
|---|---|
| EMAIL | trademarks@whitestone.law |
| DOCKET/REFERENCE NUMBER | UT6644/US/1/ |
| OTHER APPOINTED ATTORNEY | Andrew Stewart and Anthony Mercaldi and all other attorneys of Whitestone Law |

## CORRESPONDENCE INFORMATION (current)

| NAME | Charles J. Meyer |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | cjmeyer@uspatent.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | danielle@uspatent.com; docketdept@uspatent.com |
| DOCKET/REFERENCE NUMBER | 6296-101 |

## CORRESPONDENCE INFORMATION (proposed)

| NAME | Erik N. Lund |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | trademarks@whitestone.law |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | NOT PROVIDED |
| DOCKET/REFERENCE NUMBER | UT6644/US/1/ |

## GOODS AND/OR SERVICES SECTION

| INTERNATIONAL CLASS | 038 |
|---|---|
| GOODS OR SERVICES | Providing access to an on-line computer database featuring information on flight tracking and air transportation; data as a service (DAAS), namely, providing access to data stored electronically in central files for remote consultation and multiple-user access in the field of flight tracking and air transportation |

### SPECIMEN FILE NAME(S)

| ORIGINAL PDF FILE | SPN0-2600404024894f004873 d541f16248-20260522115243 625237_._FlightAware_-_Fl ight_Tracker___Flight_Sta tus.pdf |
|---|---|
| CONVERTED PDF FILE(S) (7 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150002.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150003.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150004.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150005.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150006.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150007.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150008.jpg |
| SPECIMEN DESCRIPTION | printout of registrant's website where the trademark is depicted in connection to a description of the listed services |

| | |
|---|---|
| **WEBPAGE URL** | https://www.flightaware.com |
| **WEBPAGE DATE OF ACCESS** | 05/22/2026 |
| **INTERNATIONAL CLASS** | 039 |
| **GOODS OR SERVICES** | Flight and aircraft tracking services , namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights; flight and aircraft data tracking services, namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights; providing flight and aircraft tracking information via mobile applications; flight tracking and flight status reporting services, namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights, providing a real-time display of aircraft positions based on automatic dependent surveillance-broadcast (ADS-B) signals received, and providing flight arrival and departure information; providing historical flight data; providing data from an online computer database featuring information on flight tracking and air transportation; providing a website featuring flight and aircraft tracking information |
| **SPECIMEN FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | SPN1-2600404024894f004873 d541f16248-20260522115243 625237_._FlightAware_-_Fl ight_Tracker___Flight_Sta tus.pdf |
| **CONVERTED PDF FILE(S)** **(7 pages)** | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150009.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150010.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150011.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150012.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150013.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150014.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\ 8150015.jpg |
| **SPECIMEN DESCRIPTION** | printout of registrant's website where the trademark is depicted in connection to a description of the listed services |
| **WEBPAGE URL** | https://www.flightaware.com |
| **WEBPAGE DATE OF ACCESS** | 05/22/2026 |
| **INTERNATIONAL CLASS** | 042 |
| **GOODS OR SERVICES** | Application service provider featuring application programming interface (API) software for providing data in the field of flight tracking and air transportation; software as a service (SAAS) featuring software for data analysis and data reporting in the field of flight tracking and air transportation; data mining in the field of flight tracking and air transportation |
| **SPECIMEN FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | SPN2-2600404024894f004873 d541f16248-20260522115243 625237_._FlightAware_-_Fl ight_Tracker___Flight_Sta tus.pdf |

| CONVERTED PDF FILE(S)<br>(7 pages) | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\8150016.jpg |
|---|---|
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\8150017.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\8150018.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\8150019.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\8150020.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\8150021.jpg |
| | \\TICRS\EXPORT18\IMAGEOUT 18\886\409\88640986\xml8\8150022.jpg |
| SPECIMEN DESCRIPTION | printout of registrant's website where the trademark is depicted in connection to a description of the listed services |
| WEBPAGE URL | https://www.flightaware.com |
| WEBPAGE DATE OF ACCESS | 05/22/2026 |

## OWNER SECTION (current)

| NAME | FlightAware LLC |
|---|---|
| MAILING ADDRESS | Eleven Greenway Plaza, Suite 2900 |
| CITY | Houston |
| STATE | Texas |
| ZIP/POSTAL CODE | 77046 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| EMAIL | XXXX |

## OWNER SECTION (proposed)

| NAME | FlightAware LLC |
|---|---|
| MAILING ADDRESS | Eleven Greenway Plaza, Suite 2900 |
| CITY | Houston |
| STATE | Texas |
| ZIP/POSTAL CODE | 77046 |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| EMAIL | XXXX |

## LEGAL ENTITY SECTION (current)

| TYPE | limited liability company |
|---|---|
| STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY WHERE LEGALLY ORGANIZED | Texas |

## PAYMENT SECTION

| NUMBER OF CLASSES | 3 |
|---|---|

| NUMBER OF CLASSES PAID | 3 |
|---|---|
| COMBINED §§ 8 & 15 FILING FEE PER CLASS | 1725 |
| TOTAL FEE PAID | 1725 |
| **SIGNATURE SECTION** | |
| SIGNATURE | / Dennis P Cawley / |
| SIGNATORY'S NAME | Dennis P Cawley |
| SIGNATORY'S POSITION | Assistant Secretary - Intellectual Property |
| DATE SIGNED | 06/02/2026 |
| SIGNATURE METHOD | Sent to third party for signature |
| PAYMENT METHOD | DA |
| **FILING INFORMATION** | |
| SUBMIT DATE | Mon Jun 22 10:35:02 ET 2026 |
| TEAS STAMP | USPTO/S08N15-XXXX:XXXX:XX XX:XXXX:XXXX:XXXX:XXX:XXX -20260622103502641677-610 5770-910ea602ff87e73ed7aa bd0eeee6809287dd99782b761 c74739c65da74c806b-DA-350 27819-2026052211524362523 7 |

PTO- 1583

Approved for use through 01/31/2025. OMB 0651-0055

U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

<div align="center">

**Combined Declaration of Use and Incontestability under Sections 8 & 15**

</div>

**To the Commissioner for Trademarks:**

**REGISTRATION NUMBER:** 6105770
**REGISTRATION DATE:** 07/21/2020

**MARK:** (Stylized and/or with Design, FLIGHTAWARE (see, mark))

**Current:** The owner, FlightAware LLC, a limited liability company legally organized under the laws of Texas, having an address of
   Eleven Greenway Plaza, Suite 2900
   Houston, Texas 77046
   United States
   XXXX

**Proposed:** The owner, FlightAware LLC, a limited liability company legally organized under the laws of Texas, having an address of
   Eleven Greenway Plaza, Suite 2900
   Houston, Texas 77046
   United States
   XXXX
is filing a Combined Declaration of Use and Incontestability under Sections 8 & 15.

For International Class 038, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Providing access to an on-line computer database featuring information on flight tracking and air transportation; data as a service (DAAS), namely, providing access to data stored electronically in central files for remote consultation and multiple-user access in the field of flight tracking and air transportation; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services, or to indicate membership in the collective membership organization, listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods/services, or to indicate membership in the collective membership organization, exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one(or more) specimen(s) for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) printout of registrant's website where the trademark is depicted in connection to a description of the listed services.

**Original PDF file:**
SPN0-2600404024894f004873 d541f16248-20260522115243 625237 _. FlightAware_-_Fl ight_Tracker___Flight_Sta tus.pdf
**Converted PDF file(s)** (7 pages)
Specimen File1
Specimen File2
Specimen File3
Specimen File4
Specimen File5
Specimen File6
Specimen File7

Webpage URL: https://www.flightaware.com
Webpage Date of Access: 05/22/2026
For International Class 039, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Flight and aircraft tracking services , namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights; flight and aircraft data tracking services, namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights; providing flight and aircraft tracking information via mobile applications; flight tracking and flight status reporting services, namely, providing arrival, departure, and real-time position information for commercial and non-commercial flights, providing a real-time display of aircraft positions based on automatic dependent surveillance-broadcast (ADS-B) signals received, and providing flight arrival and departure information;

providing historical flight data; providing data from an online computer database featuring information on flight tracking and air transportation; providing a website featuring flight and aircraft tracking information; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services, or to indicate membership in the collective membership organization, listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods/services, or to indicate membership in the collective membership organization, exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one(or more) specimen(s) for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) printout of registrant's website where the trademark is depicted in connection to a description of the listed services.

**Original PDF file:**
SPN1-2600404024894f004873 d541f16248-20260522115243 625237_. FlightAware_-_Fl ight_Tracker___Flight_Sta tus.pdf
**Converted PDF file(s)** (7 pages)
Specimen File1
Specimen File2
Specimen File3
Specimen File4
Specimen File5
Specimen File6
Specimen File7

Webpage URL: https://www.flightaware.com
Webpage Date of Access: 05/22/2026
For International Class 042, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Application service provider featuring application programming interface (API) software for providing data in the field of flight tracking and air transportation; software as a service (SAAS) featuring software for data analysis and data reporting in the field of flight tracking and air transportation; data mining in the field of flight tracking and air transportation; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services, or to indicate membership in the collective membership organization, listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods/services, or to indicate membership in the collective membership organization, exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one(or more) specimen(s) for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) printout of registrant's website where the trademark is depicted in connection to a description of the listed services.

**Original PDF file:**
SPN2-2600404024894f004873 d541f16248-20260522115243 625237_. FlightAware_-_Fl ight_Tracker___Flight_Sta tus.pdf
**Converted PDF file(s)** (7 pages)
Specimen File1
Specimen File2
Specimen File3
Specimen File4
Specimen File5
Specimen File6
Specimen File7

Webpage URL: https://www.flightaware.com
Webpage Date of Access: 05/22/2026
The owner's/holder's current attorney information: Charles J. Meyer. Charles J. Meyer of WOODARD, EMHARDT, HENRY, REEVES & WAGNER, LLP, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

   111 MONUMENT CIRCLE, SUITE 3700
   INDIANAPOLIS, Indiana 46204
   United States
The docket/reference number is 6296-101.

The phone number is 317-634-3456.

The fax number is (317) 637-7561.

The email address is cjmeyer@uspatent.com

Charles J. Meyer submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

The owner's/holder's proposed attorney information: Erik N. Lund. Other appointed attorneys are Andrew Stewart and Anthony Mercaldi and all other attorneys of Whitestone Law. Erik N. Lund of Whitestone Law PLLC, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, and the attorney(s) is located at

8000 Westpark Drive. Suite 250
Mclean, Virginia 22102
United States
The docket/reference number is UT6644/US/1/.

The email address is trademarks@whitestone.law

Erik N. Lund submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

**Correspondence Information (current)**
Charles J. Meyer
PRIMARY EMAIL FOR CORRESPONDENCE: cjmeyer@uspatent.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): danielle@uspatent.com; docketdept@uspatent.com
The docket/reference number is 6296-101.

**Correspondence Information (proposed)**
Erik N. Lund
PRIMARY EMAIL FOR CORRESPONDENCE: trademarks@whitestone.law
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): NOT PROVIDED
The docket/reference number is UT6644/US/1/.

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the owner/holder and the owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).

A fee payment in the amount of $1725 will be submitted with the form, representing payment for 3 class(es), plus any additional grace period fee, if necessary.

<div align="center">

**Declaration**
</div>

☑ Unless the owner has specifically claimed excusable nonuse, the mark is in use in commerce on or in connection with the goods/services or to indicate membership in the collective membership organization identified above, as evidenced by the attached specimen(s).

☑ Unless the owner has specifically claimed excusable nonuse, the specimen(s) shows the mark as currently used in commerce on or in connection with the goods/services/collective membership organization.

☑ The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under 15 U.S.C. § 1062(c), and is still in use in commerce on or in connection with all goods/services, or to indicate membership in the collective membership organization, listed in the existing registration.

☑ There has been no final decision adverse to the owner's claim of ownership of such mark for such goods/services, or to indicate membership in the collective membership organization, or to the owner's right to register the same or to keep the same on the register.

☑ There is no proceeding involving said rights pending and not finally disposed of either in the United States Patent and Trademark Office or in a court.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission and the registration, declares that

all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

Signature: / Dennis P Cawley /     Date: 06/02/2026
Signatory's Name: Dennis P Cawley
Signatory's Position: Assistant Secretary - Intellectual Property
Signature method: Sent to third party for signature


Mailing Address **(current):**
   WOODARD, EMHARDT, HENRY, REEVES & WAGNER, LLP
   111 MONUMENT CIRCLE, SUITE 3700
   INDIANAPOLIS, Indiana 46204

Mailing Address **(proposed):**
   Whitestone Law PLLC
   8000 Westpark Drive. Suite 250
   Mclean, Virginia 22102

Serial Number: 88640986
Internet Transmission Date: Mon Jun 22 10:35:02 ET 2026
TEAS Stamp: USPTO/S08N15-XXXX:XXXX:XXXX:XXXX:XXXX:XX
XX:XXX:XXX-20260622103502641677-6105770-
910ea602ff87e73ed7aabd0eeee6809287dd9978
2b761c74739c65da74c806b-DA-35027819-2026
0522115243625237





**Connect our global flight map to your digital platforms.**

Optimize your experience   >

# Innovative products powered by best-in-class data.

## Elevate your business with AI-assisted technology from FlightAware Foresight.

Learn more about FlightAware Foresight  >



## Delivering data to developers on demand.

Integrate AeroAPI into your platform  >

## Unlock real-time global flight tracking and ADS-B flight data.

Discover more about FlightAware Firehose  >

See all products  >



# Watch the world take flight.

Explore dynamic photos of aircraft taken and shared by the FlightAware community.

 

See all photos   >



iOS    Android

# Worldwide tracking, in your hands.

Download the FlightAware app to stay up to date on the go.



**Customize your tracking.**

Create your free FlightAware account and unlock real-time tracking, custom alerts, and more.

Sign up

FlightAware

| ABOUT | COMMUNITY | PRODUCTS | CUSTOMER SERVICE |
|---|---|---|---|
| About FlightAware | Squawks | AeroAPI | FAQs |
| Newsroom | Discussion | FlightAware Firehose | Contact Us |
| Advertise With Us | Photos | FlightAware Foresight | |
| | ADS-B Statistics | | |



Careers

**TRACKING**

Reports

Webinars

Integrated Maps

Blog

Flight Finder

FlightAware Aviator

Engineering Blog

IFR Route Analyzer

FlightAware Global

Store

FlightAware FBO Toolbox

FlightAware TV<sup>SM</sup>

GlobalBeacon

ADS-B Receivers

Get our mobile apps

© 2026 FlightAware  /  Privacy  /  Terms of Use  /  Cookie Settings





# Connect our global flight map to your digital platforms.

Optimize your experience   >

# Innovative products powered by best-in-class data.

## Elevate your business with AI-assisted technology from FlightAware Foresight.

Learn more about FlightAware Foresight
>



## Delivering data to developers on demand.

Integrate AeroAPI into your platform  >

## Unlock real-time global flight tracking and ADS-B flight data.

Discover more about FlightAware Firehose  >

See all products  >



# Watch the world take flight.

Explore dynamic photos of aircraft taken and shared by the FlightAware community.

 

See all photos >



# Worldwide tracking, in your hands.

Download the FlightAware app to stay up to date on the go.

iOS        Android



# Customize your tracking.

Create your free FlightAware account and unlock real-time tracking, custom alerts, and more.

**Sign up**

| ABOUT | COMMUNITY | PRODUCTS | CUSTOMER SERVICE |
|---|---|---|---|
| About FlightAware | Squawks | AeroAPI | FAQs |
| Newsroom | Discussion | FlightAware Firehose | Contact Us |
| Advertise With Us | Photos | FlightAware Foresight | |
| | ADS-B Statistics | | |







**Connect our global flight map to your digital platforms.**

Optimize your experience  >

# Innovative products powered by best-in-class data.

## Elevate your business with AI-assisted technology from FlightAware Foresight.

Learn more about FlightAware Foresight  >



See all products  >

# Delivering data to developers on demand.

Integrate AeroAPI into your platform  >

# Unlock real-time global flight tracking and ADS-B flight data.

Discover more about FlightAware Firehose  >



# Watch the world take flight.

Explore dynamic photos of aircraft taken and shared by the FlightAware community.

 

See all photos  >



Worldwide tracking, in your hands.

Download the FlightAware app to stay up to date on the go.

iOS        Android



## Customize your tracking.

Create your free FlightAware account and unlock real-time tracking, custom alerts, and more.

Sign up

**ABOUT**

About FlightAware

Newsroom

Advertise With Us

**COMMUNITY**

Squawks

Discussion

Photos

ADS-B Statistics

**PRODUCTS**

AeroAPI

FlightAware Firehose

FlightAware Foresight

**CUSTOMER SERVICE**

FAQs

Contact Us

FlightAware - Flight Tracker / Flight Status                                                                                5/22/26, 11:54 AM



© 2026 FlightAware / Privacy / Terms of Use / Cookie Settings

# EXHIBIT 10

▼ AliyaC   ▼ My FlightAware   My Alerts   Admin          **FlightAware Staff**                    04:36PM CDT   English (USA)

Contact Us

Products          Industries          ADS-B          Flight Tracking          Community          Company

w:itttt · v:basin · d:bonoo · c:prod · p:portr · US/en_US · **env: prod** (detached at tag v2669) chargebee_global role?:0 · Request ID (copy) · hide

- **Search** for another user.
- **Switch** your user ID of this session to **KalshiTrading0**.
- **Enter** billing information for user **KalshiTrading0**.
- **View** credit card billing contact information and sales tax eligibility for user **KalshiTrading0**.
- View/Edit this user's alert.

Download user debug info.

(GDPR) DELETE disabled for this account. To enable, you must first take action to:

- Disable any fee-incurring services. This includes but is not limited to:
  - FlightXML/FlightXML3 subscriptions
  - Premium subscriptions
  - Aviator subscriptions
  - Data subscriptions
- Downgrade privileged account status

Add a Remark

## This user has special privileges

Do not reset password or email address without high confidence that the person requesting the change is truly the customer.

Non-default pedigree / special flight access
Credit card billing information on file

### UserAccountInformation:KalshiTrading0

| | |
|---|---|
| User ID | 13797198 |
| Username | KalshiTrading0 (Modify) |
| First Name | Kalshi (Modify) |
| Last Name | Trading (Modify) |
| Password | (not null) (Modify) (Reset) |
| Registration Date | 2022-07-14 09:38PM |
| Last Login (not last activity) | 2022-07-14 09:38PM |
| Account Activated | Yes (Toggle) |
| Suspended by Admin | No  [ ]  Suspend |
| Deactivated by Admin | No (Toggle) |
| Account Type | Basic User (1) |
| Primary e-mail | dsun@kalshitrading.com (Modify) |
| Old Email | (Modify) |

### MKDenial

User not tracked in ZenDesk; to create a ticket for tracking screening, initiate a manual screening.
*Note: this will take a few seconds to complete - please be patient*

*cache pedigree matches, no need to push the button -->*     Refresh pedigree_acl ⟳

#### PedigreeACL(1)

| | |
|---|---|
| pedigree_acl | adhoc awnz mlat natsuk spidertracks wide |
| match | |
| source | default_acl |

Edit pedigree_acl

#### AllPedigreeMasks(Includingsubtractive)

| | |
|---|---|
| -aufds | enabled |

| | |
|---|---|
| aircraft_altitude_display | |
| aircraft_fuelburn_display | |
| flightpage_layout | |
| method_2fa | |
| CDN Eligible | t ([Toggle]) |
| instagram | |
| GDPR Restricted Access | [Restrict access] |
| personal_data_requested | |
| personal_data_downloaded | |
| personal_data_download_hash | |
| gdpr_deleted | |
| rtt_alerts_disabled | |
| dual_tz_display | f |
| apple_token | |
| real_user_status | |
| ux_options | |
| mobile_promo_alerts_disabled | |
| Two-factor Phone Number | Two-factor disabled |

| 3rdPartyAlertBlocking | | |
|---|---|---|
| Sender | Last Updated | Action |
| No results | | |



FlightAware provides accurate real-time, historical and predictive flight insights to all segments of the aviation industry.

  





**Products & Services**

AeroAPI

FlightAware Firehose

FlightAware Foresight

Rapid Reports

Custom Reports

FlightAware Aviator

Premium Subscriptions

FlightAware Global

FlightAware FBO Toolbox

FlightAware TV℠

GlobalBeacon

**Company**

About

Careers

History

Advertise With Us

Newsroom

Blog

Webinars

**Community**

Photos

Squawks

Discussions

Host an ADS-B Site

**Support**

Contact Us

FAQs

7/15/26, 4 :36 PM

🇺🇸 English (USA) ▼   © 2026 FlightAware   Terms of Use   Privacy   Cookie Settings

1561 ms et | 481 ms cpu | 10 sql (73 lb) | 712 be (hide) (nologin) (nologin+hide) (profile)

# EXHIBIT 11



All ▼

Search for flight, tail, airport, or city

Forgot the flight number?

Contact Us

Products          Industries          ADS-B          Flight Tracking          Community          Company

w:xolse · v:jabev · d:bonoo · c:prod · p:align · US/en_US · **env: prod** (detached at tag v2669) chargebee_global role?:0 · Request ID (copy) · hide

# AeroAPI Users

Back to All Accounts

## Account

User Portal · Apigee User Page

**AccountOwner**

KalshiTrading0(KalshiTrading)

**CompanyName**

**FAPointofContact**

**Comments**

## CoreRateplans



FlightAware provides accurate real-time, historical and predictive flight insights to all segments of the aviation industry.

  





**Products & Services**

AeroAPI

FlightAware Firehose

FlightAware Foresight

Rapid Reports

Custom Reports

FlightAware Aviator

Premium Subscriptions

FlightAware Global

FlightAware FBO Toolbox

FlightAware TVˢᴹ

GlobalBeacon

**Company**

About

Careers

History

Advertise With Us

Newsroom

Blog

Webinars

**Community**

Photos

Squawks

Discussions

Host an ADS-B Site

**Support**

Contact Us

FAQs

🇺🇸 English (USA) ▾    © 2026 FlightAware    Terms of Use    Privacy    Cookie Settings

218 ms et | 117 ms cpu | 3 sql (18 lb) | 1007 be (hide) (nologin) (nologin+hide) (profile)

# EXHIBIT 12

Add a Remark

## User Account Information: cbreen123456

| | |
|---|---|
| User ID | 20449853 |
| Username | cbreen123456 (Modify) |
| First Name | Casey (Modify) |
| Last Name | Breen (Modify) |
| Password | (not null) (Modify) (Reset) |
| Registration Date | 2026-07-14 09:00PM |
| Last Login (not last activity) | never |
| Account Activated | Yes (Toggle) |
| Suspended by Admin | No  Reason  Suspend |
| Deactivated by Admin | No (Toggle) |
| Account Type | Basic User (1) |
| Primary e-mail | cbreen@kalshi.com (Modify) |
| Old Email | (Modify) |
| Mobile e-mail | (Modify) |
| Birth Year | |
| sex | |
| Demographics: Use | |
| Demographics: Industry | |
| Demographics: Title | |
| Demographics: Pilot | |
| Demographics: Aircraft | |
| Last Profile Update | 2026-07-14 09:00PM |
| Time Zone | :America/Chicago |
| 12/24 hour time | |
| My FlightAware: Aircraft | |
| My FlightAware: Airports | |
| Display Time Zone | Flight's Time Zone |
| TZ Name Display | Always Display Time Zone (i.e., 10:16pm EDT) |
| Newsletters | Opted out of FlightAware e-mail announcements. |
| Billing Data Entered | |
| Credit Card Data Status | |
| Units (sm or nm) | 0 |
| Flight Crew Enabled | No |
| Community Display | Disabled |
| Accepted Flightplan TOS | No |
| Global Customer | No |
| Aviator Customer | No |
| FBO Toolbox Customer | No |
| QuickAd Customer | No |
| Newsletter Frequency | weekly (Modify) |
| AMSTAT Access | No (Toggle) |
| Locale | |
| Current email bounced | |

### MK Denial

This user has no valid billing data on file and will need to be screened manually.

*cache pedigree matches, no need to push the button -->*    Refresh pedigree_acl ⟳

### Pedigree ACL (1)

| | |
|---|---|
| pedigree_acl match | adhoc aufds awnz mlat natsuk spidertracks wide |
| source | default_acl |

Edit pedigree_acl

### All Pedigree Masks (Including subtractive)

### Contributions/Community Activity

| | |
|---|---|
| Karma | 0 |
| Remarks | 0 posted |
| Alerts | 0 |
| Photos | 0 uploads (average vote 0) |
| Photos | 0 votes cast |
| Squawks | 0 posted |
| Squawk comments | 0 comments |
| Squawk votes cast | 0 votes |
| Squawk vote points cast | 0 |
| Squawk received votes | 0 up, 0 down |
| Reviews | 0 written |
| Newsletter History | 2 recently sent (Last sent: 2026-07-25 15:26) |

### Connections/Account Associations

### Connected Apps (view)

### Billing/Commercial Services Activity

| | |
|---|---|
| Card Entry | 0 (Reset) |

### Endorsements

Add an endorsement

### Flight Planning Hangar

Calls unavailable.

### Session Activity

| Session Start | Session Update | IP Address | Type |
|---|---|---|---|

### 5 most recent NOTAMs Sent to cbreen123456

| Time | From | Title | Viewed |
|---|---|---|---|

Send a NOTAM to cbreen123456.

### User Roles

| Available Roles | Selected Roles |
|---|---|





# EXHIBIT 13

*KalshiEX LLC*

July 14, 2026

**SUBMITTED VIA CFTC PORTAL**
Secretary of the Commission
Office of the Secretariat
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

Re: KalshiEX LLC – CFTC Regulation 40.2(a) Notification Regarding the Initial Listing of the "Will <above/below/between/exactly/at least> <percentage> of scheduled <flight category> flights at <airport> be cancelled in <time period>?" Contract

Dear Sir or Madam,

Pursuant to Section 5c(c) of the Commodity Exchange Act and Section 40.2(a) of the regulations of the Commodity Futures Trading Commission, KalshiEX LLC (Kalshi), a registered DCM, hereby notifies the Commission that it is self-certifying the "Will <above/below/between/exactly/at least> <percentage> of scheduled <flight category> flights at <airport> be cancelled in <time period>?" contract (Contract). The Contract will initially be listed after close-of-business on **July 14, 2026**; it is listed as the day after because of limitations of the Commission's online submission portal. The Exchange intends to list the contract on a custom ⁃ basis. The Contract's terms and conditions (Appendix A) includes the following strike conditions:

- **<above/below/between/exactly/at least>**
- **<flight category>**
- **<percentage>**
- **<airport>**
- **<time period>**

Along with this letter, Kalshi submits the following documents:

- A concise explanation and analysis of the Contract;
- Certification;
- Appendix A with the Contract's Terms and Conditions;
- Confidential Appendices with further information; and
- A request for FOIA confidential treatment.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Xavier Sottile
Head of Markets

*KalshiEX LLC*

*KalshiEX LLC*

KalshiEX LLC
xsottile@kalshi.com

*KalshiEX LLC*

**KalshiEX LLC**
**Official Product Name:** "Will <above/below/between/exactly/at least> <percentage> of scheduled <flight category> flights at <airport> be cancelled in <time period>?"
**Rulebook: AIRPORTDELAY**
**Summary: Airport delay predictions**
**Kalshi Contract Category:** Transportation▾
**Kalshi Internal Category:** Transportation▾
**July 14, 2026**

## CONCISE EXPLANATION AND ANALYSIS OF THE PRODUCT AND ITS COMPLIANCE WITH APPLICABLE PROVISIONS OF THE ACT, INCLUDING CORE PRINCIPLES AND THE COMMISSION'S REGULATIONS THEREUNDER

Pursuant to Commission Rule 40.2(a)(3)(v), the following is a concise explanation and analysis of the product and its compliance with the Act, including the relevant Core Principles (discussed in Appendix D), and the Commission's regulations thereunder.

### I. Introduction

The "Will <above/below/between/exactly/at least> <percentage> of scheduled <flight category> flights at <airport> be cancelled in <time period>?" Contract is a contract relating to Health▾ .

Further information about the Contract, including an analysis of its risk mitigation and price basing utility, as well as additional considerations related to the Contract, is included in Confidential Appendices C, D, and E.

Pursuant to Section 5c(c) of the Act and CFTC Regulations 40.2(a), the Exchange hereby certifies that the listing of the Contract complies with the Act and Commission regulations under the Act.

**General Contract Terms and Conditions:** The Contract operates similar to other event contracts that the Exchange lists for trading. The minimum price fluctuation is $0.01 (one cent). Price bands will apply so that Contracts may only be listed at values of at least $0.01 and at most $0.99. Further, the Contract is sized with a one-dollar notional value and has a minimum price fluctuation of $0.01 to enable Members to match the size of the contracts purchased to their economic risks. As outlined in Rule 5.16 of the Rulebook, trading shall be available at all times outside of any maintenance windows, which will be announced in advance by the Exchange. Members will be charged fees in accordance with Rule 3.13 of the Rulebook. Fees, if they are charged, are charged in such amounts as may be revised from time to time to be reflected on the Exchange's Website. A new

Source Agency can be added via a Part 40 amendment. All instructions on how to access the Underlying are non-binding and are provided for convenience only and are not part of the binding Terms and Conditions of the Contract. They may be clarified at any time. Furthermore, the Contract's payout structure is characterized by the payment of an absolute amount to the holder of one side of the option and no payment to the counterparty. During the time that trading on the Contract is open, Members are able to adjust their positions and trade freely. The Expiration Value and Market Outcome are determined at or after Market Close. The market is then settled by the Exchange, and the long position holders and short position holders are paid according to the Market Outcome. In this case, "long position holders" refers to Members who purchased the "Yes" side of the Contract and "short position holders" refers to Members who purchased the "No" side of the Contract. If the Market Outcome is "Yes," meaning that an event occurs that is encompassed within the Payout Criterion, then the long position holders are paid an absolute amount proportional to the size of their position and the short position holders receive no payment. If the Market Outcome is "No," then the short position holders are paid an absolute amount proportional to the size of their position and the long position holders receive no payment. Specification of the circumstances that would trigger a Market Outcome of "Yes" are included below in the section titled "Payout Criterion" in Appendix A.

*KalshiEX LLC*

**CERTIFICATIONS PURSUANT TO SECTION 5c OF THE COMMODITY EXCHANGE ACT, 7 U.S.C. § 7A-2 AND COMMODITY FUTURES TRADING COMMISSION RULE 40.2, 17 C.F.R. § 40.2**

Based on the above analysis, the Exchange certifies that:

- ❏ The Contract complies with the Act and Commission regulations thereunder.
- ❏ This submission (other than those appendices for which confidential treatment has been requested) has been concurrently posted on the Exchange's website at https://kalshi.com/regulatory/filings.

Should you have any questions concerning the above, please contact the exchange at ProductFilings@kalshi.com.

_____

By: Xavier Sottile
Title: Head of Markets
Date: July 14, 2026

*KalshiEX LLC*

*KalshiEX LLC*

**Attachments:**

Appendix A - Contract Terms and Conditions

Appendix B - Trading Prohibitions

Appendix C (Confidential) - Further Considerations

Appendix D (Confidential) - Source Agency

Appendix E (Confidential) - Compliance with Core Principles

*KalshiEX LLC*

*KalshiEX LLC*

## APPENDIX A – CONTRACT TERMS AND CONDITIONS

**Official Product Name: "Will &lt;above/below/between/exactly/at least&gt; &lt;percentage&gt; of scheduled &lt;flight category&gt; flights at &lt;airport&gt; be cancelled in &lt;time period&gt;?"**
**Rulebook: AIRPORTDELAY**

*KalshiEX LLC*

*KalshiEX LLC*

# AIRPORTDELAY

**Scope:** These rules shall apply to this contract.

**Underlying:** The Underlying for this Contract is the percentage of scheduled flights at <airport> that are cancelled in <time period>, calculated by dividing the number of cancelled flights by the total number of scheduled flights and expressing the result as a percentage carried to two decimal places without rounding (any digits beyond the second decimal place are truncated). The total number of scheduled flights is the count of commercial flights of <flight category> (arrivals and departures combined) scheduled to operate at <airport> during <time period>, as reflected in the schedule data published or made available by the Source Agency as of 11:59:59 PM local time at <airport> on the date two calendar days prior to the first day of <time period>, unless a different time is specified by the Exchange at Issuance. This count is fixed as of that time, is inclusive of any flight subsequently cancelled, and is not reduced by any cancellation, schedule change, or removal occurring after that time; the Exchange will record this count, publicize it at Issuance, and the published count shall be binding. The number of cancelled flights is the count of flights within that fixed total that are classified as cancelled by the Source Agency at any time after the schedule is fixed, whether before or during <time period>, as such classification stands as of the Expiration time on the Expiration Date. A flight classified as cancelled that is subsequently reinstated and operates during <time period> is not counted as cancelled. Diverted flights, delayed flights (regardless of the length of delay, including flights that operate after the end of <time period> due to delay), and gate returns that ultimately depart are not counted as cancelled. Flights added to the schedule after the schedule is fixed are excluded from both the number of cancelled flights and the total number of scheduled flights. If a Source Agency corrects, retracts, or restates any figure prior to the Expiration time, the corrected figure shall govern. Revisions to the Underlying made after Expiration will not be accounted for in determining the Expiration Value.

**Source Agency:** The primary Source Agency is FlightAware. The secondary Source Agency, applied only if the primary is unavailable or does not publish a usable figure for <time period>, is the U.S. Department of Transportation Bureau of Transportation Statistics (BTS) On-Time Reporting data for <airport>. All instructions on how to access the Underlying are non-binding and are provided for convenience only and are not part of the binding Terms and Conditions of the Contract.

**Type:** The type of Contract is an Event Contract.

**Issuance:** After the initial Contract, Contract iterations will be listed on an as-needed basis at the discretion of the Exchange and corresponding to the risk management needs of Members. The Exchange may list iterations of the Contract corresponding to variations of <airport>, <time period>, <percentage>, and <flight category>.

*KalshiEX LLC*

**<airport>:** <airport> refers to a specific commercial airport specified by the Exchange, identified by its ICAO and IATA codes. The Exchange may list iterations of the Contract corresponding to variations of <airport>. If <airport> is renamed or its operator changes, the Contract continues to refer to the same physical airport facility.

**<flight category>:** <flight category> refers to the categories of commercial flights specified by the Exchange, which may include passenger flights, cargo flights, or both. Unless otherwise specified by the Exchange at Issuance, <flight category> includes both passenger and cargo flights. The Exchange may list iterations of the Contract corresponding to variations of <flight category>.

**<time period>:** <time period> refers to a specific duration or range of time as specified by the Exchange. May be expressed as a single calendar day, multiple calendar days, a calendar week, a calendar month and year, or other bounded time periods as appropriate to the contract subject matter. All times relating to <time period> and to the scheduling and operation of flights are interpreted in the local time of <airport> unless otherwise specified. The end of <time period> is defined as 11:59:59 PM local time at <airport> on the final day of the specified period. Each flight is attributed to <time period> according to its originally scheduled date of operation at <airport> in local time. The Exchange may list iterations of the Contract corresponding to variations of <time period>.

**<percentage>:** <percentage> refers to a specific percentage threshold (or thresholds, where the comparison operator is specified as "between") specified by the Exchange (e.g., 50.00%). <percentage> is measured against the percentage of scheduled flights cancelled as computed under the Underlying, without further rounding. The Exchange may list iterations of the Contract with <percentage> levels at increments specified by the Exchange, and may modify <percentage> levels in response to suggestions by Members.

**<above/below/between/exactly/at least>:** <above/below/between/exactly/at least> refers to comparison operators. "Above" means greater than (>), "below" means less than (<), "between" means within an inclusive range (≥ lower bound and ≤ upper bound), unless otherwise specified, "exactly" means equal to (=) to two decimal places (unless otherwise specified), and "at least" means greater than or equal to (≥). Where "between" is the comparison operator, <percentage> shall take two values forming a lower and upper bound.

**Payout Criterion:** The Payout Criterion for the Contract encompasses the Expiration Values for which the percentage of scheduled <flight category> flights in at <airport> cancelled in <time period> is <above/below/between/exactly/at least> <percentage>.

- If <airport> is fully closed and no scheduled flight operates for the entirety of <time period>, the percentage of scheduled flights cancelled shall be deemed 100.00%.

*KalshiEX LLC*

- If the total number of scheduled flights equals zero because <airport> is closed, or has been ordered or announced to be closed, for the entirety of <time period>, the percentage of scheduled flights cancelled shall be deemed 100.00%. If the total number of scheduled flights equals zero for any other reason, the Expiration Value shall be determined pursuant to Rule 7.1 of the Rulebook.
- A flight cancelled after the schedule is fixed but prior to the start of <time period> (including pre-emptive cancellations made in advance of forecast weather) is counted as cancelled so long as it is within the fixed total of scheduled flights.
- Except as provided in the final provision below, cancellations arising from any cause — including weather, air traffic control action, staffing, mechanical issues, or strikes — are counted identically.
- If an Excluded Event determines whether or not the Expiration Value satisfies the Payout Criterion, the Contract shall settle at the last fair price pursuant to Rule 7.1 of the Rulebook. "Excluded Event" means any event or circumstance arising from, or directly resulting from, (i) any act of unlawful interference with civil aviation, including sabotage, unlawful seizure of aircraft, or interference with air navigation facilities or services; (ii) any deliberate act or omission by any person, whether or not identified, undertaken with the purpose or reasonably foreseeable effect of disrupting operations at <airport>, including without limitation unauthorized unmanned aircraft operations, laser illumination, trespass upon or unauthorized presence within the air operations area, tampering with or destruction of airport, air carrier, air traffic control, or utility infrastructure serving <airport>, and false reports or threats resulting in evacuation, ground stop, or suspension of operations; (iii) any malicious cyber incident affecting systems of <airport>, any air carrier, or any air navigation service provider, as characterized by the affected entity or a governmental authority; or (iv) any security-related closure, ground stop, or operational suspension ordered by a governmental authority in response to an actual or suspected act described in clauses (i)–(iii) or to any actual or suspected act of unlawful violence, wherever occurring.

**Examples that would resolve the market to Yes** (assuming, for illustration, <percentage> = 50.00%, <flight category> is all flights,  and a single-day <time period>):

- The fixed total of scheduled flights is 1,200 and the Source Agency classifies 640 of them as cancelled as of the Expiration time. The percentage cancelled is 53.33%, which is greater than or equal to 50.00%.
- A blizzard is forecast; airlines pre-emptively cancel 500 of the 1,000 scheduled flights the evening before <time period> begins, and 30 additional scheduled flights are cancelled during <time period>. The percentage cancelled is 53.00%.
- <airport> is fully closed for the entirety of <time period> and no scheduled flight operates. The percentage cancelled is deemed 100.00%.

**Examples that would NOT resolve the market to Yes** (same assumptions):

- The fixed total of scheduled flights is 1,000; 450 are classified as cancelled, and a further 400 are delayed or diverted. The percentage cancelled is 45.00%, because delayed and diverted flights are not counted as cancelled.
- The fixed total of scheduled flights is 1,000; 495 are classified as cancelled as of the Expiration time, and 20 additional flights that had earlier been classified as cancelled were reinstated and operated during <time period>. The percentage cancelled is 49.50%.
- A ground stop halts operations at <airport> for six hours during <time period>, but most affected flights ultimately operate with delays; 200 of the 1,000 scheduled flights are classified as cancelled. The percentage cancelled is 20.00%.

If a natural person who is the primary subject of a Contract's Underlying or Payout Criterion dies prior to Expiration, or if an act or attempted act of violence, assassination, or terrorism directly prevents, interrupts, or causes the event that is the primary subject of a Contract's Underlying or Payout Criterion, Kalshi may, in its sole discretion, settle the Contract at the last traded price prior to the death or act. If Kalshi determines that trading activity was materially affected by the circumstances giving rise to the death or act, Kalshi may instead use the last traded price prior to such circumstances becoming known or reasonably anticipated by market participants. For purposes of this Rule, Kalshi may rely on an approximate time where the precise time is unknown or cannot be reasonably determined. If Kalshi determines that no last traded price represents a fair settlement, the Outcome Review Committee shall determine the fair settlement price. Kalshi may halt or pause trading in any such Contract (with public notice on Kalshi's website or the Platform) if it reasonably believes that a death or act of terrorism subject to this Rule has occurred, is imminent, or that circumstances giving rise to such an occurrence may be happening. Determinations of Kalshi and the Outcome Review Committee under this Rule are final and not subject to review.

**Minimum Tick:** The Minimum Tick size for the Contract shall be $0.001.

**Position Accountability Level:** The Position Accountability Level for the Contract shall be $25,000 per strike, per Member.

**Last Trading Date:** The Last Trading Date of the Contract will be the same as the Expiration Date. The Last Trading Time will be the same as the Expiration time.

**Settlement Date:** The Settlement Date of the Contract shall be no later than the day after the Expiration Date, unless the Market Outcome is under review pursuant to Rule 7.1.

**Expiration Date:** The latest Expiration Date of the Contract shall be one week after the end of <time period>. If an event described in the Payout Criterion occurs, expiration will be moved to an earlier date and time in accordance with Rule 7.2.

**Expiration time:** The Expiration time of the Contract shall be 10:00 AM ET.

**Settlement Value:** The Settlement Value for this Contract is $1.00.

**Expiration Value:** The Expiration Value is the value of the Underlying as documented by the Source Agency on the Expiration Date at the Expiration time.

**Contingencies:** Before Settlement, Kalshi may, at its sole discretion, initiate the Market Outcome Review Process pursuant to Rule 7.1 of the Rulebook. If an Expiration Value cannot be determined on the Expiration Date, Kalshi has the right to determine payouts pursuant to Rule 7.1 in the Rulebook.

*KalshiEX LLC*

## APPENDIX B – TRADING PROHIBITIONS

In addition to the general prohibition against trading on material nonpublic information, the Exchange will institute additional prohibitions for trading the contract. Persons under 18 years of age are not permitted to create Kalshi accounts. The following individuals will be prohibited from trading:

- An employee, officer, director, or contractor of the operator of <airport>, of any governmental authority with operational, security, or air traffic control responsibility for <airport>, of any air carrier, of any critical service provider to <airport>, or of any Source Agency, in each case whose duties relate to, or who has material non-public information regarding, flight operations, cancellations, security actions, or flight status data at <airport>;
- An officer, director, or paid official of any labor organization with authority over, or material non-public information regarding, any labor action affecting operations at <airport>; or
- A member of the household of, or acting at the direction of or in concert with, any person described above.

*KalshiEX LLC*

# EXHIBIT 14

*KalshiEX LLC*

07/11/2022

**SUBMITTED VIA CFTC PORTAL**
Secretary of the Commission
Office of the Secretariat
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

Re: KalshiEX LLC – CFTC Regulation 40.2(a) Notification Regarding the Initial
Listing of the "Will <greater than/less than/between> <count> flights be delayed
or canceled at JFK Airport on <date>?" Contract

Dear Sir or Madam,

Pursuant to Section 5c(c) of the Commodity Exchange Act and Section 40.2(a) of the regulations
of the Commodity Futures Trading Commission, KalshiEX LLC (Kalshi) hereby notifies the
Commission that it is self-certifying the "Will <greater than/less than/between> <count> flights
be delayed or canceled at JFK Airport on <date>?" contract (Contract). The Exchange intends to
list the contract on a daily basis. The Contract's terms and conditions (Appendix A) includes the
following strike conditions:
- **<date>** (the target date)
- **<greater than/less than/between>**
- **<count>** (the target numbers of delays and cancellations)

Along with this letter, Kalshi submits the following documents:

- A concise explanation and analysis of the Contract;
- Certification;
- Appendix A with the Contract's Terms and Conditions;
- Confidential Appendices with further information; and
- A request for FOIA confidential treatment.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Elie Mishory
Chief Regulatory Officer
KalshiEX LLC

*KalshiEX LLC*

emishory@kalshi.com

**KalshiEX LLC**
**Official Product Name: Will <greater than/less than/between> <count> flights be delayed or canceled at JFK Airport on <date>?**
**Rulebook: FLIGHTJFK**
**Kalshi Contract Category: Transportation**
**JFK flight delays/cancellations**
**07/11/2022**

CONCISE EXPLANATION AND ANALYSIS OF THE PRODUCT AND ITS COMPLIANCE WITH APPLICABLE PROVISIONS OF THE ACT, INCLUDING CORE PRINCIPLES AND THE COMMISSION'S REGULATIONS THEREUNDER

Pursuant to Commission Rule 40.2(a)(3)(v), the following is a concise explanation and analysis of the product and its compliance with the Act, including the relevant Core Principles, and the Commission's regulations thereunder.

I.    **Introduction**

The "Will <greater than/less than/between> <count> flights be delayed or canceled at JFK Airport on <date>?" Contract is a contract relating to the number of flight delays or cancellations at John F. Kennedy International Airport on a given date. After careful analysis, Kalshi (hereafter referred to as "Exchange") has determined that the Contract complies with its vetting framework, which has been reviewed by the CFTC and formed part of the Exchange's application for designation as a Contract Market ("DCM") that was approved by the Commission.

The FAA handles roughly 45,000 flights per day in the United States.[1] John F. Kennedy International Airport is one of the largest airports in America, and services roughly 1,000 flights per day. These flights are of vital importance not just to the airline company and its employees, but also to the hundreds of thousands of people who travel on those flights each day.

Further information about the Contract, including an analysis of its risk mitigation and price basing utility, as well as additional considerations related to the Contract, is included in Confidential Appendices B, C, and D.

---

[1] https://www.faa.gov/air_traffic/by_the_numbers/

Pursuant to Section 5c(c) of the Act and CFTC Regulations 40.2(a), the Exchange hereby certifies that the listing of the Contract complies with the Act and Commission regulations under the Act.

**General Contract Terms and Conditions:** The Contract operates similar to other binary contracts that the Exchange lists for trading. The minimum price fluctuation is $0.01 (one cent). Price bands will apply so that Contracts may only be listed at values of at least $0.01 and at most $0.99. Further, the Contract is sized with a one-dollar notional value and has a minimum price fluctuation of $0.01 to enable Members to match the size of the contracts purchased to their economic risks. The Exchange has further imposed position limits (defined as maximum loss exposure) of $25,000 USD on the Contract. As outlined in Rule 5.12 of the Rulebook, trading shall be available at all times outside of any maintenance windows, which will be announced in advance by the Exchange. Members will be charged fees in accordance with Rule 3.6 of the Rulebook. Fees are charged in such amounts as may be revised from time to time to be reflected on the Exchange's Website. Additionally, as outlined in Rule 7.2 of the Rulebook, if any event or any circumstance which may have a material impact on the reliability or transparency of a Contract's Source Agency or the Underlying related to the Contract arises, Kalshi retains the authority to designate a new Source Agency and Underlying for that Contract and to change any associated Contract specifications after the first day of trading. That new Source Agency and Underlying would be objective and verifiable. Kalshi would announce any such decision on its website. All instructions on how to access the Underlying are non-binding and are provided for convenience only and are not part of the binding Terms and Conditions of the Contract. They may be clarified at any time. Furthermore, the Contract's payout structure is characterized by the payment of an absolute amount to the holder of one side of the option and no payment to the counterparty. During the time that trading on the Contract is open, Members are able to adjust their positions and trade freely. After trading on the Contract has closed, the Expiration Value and Market Outcome are determined. The market is then settled by the Exchange, and the long position holders and short position holders are paid according to the Market Outcome. In this case, "long position holders" refers to Members who purchased the "Yes" side of the Contract and "short position holders" refers to Members who purchased the "No" side of the Contract. If the Market Outcome is "Yes," meaning that <greater than/less than/between> <count> flights are delayed or canceled at JFK International Airport on <date>, then the long position holders are paid an absolute amount proportional to the size of their position and the short position holders receive no payment. If the Market Outcome is "No," then the short position holders are paid an absolute amount proportional to the size of their position and the long position holders receive no payment. Specification of the circumstances that would trigger a Market Outcome of "Yes" are included below in the section titled "Payout Criterion" in Appendix A.

**CERTIFICATIONS PURSUANT TO SECTION 5c OF THE COMMODITY EXCHANGE ACT, 7 U.S.C. § 7A-2 AND COMMODITY FUTURES TRADING COMMISSION RULE 40.2, 17 C.F.R. § 40.2**

Based on the above analysis, the Exchange certifies that:

❏ The Contract complies with the Act and Commission regulations thereunder.

❏ This submission (other than those appendices for which confidential treatment has been requested) has been concurrently posted on the Exchange's website at https://kalshi.com/regulatory/filings.

Should you have any questions concerning the above, please contact the exchange at ProductFilings@kalshi.com.

*Eliezer Mishory*

By: Eliezer Mishory
Title: Chief Regulatory Officer
Date: 07/11/2022

**<u>Attachments:</u>**

Appendix A - Contract Terms and Conditions

Appendix B (Confidential) - Further Considerations

Appendix C (Confidential) - Source Agency

Appendix D (Confidential) - Compliance with Core Principles

*KalshiEX LLC*

## APPENDIX A – CONTRACT TERMS AND CONDITIONS

## TERMS OF CONTRACTS TRADED ON KALSHI

**Official Product Name: Will <greater than/less than/between> <count> flights be delayed or canceled at JFK Airport on <date>?**
**Rulebook: FLIGHTJFK**

*KalshiEX LLC*

## FLIGHTJFK

**Scope:** These rules shall apply to this contract.

**Underlying:** The Underlying for this Contract is the sum of the total delayed and canceled flights at John F. Kennedy International Airport on <date>, according to FlightAware. Revisions to the Underlying made after Expiration will not be accounted for in determining the Expiration Value.

**Instructions:** This information is available here.[2]

Consider the following case below. In this case, the value of the Underlying would be 300.

Total delays yesterday at John F Kennedy Intl:  288

Total delays within, into, or out of the United States yesterday at John F Kennedy Intl:  288

Total cancellations yesterday at John F Kennedy Intl:  12

Total cancellations within, into, or out of the United States yesterday at John F Kennedy Intl:  12

Please note that the number above may not exactly match the list below that sum where it lists the flights by destination airport. The Exchange is not using the sum in the table titled "By Destination Airport".

These instructions on how to access the Underlying are provided for convenience only and are not part of the binding Terms and Conditions of the Contract. They may be clarified at any time.

**Source Agency:** The Source Agency is FlightAware.

**Type:** The type of Contract is a Binary Contract.

**Issuance:** The Contract is based on the outcome of a recurrent data release, which is issued on a daily basis. Thus, Contract iterations will be issued on a recurring basis, and future Contract iterations will generally correspond to the next day.

**<count>:** Kalshi may list iterations of the Contract with <count> levels that fall within an inclusive range between 0 and 10,000,000 at consecutive increments of 1. Due to the potential for variability in the Underlying, the Exchange may modify <count> levels in response to suggestions by Members.

---

[2]https://flightaware.com/live/cancelled/yesterday/JFK

**<date>**: <date> refers to a calendar date specified by Kalshi. Kalshi may list iterations of the Contract corresponding to different statistical periods of <date>.

**Payout Criterion:** The Payout Criterion for the Contract encompasses the Expiration Values that are <greater than/less than/between> <count>. If the value of <greater than/less than/between> is "between", then <count> shall be a pair of values and the Payout Criterion encompasses the Expiration Values that are greater than or equal to the lesser of the pair and less than or equal to the greater of the pair.

**Minimum Tick:** The Minimum Tick size for the referred Contract shall be $0.01.

**Position Limit:** The Position Limit for the $1 referred Contract shall be $25,000 per Member.

**Last Trading Date:** The Last Trading Date of the Contract will be <date>. The Last Trading Time will be 11:59 PM ET.

**Settlement Date:** The Settlement Date of the Contract shall be no later than the day after the Expiration Date, unless the Market Outcome is under review pursuant to Rule 7.1.

**Expiration Date:** The Expiration Date of the Contract shall be the sooner of the date of the first 10:00 AM ET following the release of the data for all of <date>, or one week after <date>.

**Expiration time:** The Expiration time of the Contract shall be 10:00 AM ET.

**Settlement Value:** The Settlement Value for this Contract is $1.00.

**Expiration Value:** The Expiration Value is the value of the Underlying as documented by the Source Agency on the Expiration Date at the Expiration time.

**Contingencies:** Before Settlement, Kalshi may, at its sole discretion, initiate the Market Outcome Review Process pursuant to Rule 6.3(c) of the Rulebook. Additionally, as outlined in Rule 7.2 of the Rulebook, if any event or any circumstance which may have a material impact on the reliability or transparency of a Contract's Source Agency or the Underlying related to the Contract arises, Kalshi retains the authority to designate a new Source Agency and Underlying for that Contract and to change any associated Contract specifications after the first day of trading.

# EXHIBIT 15

*KalshiEX LLC*

7/11/2022

**SUBMITTED VIA CFTC PORTAL**
Secretary of the Commission
Office of the Secretariat
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

Re: KalshiEX LLC – CFTC Regulation 40.2(a) Notification Regarding the Initial
Listing of the "Will <greater than/less than/between> <count> flights be delayed
or canceled at Chicago O'Hare on <date>?" Contract

Dear Sir or Madam,

Pursuant to Section 5c(c) of the Commodity Exchange Act and Section 40.2(a) of the regulations
of the Commodity Futures Trading Commission, KalshiEX LLC (Kalshi) hereby notifies the
Commission that it is self-certifying the "Will <greater than/less than/between> <count> flights
be delayed or canceled at Chicago O'Hare on <date>?" contract (Contract). The Exchange intends
to list the contract on a daily basis. The Contract's terms and conditions (Appendix A) includes
the following strike conditions:
- **<date>** (the target date)
- **<greater than/less than/between>**
- **<count>** (the target number of delays and cancellations)

Along with this letter, Kalshi submits the following documents:

- A concise explanation and analysis of the Contract;
- Certification;
- Appendix A with the Contract's Terms and Conditions;
- Confidential Appendices with further information; and
- A request for FOIA confidential treatment.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Elie Mishory
Chief Regulatory Officer
KalshiEX LLC

*KalshiEX LLC*

*KalshiEX LLC*

emishory@kalshi.com

**KalshiEX LLC**
**Official Product Name: Will <greater than/less than/between> <count> flights be delayed or canceled at Chicago O'Hare on <date>?**
**Rulebook: FLIGHTORD**
**Kalshi Contract Category: Transportation**
**O'Hare flight delays/cancellations**
**07/11/2022**

## CONCISE EXPLANATION AND ANALYSIS OF THE PRODUCT AND ITS COMPLIANCE WITH APPLICABLE PROVISIONS OF THE ACT, INCLUDING CORE PRINCIPLES AND THE COMMISSION'S REGULATIONS THEREUNDER

Pursuant to Commission Rule 40.2(a)(3)(v), the following is a concise explanation and analysis of the product and its compliance with the Act, including the relevant Core Principles, and the Commission's regulations thereunder.

### I. Introduction

The "Will <greater than/less than/between> <count> flights be delayed or canceled at Chicago O'Hare on <date>?" Contract is a contract relating to the number of flight delays or cancellations at Chicago O'Hare on a given date. After careful analysis, Kalshi (hereafter referred to as "Exchange") has determined that the Contract complies with its vetting framework, which has been reviewed by the CFTC and formed part of the Exchange's application for designation as a Contract Market ("DCM") that was approved by the Commission.

The FAA handles roughly 45,000 flights per day in the United States.[1] Chicago O'Hare is one of the largest airports in America, and services over 2,500 flights per day. These flights are of vital importance not just to airline companies and their employees, but also to the hundreds of thousands of people who travel on those flights each day.

Further information about the Contract, including an analysis of its risk mitigation and price basing utility, as well as additional considerations related to the Contract, is included in Confidential Appendices B, C, and D.

---

[1] https://www.faa.gov/air_traffic/by_the_numbers/

*KalshiEX LLC*

Pursuant to Section 5c(c) of the Act and CFTC Regulations 40.2(a), the Exchange hereby certifies that the listing of the Contract complies with the Act and Commission regulations under the Act.

**General Contract Terms and Conditions:** The Contract operates similar to other binary contracts that the Exchange lists for trading. The minimum price fluctuation is $0.01 (one cent). Price bands will apply so that Contracts may only be listed at values of at least $0.01 and at most $0.99. Further, the Contract is sized with a one-dollar notional value and has a minimum price fluctuation of $0.01 to enable Members to match the size of the contracts purchased to their economic risks. The Exchange has further imposed position limits (defined as maximum loss exposure) of $25,000 USD on the Contract. As outlined in Rule 5.12 of the Rulebook, trading shall be available at all times outside of any maintenance windows, which will be announced in advance by the Exchange. Members will be charged fees in accordance with Rule 3.6 of the Rulebook. Fees are charged in such amounts as may be revised from time to time to be reflected on the Exchange's Website. Additionally, as outlined in Rule 7.2 of the Rulebook, if any event or any circumstance which may have a material impact on the reliability or transparency of a Contract's Source Agency or the Underlying related to the Contract arises, Kalshi retains the authority to designate a new Source Agency and Underlying for that Contract and to change any associated Contract specifications after the first day of trading. That new Source Agency and Underlying would be objective and verifiable. Kalshi would announce any such decision on its website. All instructions on how to access the Underlying are non-binding and are provided for convenience only and are not part of the binding Terms and Conditions of the Contract. They may be clarified at any time. Furthermore, the Contract's payout structure is characterized by the payment of an absolute amount to the holder of one side of the option and no payment to the counterparty. During the time that trading on the Contract is open, Members are able to adjust their positions and trade freely. After trading on the Contract has closed, the Expiration Value and Market Outcome are determined. The market is then settled by the Exchange, and the long position holders and short position holders are paid according to the Market Outcome. In this case, "long position holders" refers to Members who purchased the "Yes" side of the Contract and "short position holders" refers to Members who purchased the "No" side of the Contract. If the Market Outcome is "Yes," meaning that <greater than/less than/between> <count> flights are delayed or canceled at Chicago O'Hare on <date>, then the long position holders are paid an absolute amount proportional to the size of their position and the short position holders receive no payment. If the Market Outcome is "No," then the short position holders are paid an absolute amount proportional to the size of their position and the long position holders receive no payment. Specification of the circumstances that would trigger a Market Outcome of "Yes" are included below in the section titled "Payout Criterion" in Appendix A.

**CERTIFICATIONS PURSUANT TO SECTION 5c OF THE COMMODITY EXCHANGE ACT, 7 U.S.C. § 7A-2 AND COMMODITY FUTURES TRADING COMMISSION RULE 40.2, 17 C.F.R. § 40.2**

Based on the above analysis, the Exchange certifies that:

❏ The Contract complies with the Act and Commission regulations thereunder.

❏ This submission (other than those appendices for which confidential treatment has been requested) has been concurrently posted on the Exchange's website at https://kalshi.com/regulatory/filings.

Should you have any questions concerning the above, please contact the exchange at ProductFilings@kalshi.com.

*Eliezer Mishory*
_____

By: Eliezer Mishory
Title: Chief Regulatory Officer
Date: 07/11/2022

**Attachments:**

Appendix A - Contract Terms and Conditions

Appendix B (Confidential) - Further Considerations

Appendix C (Confidential) - Source Agency

Appendix D (Confidential) - Compliance with Core Principles

*KalshiEX LLC*

## APPENDIX A – CONTRACT TERMS AND CONDITIONS

### TERMS OF CONTRACTS TRADED ON KALSHI

**Official Product Name: Will <greater than/less than/between> <count> flights be delayed or canceled at Chicago O'Hare on <date>?**
**Rulebook: FLIGHTORD**

*KalshiEX LLC*

*KalshiEX LLC*

**FLIGHTORD**

**Scope:** These rules shall apply to this contract.

**Underlying:** The Underlying for this Contract is the sum of the total delayed and canceled flights at Chicago O'Hare International Airport on <date>, according to FlightAware. Revisions to the Underlying made after Expiration will not be accounted for in determining the Expiration Value.

**Instructions:** This information is available here.[2]

Consider the following case below. In this case, the value of the Underlying would be 406.

Total delays yesterday at Chicago O'Hare Intl:  381

Total delays within, into, or out of the United States yesterday at Chicago O'Hare Intl:  381

Total cancellations yesterday at Chicago O'Hare Intl:  25

Total cancellations within, into, or out of the United States yesterday at Chicago O'Hare Intl:  25

Please note that the number above may not exactly match the list below that sum where it lists the flights by destination airport. The Exchange is not using the sum in the table titled "By Destination Airport".

These instructions on how to access the Underlying are provided for convenience only and are not part of the binding Terms and Conditions of the Contract. They may be clarified at any time.

**Source Agency:** The Source Agency is FlightAware.

**Type:** The type of Contract is a Binary Contract.

**Issuance:** The Contract is based on the outcome of a recurrent data release, which is issued on a daily basis. Thus, Contract iterations will be issued on a recurring basis, and future Contract iterations will generally correspond to the next day.

**<count>:** Kalshi may list iterations of the Contract with <count> levels that fall within an inclusive range between 0 and 10,000,000 at consecutive increments of 1. Due to the potential for variability in the Underlying, the Exchange may modify <count> levels in response to suggestions by Members.

---

[2] https://flightaware.com/live/cancelled/yesterday/ORD

**<date>**: <date> refers to a calendar date specified by Kalshi. Kalshi may list iterations of the Contract corresponding to different statistical periods of <date>.

**Payout Criterion:** The Payout Criterion for the Contract encompasses the Expiration Values that are <greater than/less than/between> <count>. If the value of <greater than/less than/between> is "between", then <count> shall be a pair of values and the Payout Criterion encompasses the Expiration Values that are greater than or equal to the lesser of the pair and less than or equal to the greater of the pair.

**Minimum Tick:** The Minimum Tick size for the referred Contract shall be $0.01.

**Position Limit:** The Position Limit for the $1 referred Contract shall be $25,000 per Member.

**Last Trading Date:** The Last Trading Date of the Contract will be <date>. The Last Trading Time will be 11:59 PM ET.

**Settlement Date:** The Settlement Date of the Contract shall be no later than the day after the Expiration Date, unless the Market Outcome is under review pursuant to Rule 7.1.

**Expiration Date:** The Expiration Date of the Contract shall be the sooner of the date of the first 10:00 AM ET following the release of the data for all of <date>, or one week after <date>.

**Expiration time:** The Expiration time of the Contract shall be 10:00 AM ET.

**Settlement Value:** The Settlement Value for this Contract is $1.00.

**Expiration Value:** The Expiration Value is the value of the Underlying as documented by the Source Agency on the Expiration Date at the Expiration time.

**Contingencies:** Before Settlement, Kalshi may, at its sole discretion, initiate the Market Outcome Review Process pursuant to Rule 6.3(c) of the Rulebook. Additionally, as outlined in Rule 7.2 of the Rulebook, if any event or any circumstance which may have a material impact on the reliability or transparency of a Contract's Source Agency or the Underlying related to the Contract arises, Kalshi retains the authority to designate a new Source Agency and Underlying for that Contract and to change any associated Contract specifications after the first day of trading.

# EXHIBIT 16

*KalshiEX LLC*

07/11/2022

**SUBMITTED VIA CFTC PORTAL**
Secretary of the Commission
Office of the Secretariat
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

Re: KalshiEX LLC – CFTC Regulation 40.2(a) Notification Regarding the Initial
Listing of the "Will <greater than/less than/between> <count> flights be delayed
or canceled at Los Angeles International Airport on <date>?" Contract

Dear Sir or Madam,

Pursuant to Section 5c(c) of the Commodity Exchange Act and Section 40.2(a) of the regulations
of the Commodity Futures Trading Commission, KalshiEX LLC (Kalshi) hereby notifies the
Commission that it is self-certifying the "Will <greater than/less than/between> <count> flights
be delayed or canceled at Los Angeles International Airport on <date>?" contract (Contract). The
Exchange intends to list the contract on a daily basis. The Contract's terms and conditions
(Appendix A) includes the following strike conditions:
- **<date>** (the target date)
- **<greater than/less than/between>**
- **<count>** (the target number of delays and cancellations)

Along with this letter, Kalshi submits the following documents:

- A concise explanation and analysis of the Contract;
- Certification;
- Appendix A with the Contract's Terms and Conditions;
- Confidential Appendices with further information; and
- A request for FOIA confidential treatment.

If you have any questions, please do not hesitate to contact me.


Sincerely,

Elie Mishory
Chief Regulatory Officer
KalshiEX LLC

*KalshiEX LLC*

emishory@kalshi.com

**KalshiEX LLC**
**Official Product Name: Will <greater than/less than/between> <count> flights be delayed or canceled at Los Angeles International Airport on <date>?**
**Rulebook: FLIGHTLAX**
**Kalshi Contract Category: Transportation**
**LAX flight delays/cancellations**
**07/11/2022**

**CONCISE EXPLANATION AND ANALYSIS OF THE PRODUCT AND ITS COMPLIANCE WITH APPLICABLE PROVISIONS OF THE ACT, INCLUDING CORE PRINCIPLES AND THE COMMISSION'S REGULATIONS THEREUNDER**

Pursuant to Commission Rule 40.2(a)(3)(v), the following is a concise explanation and analysis of the product and its compliance with the Act, including the relevant Core Principles, and the Commission's regulations thereunder.

I.    **Introduction**

The "Will <greater than/less than/between> <count> flights be delayed or canceled at Los Angeles International Airport on <date>?" Contract is a contract relating to the number of flight delays or cancellations at Los Angeles International Airport on a given date. After careful analysis, Kalshi (hereafter referred to as "Exchange") has determined that the Contract complies with its vetting framework, which has been reviewed by the CFTC and formed part of the Exchange's application for designation as a Contract Market ("DCM") that was approved by the Commission.

The FAA handles roughly 45,000 flights per day in the United States.[1] Los Angeles International Airport is one of the largest airports in America, and services roughly 1,500 flights per day. These flights are of vital importance not just to the airline company and its employees, but also to the hundreds of thousands of people who travel on those flights each day.

Further information about the Contract, including an analysis of its risk mitigation and price basing utility, as well as additional considerations related to the Contract, is included in Confidential Appendices B, C, and D.

---

[1] https://www.faa.gov/air_traffic/by_the_numbers/

Pursuant to Section 5c(c) of the Act and CFTC Regulations 40.2(a), the Exchange hereby certifies that the listing of the Contract complies with the Act and Commission regulations under the Act.

**General Contract Terms and Conditions:** The Contract operates similar to other binary contracts that the Exchange lists for trading. The minimum price fluctuation is $0.01 (one cent). Price bands will apply so that Contracts may only be listed at values of at least $0.01 and at most $0.99. Further, the Contract is sized with a one-dollar notional value and has a minimum price fluctuation of $0.01 to enable Members to match the size of the contracts purchased to their economic risks. The Exchange has further imposed position limits (defined as maximum loss exposure) of $25,000 USD on the Contract. As outlined in Rule 5.12 of the Rulebook, trading shall be available at all times outside of any maintenance windows, which will be announced in advance by the Exchange. Members will be charged fees in accordance with Rule 3.6 of the Rulebook. Fees are charged in such amounts as may be revised from time to time to be reflected on the Exchange's Website. Additionally, as outlined in Rule 7.2 of the Rulebook, if any event or any circumstance which may have a material impact on the reliability or transparency of a Contract's Source Agency or the Underlying related to the Contract arises, Kalshi retains the authority to designate a new Source Agency and Underlying for that Contract and to change any associated Contract specifications after the first day of trading. That new Source Agency and Underlying would be objective and verifiable. Kalshi would announce any such decision on its website. All instructions on how to access the Underlying are non-binding and are provided for convenience only and are not part of the binding Terms and Conditions of the Contract. They may be clarified at any time. Furthermore, the Contract's payout structure is characterized by the payment of an absolute amount to the holder of one side of the option and no payment to the counterparty. During the time that trading on the Contract is open, Members are able to adjust their positions and trade freely. After trading on the Contract has closed, the Expiration Value and Market Outcome are determined. The market is then settled by the Exchange, and the long position holders and short position holders are paid according to the Market Outcome. In this case, "long position holders" refers to Members who purchased the "Yes" side of the Contract and "short position holders" refers to Members who purchased the "No" side of the Contract. If the Market Outcome is "Yes," meaning that <greater than/less than/between> <count> flights are delayed or canceled at LAX International Airport on <date>, then the long position holders are paid an absolute amount proportional to the size of their position and the short position holders receive no payment. If the Market Outcome is "No," then the short position holders are paid an absolute amount proportional to the size of their position and the long position holders receive no payment. Specification of the circumstances that would trigger a Market Outcome of "Yes" are included below in the section titled "Payout Criterion" in Appendix A.

*KalshiEX LLC*

**CERTIFICATIONS PURSUANT TO SECTION 5c OF THE COMMODITY EXCHANGE ACT, 7 U.S.C. § 7A-2 AND COMMODITY FUTURES TRADING COMMISSION RULE 40.2, 17 C.F.R. § 40.2**

Based on the above analysis, the Exchange certifies that:

- ❏ The Contract complies with the Act and Commission regulations thereunder.
- ❏ This submission (other than those appendices for which confidential treatment has been requested) has been concurrently posted on the Exchange's website at https://kalshi.com/regulatory/filings.

Should you have any questions concerning the above, please contact the exchange at ProductFilings@kalshi.com.

*Eliezer Mishory*

By: Eliezer Mishory
Title: Chief Regulatory Officer
Date: 07/11/2022

*KalshiEX LLC*

**<u>Attachments:</u>**

Appendix A - Contract Terms and Conditions

Appendix B (Confidential) - Further Considerations

Appendix C (Confidential) - Source Agency

Appendix D (Confidential) - Compliance with Core Principles

*KalshiEX LLC*

## APPENDIX A – CONTRACT TERMS AND CONDITIONS

## TERMS OF CONTRACTS TRADED ON KALSHI

**Official Product Name: Will <greater than/less than/between> <count> flights be delayed or canceled at Los Angeles International Airport on <date>?**
**Rulebook: FLIGHTLAX**

*KalshiEX LLC*

*KalshiEX LLC*

**FLIGHTLAX**

**Scope:** These rules shall apply to this contract.

**Underlying:** The Underlying for this Contract is the sum of the total delayed and canceled flights at Los Angeles International Airport on <date>, according to FlightAware. Revisions to the Underlying made after Expiration will not be accounted for in determining the Expiration Value.

**Instructions:** This information is available <u>here</u>.[2]

Consider the following case below. In this case, the value of the Underlying would be 251.

Total delays yesterday at Los Angeles Intl:  246

Total delays within, into, or out of the United States yesterday at Los Angeles Intl:  246

Total cancellations yesterday at Los Angeles Intl:  5

Total cancellations within, into, or out of the United States yesterday at Los Angeles Intl:  5

Please note that the number above may not exactly match the list below that sum where it lists the flights by destination airport. The Exchange is not using the sum in the table titled "By Destination Airport".

These instructions on how to access the Underlying are provided for convenience only and are not part of the binding Terms and Conditions of the Contract. They may be clarified at any time.

**Source Agency:** The Source Agency is FlightAware.

**Type:** The type of Contract is a Binary Contract.

**Issuance:** The Contract is based on the outcome of a recurrent data release, which is issued on a daily basis. Thus, Contract iterations will be issued on a recurring basis, and future Contract iterations will generally correspond to the next day.

**<count>:** Kalshi may list iterations of the Contract with <count> levels that fall within an inclusive range between 0 and 10,000,000 at consecutive increments of 1. Due to the potential for variability in the Underlying, the Exchange may modify <count> levels in response to suggestions by Members.

**<date>:** <date> refers to a calendar date specified by Kalshi. Kalshi may list iterations of the Contract corresponding to different statistical periods of <date>.

---

[2] https://flightaware.com/live/cancelled/yesterday/LAX

*KalshiEX LLC*

**Payout Criterion:** The Payout Criterion for the Contract encompasses the Expiration Values that are <greater than/less than/between> <count>. If the value of <greater than/less than/between> is "between", then <count> shall be a pair of values and the Payout Criterion encompasses the Expiration Values that are greater than or equal to the lesser of the pair and less than or equal to the greater of the pair.

**Minimum Tick:** The Minimum Tick size for the referred Contract shall be $0.01.

**Position Limit:** The Position Limit for the $1 referred Contract shall be $25,000 per Member.

**Last Trading Date:** The Last Trading Date of the Contract will be  <date>. The Last Trading Time will be 11:59 PM ET.

**Settlement Date:** The Settlement Date of the Contract shall be no later than the day after the Expiration Date, unless the Market Outcome is under review pursuant to Rule 7.1.

**Expiration Date:** The Expiration Date of the Contract shall be the sooner of the date of the first 10:00 AM ET following the release of the data for all of <date>, or one week after <date>.

**Expiration time:** The Expiration time of the Contract shall be 10:00 AM ET.

**Settlement Value:** The Settlement Value for this Contract is $1.00.

**Expiration Value:** The Expiration Value is the value of the Underlying as documented by the Source Agency on the Expiration Date at the Expiration time.

**Contingencies:** Before Settlement, Kalshi may, at its sole discretion, initiate the Market Outcome Review Process pursuant to Rule 6.3(c) of the Rulebook. Additionally, as outlined in Rule 7.2 of the Rulebook, if any event or any circumstance which may have a material impact on the reliability or transparency of a Contract's Source Agency or the Underlying related to the Contract arises, Kalshi retains the authority to designate a new Source Agency and Underlying for that Contract and to change any associated Contract specifications after the first day of trading.

# EXHIBIT 17



Log in    Sign up

Trending   Elections   Politics   Sports   Culture   Crypto   Commodities   Climate   Economics   M



**ECON WEEKLY**

# US flight cancellations for the week ending at 5pm EDT on 7/17

**2.17K** forecast ▲ 617 ⓘ



Jul 12          Jul 14          Jul 15          Jul 16

$16,967 vol                                    6H   1D   **ALL**

Chance                                              ☰

| | Chance | | Yes | No |
|---|---|---|---|---|
| Above 5000 | **27%** ▲ 26 | | Yes 23¢ | No |
| Above 5500 | **29%** ▲ 27 | | Yes 13¢ | No |
| Above 6000 | <1% | | Yes 2¢ | No |

7 more

Browse        Live **37**        Search        Social

**Above 6000** ∨

**Resolves Yes if** the total cancellations within, into, or out of the United States figure displayed on FlightAware for week ending July 17, 2026 is above 6000.

Outcome verified from **FlightAware**.

For this market, the relevant value is the number shown in the field labeled "Total cancellations within, into, or out of the United States this week" on FlightAware's live weekly delay and cancellation page at the time of observation. This market resolves based on that figure as checked by the Exchange at 5pm EDT on Jul 17, 2026.

**This market and these products have not been endorsed by FlightAware LLC or its affiliates. Any references to FlightAware, FlightAware.com, FlightAware's delay and cancellation page, or any associated marks are descriptive only and do not indicate an endorsement of this product or any affiliation between FlightAware LLC or its affiliates and Kalshi.**

Note: this event is directional.

| View full rules | Help center | Report Insider Trading |



📅 **Timeline and payout** ∨

**Market open**
Jul 11, 2026 · 2:30pm EDT

🚫 **Insider trading is prohibited** ∨

The following are prohibited from trading this contract:

- Persons who are employed by any of the Source Agencies are not permitted to trade on the Contract.
- Persons who hold any material, non-public information on the Underlying are not permitted to trade on the Contract.

**Market closes**
After the outcome occurs

**Projected payout**
30 minutes after closing

This market will close and expire early if the economic data is released. Otherwise, it closes by Jul 17, 2026 at 4:59pm EDT.

Series **KXUSFLYCAN**  Event **KXUSFLYCAN-26JUL17**  Market **KXUSFLYCAN-26JUL17-T6000**

## People are also trading

  **TSA avg check-ins from Jul 13 to 19, 2026?**



| Browse | Live **37** | Search | Social |

US flight cancellations for the week ending at 5pm EDT on 7/17 Odds & Predictions 2026

 **Initial jobless claims for the week ending July 18, 2026**

 **US gas prices this week**

Show more

## Social Activity

This event    **All**

What's on your mind?

GIF    + **Add a position**    Post



**.free.money.**  Jul 13

No Position

So, we're basically betting on the weather? No thanks...

---

NEW MARKETS    RELATED MARKETS    RELATED TOPICS    SPORTS

Hipfl vs Giustino    Fed decision in July?    Econ Daily    Mbappé



Browse    Live **37**    Search    Social

US flight cancellations for the week ending at 9pm EDT on 7/17 Odds & Predictions 2026

| | | | |
|---|---|---|---|
| Kopp vs Herbert | Gas prices in the US this month? | Fed | Haaland |
| Paula Badosa vs Tamara Zidansek: Set 1 Winner | Inflation in July 2026 (CPI YoY) | GDP | Messi |
| Paula Badosa vs Tamara Zidansek: Set 2 Winner | US gas prices tomorrow? | Global Central Banks | Vinícius Jr |
| Tauson vs Krejcikova | Fed funds rate after July meeting? | Growth | Lamine Yamal |

**Show more**

## Kalshi

  

| PRODUCT | COMPANY | HELP |
|---|---|---|
| Perpetual Futures | About | Help Center |
| Markets | Kalshi Research | FAQ |
| Incentive program | Blog | Fee schedule |
| Institutions | Careers | Trading hours |
| API & developers | Policy Center | Regulatory |
| | Brand Kit | |

© 2026 Kalshi Inc. · All rights reserved

Privacy    Data Terms of Service    Trading Prohibitions    FAQ for Finance Professionals

Trading on Kalshi involves risk and may not be appropriate for all. Members risk losing their cost to enter any transaction, including fees. You should carefully consider whether trading on Kalshi is appropriate for you in light of your investment experience and financial resources. Any trading decisions you make are solely your responsibility and at your own risk. Information is provided for convenience only on an "AS IS" basis. Past performance is not necessarily indicative of future results. Kalshi is subject to U.S. regulatory oversight by the CFTC.

Browse    Live **37**    Search    Social

# EXHIBIT 18

US flight cancellations for the week ending at 5pm EDT on 7/24 Odds & Predictions 2026

 **Kalshi**

Log in    Sign up

Trending   Elections   Politics   Sports   Culture   Crypto   Commodities   Climate   Economics   M



**ECON WEEKLY**

# US flight cancellations for the week ending at 5pm EDT on 7/24

Begins on Friday · Jul 24, 4:00pm EDT

**8.01K** forecast  ▲ 3.08K ⓘ

 **Kalshi**

| Jul 19 | Jul 19 | Jul 20 | Jul 20 |

$19,144 vol                                    6H    1D    **ALL**

Chance                                                    ☰

| Above 7500 | **69%** ▲ 15 | Yes 80¢ | No 38¢ |
| Above 8000 | **51%** ▲ 5 | Yes 64¢ | No 49¢ |
| Above 8500 | —% | Yes 99¢ | No |

More markets

| ⊘ Browse | ((•)) Live **109** | 🔍 Search | ♀ Social |

# Market Rules

## Above 8000 ∨                                                                  ⓘ

**Resolves Yes if** the total cancellations within, into, or out of the United States figure displayed on FlightAware for week ending July 24, 2026 is above 8000.

Outcome verified from **FlightAware**.

For this market, the relevant value is the number shown in the field labeled "Total cancellations within, into, or out of the United States this week" on FlightAware's live weekly delay and cancellation page at the time of observation. This market resolves based on that figure as checked by the Exchange at 5pm EDT on Jul 24, 2026.

**This market and these products have not been endorsed by FlightAware LLC or its affiliates. Any references to FlightAware, FlightAware.com, FlightAware's delay and cancellation page, or any associated marks are descriptive only and do not indicate an endorsement of this product or any affiliation between FlightAware LLC or its affiliates and Kalshi.**

Note: this event is directional.

| View full rules | Help center | Report Insider Trading |

📅 **Timeline and payout**                                                      ∨

✅ **Market open**
Insider trading is prohibited
Jul 20, 2026 · 4:30pm EDT

🚫 The following are prohibited from trading this contract:
- Persons who are employed by any of the Source Agencies are not permitted to trade on the Contract.
- Persons who hold any material, non-public information on the Underlying are not permitted to trade on the Contract.

**Market closes**
After the outcome occurs

## People are also trading

**Projected payout**
0 minutes after closing



**Initial jobless claims for the week ending July 18, 2026**

This market will close and expire early if the economic data is released. Otherwise, it closes by Jul 24, 2026 at EDT.

**TSA avg check-ins from Jul 20 to 26, 2026?**
KXUSFLYCAN   Event KXUSFLYCAN-26JUL24   Market KXUSFLYCAN-26JUL24-T8000

**US gas prices this week**

| Browse | Live **109** | Search | Social |

US flight cancellations for the week ending at 5pm ED on 7/24 Odds & Predictions 2026



## Social  Activity

This event    **All**

What's on your mind?

GIF    **+ Add a position**    Post

**sick.sad.beat** Jul 19    •••
Yes · Above 6000 · week ending J...

almost 4k this weekend already

♡    ◯    ▢    ⬆



| NEW MARKETS | RELATED MARKETS | RELATED TOPICS | SPORTS |
|---|---|---|---|
| The Brink of War · Rotten | Fed decision in July? | Econ Daily | Mbappé |

⊘ Browse    ((•)) Live **109**    🔍 Search    ♡ Social

US flight cancellations for the week ending at 5pm EDT on 7/24 Odds & Predictions 2026

The End of Oak Street · Rotten Tomatoes score

Jacquet vs Blockx

Raith Rovers vs Peterhead

Stranraer vs Edinburgh City

Dundee United vs Spartans

**Show more**

US gas prices this week

Inflation in July 2026 (CPI YoY)

US gas prices tomorrow?

Number of rate cuts in 2026?

Fed

GDP

Global Central Banks

Growth

Haaland

Messi

Vinícius Jr

Lamine Yamal

**Kalshi**

   

| PRODUCT | COMPANY | HELP |
|---|---|---|
| Perpetual Futures | About | Help Center |
| Markets | Kalshi Research | FAQ |
| Incentive program | Blog | Fee schedule |
| Institutions | Careers | Trading hours |
| API & developers | Policy Center | Regulatory |
| | Brand Kit | |

© 2026 Kalshi Inc. · All rights reserved

Privacy    Data Terms of Service    Trading Prohibitions    FAQ for Finance Professionals

Trading on Kalshi involves risk and may not be appropriate for all. Members risk losing their cost to enter any transaction, including fees. You should carefully consider whether trading on Kalshi is appropriate for you in light of your investment experience and financial resources. Any trading decisions you make are solely your responsibility and at your own risk. Information is provided for convenience only on an "AS IS" basis. Past performance is not necessarily indicative of future results. Kalshi is subject to U.S. regulatory oversight by the CFTC.



Browse      Live **109**      Search      Social

# EXHIBIT 19

US flight cancellations for the week ending at 5pm EDT on 7/31 Odds & Predictions 2026

 **Kalshi**

Log in    Sign up

Trending    Elections    Politics    Sports    Culture    Crypto    Commodities    Climate    Economics    Me

 **ECON WEEKLY**

# US flight cancellations for the week ending at 5pm EDT on 7/31

Begins in 22h 57m 06s · Jul 31, 4:00pm EDT

**5.59K** forecast  ▲ 2.75K  ⓘ

 **Kalshi**

| Jul 25 | Jul 27 | Jul 28 | Jul 29 |

$9,623 vol                                           6H    1D    **ALL**

Chance

| | Chance | | |
|---|---|---|---|
| Above 5,000 | **99%** | Yes | No 1¢ |
| Above 6,000 | **15%** ▼ 62 | Yes 20¢ | No 84¢ |
| Above 6,500 | --% | Yes 4¢ | No |

9 more

Browse    Live 50    Search    Social

# Market Rules

**Above 6,000** ⌄

**Resolves Yes if** the total cancellations within, into, or out of the United States figure displayed on FlightAware for week ending July 31, 2026 is above 6,000.

Outcome verified from **FlightAware**.

For this market, the relevant value is the number shown in the field labeled "Total cancellations within, into, or out of the United States this week" on FlightAware's live weekly delay and cancellation page at the time of observation. This market resolves based on that figure as checked by the Exchange at 5pm EDT on Jul 31, 2026.

**This market and these products have not been endorsed by FlightAware LLC or its affiliates. Any references to FlightAware, FlightAware.com, FlightAware's delay and cancellation page, or any associated marks are descriptive only and do not indicate an endorsement of this product or any affiliation between FlightAware LLC or its affiliates and Kalshi.**

Note: this event is directional.

| View full rules | Help center |   Report Insider Trading |
|---|---|---|

 **Timeline and payout**                                        ⌄

**Market open**
 **Insider trading is prohibited**
Jul 24, 2026 · 6:30pm EDT                                                            ⌄

The following are prohibited from trading this contract:

- Persons who are employed by any of the Source Agencies are not permitted to trade on the Contract.
- Persons who hold any material, non-public information on the Underlying are not permitted to trade on the Contract.

**Market closes**
After the outcome occurs

# People are also trading

Projected payout
 0 minutes after closing
**Initial jobless claims for the week ending August 1, 2026**

This market will close and expire early if the economic data is released. Otherwise, it closes by Jul 31, 2026 at EDT.

    **TSA avg check-ins from Jul 27 to Sunday?**
KXUSFLYCAN  Event KXUSFLYCAN-26JUL31  Market KXUSFLYCAN-26JUL31-T6000

 **US gas prices this week**


Browse          Live **50**          Search          Social

US flight cancellations for the week ending at 5pm EDT on 7/31 Odds & Predictions 2026

**Social** Activity                                                    This event          **All**

What's on your mind?

GIF          + Add a position          Post

| NEW MARKETS | RELATED MARKETS | RELATED TOPICS | SPORTS |
|---|---|---|---|
| When will the debt limit be increased? | Fed decision in September? | Econ Daily | Mbappé |
| | | Econ Weekly | Kane |
| YouTube Charts: Weekly Top Podcast Show USA | Gas prices in the US this month? | Fed | Haaland |
| | | GDP | Messi |
| Kristina Liutova vs Catherine McNally: Set 1 Winner | US real GDP growth in 2026? | Global Central Banks | Vinícius Jr |
| | Inflation in July 2026 (CPI | Growth | Lamine Yamal |

Browse          Live **50**          Search          Social

Winner

Geerlings vs Masiianskaia

Munk Mortensen vs
Lekomtseva

US gas prices tomorrow?

**Show more**



**Kalshi**

| PRODUCT | COMPANY | HELP |
|---|---|---|
| Perpetual Futures | About | Help Center |
| Markets | Kalshi Research | FAQ |
| Incentive program | Blog | Fee schedule |
| Institutions | Careers | Trading hours |
| API & developers | Policy Center | Regulatory |
| | Brand Kit | |

© 2026 Kalshi Inc. · All rights reserved   Privacy   Data Terms of Service   Trading Prohibitions   FAQ for Finance Professionals

Trading on Kalshi involves risk and may not be appropriate for all. Members risk losing their cost to enter any transaction, including fees. You should carefully consider whether trading on Kalshi is appropriate for you in light of your investment experience and financial resources. Any trading decisions you make are solely your responsibility and at your own risk. Information is provided for convenience only on an "AS IS" basis. Past performance is not necessarily indicative of future results. Kalshi is subject to U.S. regulatory oversight by the CFTC.


Browse


Live **50**


Search


Social

# EXHIBIT 20

US flight cancellations for the week ending at 5pm EDT on 8/7 Odds & Predictions 2026

 **Kalshi**

Log in    Sign up

Trending    Elections    Politics    Sports    Culture    Crypto    Commodities    Climate    Economics    Me



**ECON WEEKLY**

# US flight cancellations for the week ending at 5pm EDT on 8/7

Begins on Friday · Aug 7, 4:00pm EDT

**4.8K** forecast  ▲ 1K ⓘ

 Kalshi

Aug 1          Aug 2          Aug 3          Aug 4

$2,682 vol                                6H    1D    **ALL**

Chance                                         ≡

| | Chance | | | |
|---|---|---|---|---|
| Above 4,000 | **61%** ▼ 22 | Yes 66¢ | No 38¢ |
| Above 5,000 | **46%** ▼ 28 | Yes 51¢ | No 53¢ |
| Above 6,000 | **31%** | Yes 24¢ | No 87¢ |

7 more

Browse     Live **122**     Search     Social

 **THE JERUSALEM POST** · Aug 2

### American Airlines flights from New York to Israel canceled through March 2027

Competing US carriers Delta Air Lines and United Airlines have also canceled flights to Israel, though both are expected to resume service before the end of 2026.

 **ABC NEWS** · 7h

### Rising temperatures could keep more flights from taking off on time

Clear blue skies don't always mean smooth flying

## Market Rules                                                              ⌃

### Above 5,000 ⌄                                                          ⓘ

**Resolves Yes if** the total cancellations within, into, or out of the United States for week ending August 7, 2026 is above 5,000.

Outcome verified from **FlightAware**.

For this market, the relevant value is the number shown in the field labeled "Total cancellations within, into, or out of the United States this week" on FlightAware's live weekly delay and cancellation page at the time of observation. This market resolves based on that figure as checked by the Exchange at 5pm EDT on Aug 7, 2026.

**This market and these products have not been endorsed by FlightAware LLC or its affiliates. Any references to FlightAware, FlightAware.com, FlightAware's delay and cancellation page, or any associated marks are descriptive only and do not indicate an endorsement of this product or any affiliation between FlightAware LLC or its affiliates and Kalshi.**

Note: this event is directional.

| View full rules | Help center |        Report Insider Trading

🗓 **Timeline and payout**                                                  ⌄

✅ Market open
Jul 31, 2026 · 5:00pm EDT

Market closes
After the outcome occurs



US flight cancellations for the week ending at 9pm EDT on 8/7 Odds & Predictions 2026

This market will close and expire early if the economic data is released. Otherwise, it closes by Aug 7, 2026 at 4:59pm EDT.

Series **KXUSFLYCAN**  Event **KXUSFLYCAN-26AUG07**  Market **KXUSFLYCAN-26AUG07-T5000**

 **Insider trading is prohibited**

The following are prohibited from trading this contract:
- Persons who are employed by any of the Source Agencies are not permitted to trade on the Contract.
- Persons who hold any material, non-public information on the Underlying are not permitted to trade on the Contract.

## People are also trading

 **Initial jobless claims for the week ending August 1, 2026**

 **TSA avg check-ins from Aug 3 to 9, 2026?**

 **US gas prices this week**

Show more

## Social  Activity                                This event    **All**

What's on your mind?

GIF        **+  Add a position**


Browse            Live **122**            Search              Social

US flight cancellations for the week ending at 9pm EDT on 8/7 Odds & Predictions 2026

| NEW MARKETS | RELATED MARKETS | RELATED TOPICS | SPORTS |
|---|---|---|---|
| Runner-Up Daily Music Video Global on YouTube: Aug 6, 2026 | Fed decision in September? | Econ Daily | Mbappé |
| Runner-Up Daily Music Video USA on YouTube: Aug 6, 2026 | US gas prices tomorrow? | Econ Weekly | Kane |
| | US gas prices this week | Fed | Haaland |
| Top Daily Music Video Global on YouTube: Aug 6, 2026 | CPI in July | GDP | Messi |
| | CPI month-over-month in July 2026? | Global Central Banks | Vinícius Jr |
| Top Daily Music Video USA on YouTube: Aug 6, 2026 | Unemployment in July | Growth | Lamine Yamal |
| NASDAQ-100 Hourly Up/Down | | | |
| S&P 500 Hourly Up/Down | | | |

**Show more**



# Kalshi

   

| PRODUCT | COMPANY | HELP |
|---|---|---|
| Perpetual Futures | About | Help Center |
| Markets | Kalshi Research | FAQ |
| Incentive program | Blog | Fee schedule |
| Institutions | Careers | Trading hours |
| API & developers | Policy Center | Regulatory |
| | Brand Kit | |

Browse          Live **122**          Search          Social

US flight cancellations for the week ending at 9pm EDT on 8/7 Odds & Predictions 2026

Trading on Kalshi involves risk and may not be appropriate for all. Members risk losing their cost to enter any transaction, including fees. You should carefully consider whether trading on Kalshi is appropriate for you in light of your investment experience and financial resources. Any trading decisions you make are solely your responsibility and at your own risk. Information is provided for convenience only on an "AS IS" basis. Past performance is not necessarily indicative of future results. Kalshi is subject to U.S. regulatory oversight by the CFTC.



Browse



Live 122



Search



Social

# EXHIBIT 21

US flight cancellations for the week ending at 5pm EDT on 8/14 Odds & Predictions 2026



Log in    Sign up

Trending    Elections    Politics    Sports    Culture    Crypto    Commodities    Climate    Economics    Me



**ECON WEEKLY**

# US flight cancellations for the week ending at 5pm EDT on 8/14

Begins on Friday · Aug 14, 4:00pm EDT



| | Chance | | |
|---|---|---|---|
| Above 5,000 | —% | Yes 87¢ | No 44¢ |
| Above 6,000 | 20% ▼ 21 | Yes 87¢ | No 80¢ |
| Above 7,000 | 30% ▼ 1 | Yes 87¢ | No 90¢ |

7 more

## Market Rules

Above 6,000 ⌄                                                                    ⓘ

**Resolves Yes if** the total cancellations within, into, or out of the United States for week ending August 14, 2026 is above 6,000.

Outcome verified from **FlightAware**.

For this market, the relevant value is the number shown in the field labeled "Total cancellations within, into, or out of the United States this week" on FlightAware's live weekly delay and cancellation page at the time of observation. This market resolves based on that figure as checked by the Exchange at 5pm EDT on Aug 14, 2026.



Predict          Perps          Live 55          Social

US flight cancellations for the week ending at 5pm EDT on 8/14 Odds & Predictions 2026

**associated marks are descriptive only and do not indicate an endorsement of this product or any affiliation between FlightAware LLC or its affiliates and Kalshi.**

Note: this event is directional.

View full rules    Help center    ⚑ Report Insider Trading

---

📅 Timeline and payout ⌄

✅ Market open
🚫 **Insider trading is prohibited** ⌄
Aug 9, 2026 · 3:45pm EDT

The following are prohibited from trading this contract:
- Persons who are employed by any of the Source Agencies are not permitted to trade on the Contract.
- Persons who hold any material, non-public information on the Underlying are not permitted to trade on the Contract.

Market closes
After the outcome occurs

Projected payout
30 minutes after closing

This market will close and expire early if the economic data is released. Otherwise, it closes by Aug 14, 2026 at 4:59pm EDT.

Series **KXUSFLYCAN**  Event **KXUSFLYCAN-26AUG14**  Market **KXUSFLYCAN-26AUG14-T6000**

## People are also trading



💼 How many initial jobless claims for the week ending Aug 8, 2026?

💼 Unemployment in August

💼 How high will unemployment get in 2026?

Show more

---

% Predict          ∞ Perps          ((o)) Live **55**          👥 Social

What's on your mind?

GIF            **+ Add a position**            Post

| NEW MARKETS | RELATED MARKETS | RELATED TOPICS | SPORTS |
|---|---|---|---|
| Ground Zero vs. Abyssal: Total Maps | Fed funds rate at end of 2027 | Econ Daily | Mbappé |
| Mindfreak vs. Rooster: Total Maps | Fed decision in September? | Econ Weekly | Kane |
| US gas prices this week | US headline CPI inflation in December 2027 | Fed | Haaland |
| Mindfreak vs. Rooster | CPI in July | GDP | Messi |
| Ground Zero vs. Abyssal | Inflation in July 2026 (CPI YoY) | Global Central Banks | Vinícius Jr |
| Vasilescu vs Lollia | EV commodity prices today | Growth | Lamine Yamal |
| Show more | | | |

# Kalshi



| PRODUCT | COMPANY | HELP |
|---|---|---|
| Perpetual Futures | About | Help Center |
| Markets | Kalshi Research | FAQ |
| Incentive program | Blog | Fee schedule |

| Predict | Perps | Live 55 | Social |
|---|---|---|---|

Brand Kit

© 2026 Kalshi Inc. · All rights reserved

Privacy

Data Terms of Service

Trading Prohibitions

FAQ for Finance Professionals

Trading on Kalshi involves risk and may not be appropriate for all. Members risk losing their cost to enter any transaction, including fees. You should carefully consider whether trading on Kalshi is appropriate for you in light of your investment experience and financial resources. Any trading decisions you make are solely your responsibility and at your own risk. Information is provided for convenience only on an "AS IS" basis. Past performance is not necessarily indicative of future results. Kalshi is subject to U.S. regulatory oversight by the CFTC.



Predict



Perps



Live 55

Social

# EXHIBIT 22

Will at least 50% of scheduled flights at JFK be cancelled on October 21, 2026? Odds & Predictions



Log in    Sign up

Trending    Elections    Politics    Sports    Culture    Crypto    Commodities    Climate    Economics    Me

**Please note:** If an Excluded Event involving unlawful, malicious, intentional, or security-related disruption to airport activity occurs, Contracts in this event shall settle to the last fair price determined at the sole discretion of the Exchange.

Go to rules ↓



JOBS & ECONOMY

# Will at least 50% of scheduled flights at JFK be cancelled on October 21, 2026?

**3%** chance ▲ 2.6 ⓘ



Jul 27        Jul 28        Jul 29        Jul 29

$3,031,749 vol

6H    1D    1W    1M    **ALL**

Chance

| At least 50% | 3.7% ▲ 0.7 | Yes 3.8¢ | No 97.8¢ |
| --- | --- | --- | --- |

## Market Rules                                                        ︿

⊘ Browse        ((•)) Live **105**        ⚲ Search        ◯ Social

**Resolves Yes if** the percentage of scheduled passenger and cargo flights at John F. Kennedy International Airport (JFK/KJFK) that are cancelled during October 21, 2026 is at least 50%.

Outcome verified from **FlightAware**.

## EXCLUDED EVENTS

"Excluded Event" means any event or circumstance arising from, or directly resulting from:

(i) Any act of unlawful interference with civil aviation, including sabotage, unlawful seizure of aircraft, or interference with air navigation facilities or services;

(ii) Any deliberate act or omission by any person, whether or not identified, undertaken with the purpose or reasonably foreseeable effect of disrupting operations at John F. Kennedy International Airport (JFK/KJFK), including without limitation unauthorized unmanned aircraft operations, laser illumination, trespass upon or unauthorized presence within the air operations area, tampering with or destruction of airport, air carrier, air traffic control, or utility infrastructure serving John F. Kennedy International Airport (JFK/KJFK), and false reports or threats resulting in evacuation, ground stop, or suspension of operations;

(iii) Any malicious cyber incident affecting systems of John F. Kennedy International Airport (JFK/KJFK), any air carrier, or any air navigation service provider, as characterized by the affected entity or a governmental authority; or

(iv) Any security-related closure, ground stop, or operational suspension ordered by a governmental authority in response to an actual or suspected act described in clauses (i)–(iii) or to any actual or suspected act of unlawful violence, wherever occurring.

## HOW THE CANCELLATION PERCENTAGE IS CALCULATED

The cancellation percentage is calculated by dividing the number of cancelled flights within the fixed schedule by the total number of scheduled flights and multiplying the result by 100. The result is carried to two decimal places without rounding; any digits beyond the second decimal place are truncated.

**Schedule baseline:** The schedule baseline for this market is October 19, 2026 at 11:59:59 PM ET.

**Fixed scheduled-flight total:** The binding total number of scheduled flights will be determined as of October 19, 2026 at 11:59:59 PM ET. This total consists of commercial passenger and cargo flights, including arrivals and departures combined, scheduled to operate at John F. Kennedy International Airport (JFK/KJFK) during October 21, 2026.

The fixed total includes any flight subsequently cancelled and is not reduced by cancellations, schedule changes, or removals occurring after the schedule baseline. Flights added after the schedule baseline are excluded from both the scheduled-flight total and the cancellation count.

**Cancelled flights:** A flight counts as cancelled only if it is included in the fixed scheduled-flight total and is classified as cancelled by FlightAware as of the Expiration time. Cancellations made after the schedule baseline but before the beginning of October 21, 2026, including pre-emptive cancellations, are counted.


Browse


Live **105**


Search


Social

Will at least 50% of scheduled flights at JFK be cancelled on October 21, 2026? Odds & Predictions

**Excluded flight outcomes:** Delayed flights, diverted flights, and gate returns that ultimately depart are not counted as cancelled, regardless of the length of the delay.

**Corrections and revisions:** Corrections, retractions, or restatements made by the Source Agency before Expiration will be considered. Revisions made after Expiration will not be considered.

**Local time and flight attribution:** All dates and times relating to the scheduling and operation of flights are interpreted in the local time of John F. Kennedy International Airport (JFK/KJFK) unless otherwise specified. Each flight is attributed to October 21, 2026 according to its originally scheduled date of operation at the airport.

### AIRPORT CLOSURE

If John F. Kennedy International Airport (JFK/KJFK) is fully closed and no scheduled flight operates for the entirety of October 21, 2026, the cancellation percentage will be deemed 100.00%.

If the scheduled-flight total is zero because the airport is closed, or has been ordered or announced to be closed, for the entirety of October 21, 2026, the cancellation percentage will be deemed 100.00%. If the scheduled-flight total is zero for any other reason, the outcome will be determined pursuant to Rule 7.1 of the Rulebook.

**This market and these products have not been endorsed by FlightAware LLC or its affiliates. Any references to FlightAware, FlightAware.com, FlightAware's delay and cancellation page, or any associated marks are descriptive only and do not indicate an endorsement of this product or any affiliation between FlightAware LLC or its affiliates and Kalshi.**

| View full rules | Help center | Report Insider Trading |
|---|---|---|

📅 **Timeline and payout**    ⌄



✅ Market open
🚫 **Insider trading is prohibited**
Jul 14, 2026 · 8:00pm EDT    ⌄

The following are prohibited from trading this contract:
- Persons who are employed by any of the Source Agencies are not permitted to trade on the Contract.
- Market closes
- Persons who hold any material, non-public information on the Underlying are not permitted to trade on the Contract.
  After the outcome occurs

Projected payout
30 minutes after closing

This market will close and expire early if the outcome is determined before the scheduled expiration time. Otherwise, it closes by Oct 22, 2026 at 10:00am EDT.

Series **KXFLYCANCJFK**  Event **KXFLYCANCJFK-JFK-ALL-26OCT21**  Market **KXFLYCANCJFK-JFK-ALL-26OCT21-T50**



| Browse | Live **105** | Search | Social |
|---|---|---|---|

Will at least 50% of scheduled flights at JFK be cancelled on October 21, 2026? Odds & Predictions

 **Jobs numbers this month?**

 **Unemployment in July**

 **Initial jobless claims for the week ending August 1, 2026**

Show more

# Social Activity

What's on your mind?

GIF    + Add a position    Post

**Foster** Jul 28   Top 1% P&L ▦

Yes · JFK · October 21, 2026

this ts shit hittin?

♡ 4    💬 1    🔖    ⬆

**Sujay** Jul 28   Top 5% P&L ▥

busted out laughing reading this

Reply    ♡ 2

**of.the.possum** Jul 28   #81 P&L ⚙

No Position

Explanation: NEXTPredict is holding a prediction-markets conference in New York on October 22–23, expected to attract about 2,500 attendees. NEXTPredict reportedly paid $12,000 for Kalshi to create

Browse    Live **105**    Search    Social

Will at least 50% of scheduled flights at JFK be cancelled on October 21, 2026? Odds & Predictions

NEXTPredict bought a customized $3 million ca...

**Read more**

♡ 10    💬 2    🔖    ↥

---

**of.the.possum** Jul 28    #81 P&L ⚙

Interesting how the rules for this contract are so detailed and appear designed to avoid any ambiguities. Why aren't all Kalshi markets like that..?

Reply    ♡ 5

 **beam.suit** Jul 29

Ambiguities for thee certainty for me?



Reply    ♡

---

 **backformore** Jul 28    Top 1% P&L ⊞    ⋯

No Position

the date's near the end of hurricane season. maybe hurricane marco gets near nyc

♡ 2    💬    🔖    ↥

---

⊘ Browse    ((•)) Live **105**    🔍 Search    💡 Social

Will at least 50% of scheduled flights at JFK be cancelled on October 21, 2026? Odds & Predictions



**.free.money.** Jul 28                                                                 •••

No Position

Oct 20 is National Chicken and Waffles Day. Oct 21 is National Reptile Awareness Day and National Pumpkin Cheesecake Day. So, obviously...

Seriously, WTF?

 2    2   🔖

 **backformore** Jul 28    Top 1% P&L ▦



Reply   ♡

**sick.sad.beat** Jul 28    Top 30% Predictions 📊
does godzilla attack on reptiles day void the market?

Reply   ♡

 **horrible.sawfish2443** Jul 27                                  •••

No Position

https://fortune.com/2026/07/27/kalshi-tiptoes-back-into-canceled-flight-markets-with-jfk-airport-wager/

 1    2   🔖   ⬆

**backformore** Jul 27    Top 1% P&L ▦

imagine paying 12k to make a market when you can request a market idea for free

Browse          Live **105**          Search          Social

Will at least 50% of scheduled flights at JFK be cancelled on October 21, 2026? Odds & Predictions



Reply    ♡ 1

 **HiNoE9** Jul 28

thanks for the link. I read it and I'm still confused. I understand prediction markets generate quite an amount of data from the population. What I don't get is how insurance companies, events planners etc connect with Kalshi?

Reply    ♡

| NEW MARKETS | RELATED MARKETS | RELATED TOPICS | SPORTS |
|---|---|---|---|
| LA Sparks vs PDX Fire: Overtime | Fed decision in September? | Econ Daily | Mbappé |
| | | Econ Weekly | Kane |
| LA Sparks vs PDX Fire | Gas prices in the US this month? | | |
| | | Fed | Haaland |
| Lavked vs. ex-RUBY | | | |
| | US real GDP growth in 2026? | GDP | Messi |
| Vexar vs. ex-RUSTEC | | | |
| | | Global Central Banks | Vinícius Jr |
| VooDooSh Team vs. Travoman Team | Next Fed rate hike? | | |
| | | Growth | Lamine Yamal |
| Miladinovic / Petrovic vs | Inflation in July 2026 (CPI YoY) | | |

 Browse           Live **105**          Search          Social

**Show more**



| PRODUCT | COMPANY | HELP |
|---|---|---|
| Perpetual Futures | About | Help Center |
| Markets | Kalshi Research | FAQ |
| Incentive program | Blog | Fee schedule |
| Institutions | Careers | Trading hours |
| API & developers | Policy Center | Regulatory |
| | Brand Kit | |

© 2026 Kalshi Inc. · All rights reserved

Privacy    Data Terms of Service    Trading Prohibitions    FAQ for Finance Professionals

Trading on Kalshi involves risk and may not be appropriate for all. Members risk losing their cost to enter any transaction, including fees. You should carefully consider whether trading on Kalshi is appropriate for you in light of your investment experience and financial resources. Any trading decisions you make are solely your responsibility and at your own risk. Information is provided for convenience only on an "AS IS" basis. Past performance is not necessarily indicative of future results. Kalshi is subject to U.S. regulatory oversight by the CFTC.


Browse


Live **105**

Search


Social

# EXHIBIT 23

US flight cancellations for the week ending at 12pm EDT on 4/20 Odds & Predictions 2020

 **Kalshi**

Log in    Sign up

Trending    Elections    Politics    Sports    Culture    Crypto    Commodities    Climate    Economics    Me

 ECON WEEKLY

# US flight cancellations for the week ending at 12pm EDT on 4/20

**340** forecast  ▼ **655.5** ⓘ

Kalshi

Apr 16            Apr 17            Apr 18            Apr 19

$64,093 vol                                    6H    1D    **ALL**

Above 300                                                **No**

Above 500                                                **No**

Above 700                                                **No**

2 more

## Market Rules

Browse        Live **118**        Search        Social

US flight cancellations for the week ending at 12pm EDT on 4/20 Odds & Predictions 2026

**Above 300**   ⌄                                                              ⓘ

The outcome is 299

**Resolves Yes if** the total cancellations within, into, or out of the United States figure displayed on FlightAware for week ending April 20, 2026 is above 300   .

Outcome verified from **FlightAware**.

For this market, the relevant value is the number shown in the field labeled "Total cancellations within, into, or out of the United States this week" on FlightAware's live weekly delay and cancellation page at the time of observation. This market resolves based on that figure as checked by the Exchange at 12pm EDT on April 20, 2026.

Note: this event is directional.

| View full rules | Help center | Report Insider Trading |

📅   **Timeline and payout**                                               ⌄



✅ Market open
🚫 **Insider trading is prohibited**
Apr 15, 2026 · 10:00am EDT

The following are prohibited from trading this contract:
• Persons who are employed by any of the Source Agencies are not permitted to trade on the Contract.
✅ Market closed
  • Persons who hold any material, non-public information on the Underlying are not permitted to trade on the Contract.
  After the outcome occurs

✅ **Paid out**
30 minutes after closing

This market will close and expire early if the economic data is released. Otherwise, it closes by Apr 20, 2026 at 11:59am EDT.

Series **KXUSFLYCAN**   Event **KXUSFLYCAN-26APR20**   Market **KXUSFLYCAN-26APR20-T300**

## People are also trading

 US flight cancellations for the week ending at 5pm EDT on 8/7

 Initial jobless claims for the week ending August 1, 2026



| Browse | Live **118** | Search | Social |

US flight cancellations for the week ending at 12pm EDT on 9/20 Odds & Predictions 2026

 **TSA avg check-ins from Aug 3 to 9, 2026?**

Show more

**Social** Activity

This event    **All**

What's on your mind?

GIF    + Add a position    Post

| NEW MARKETS | RELATED MARKETS | RELATED TOPICS | SPORTS |
|---|---|---|---|
| Jiri Lehecka vs Alexander Blockx: Set 2 Winner | Fed decision in September? | Econ Daily | Mbappé |
| Luciano Darderi vs Juncheng Shang: Set 1 Winner | US gas prices tomorrow? | Econ Weekly | Kane |
| | US gas prices this week | Fed | Haaland |
| Jiri Lehecka vs Alexander Blockx: Set 1 Winner | CPI month-over-month in July 2026? | GDP | Messi |
| Luciano Darderi vs Juncheng Shang: Set 2 ... | Unemployment in July | Global Central Banks | Vinícius Jr |
| | CPI in July | Growth | Lamine Yamal |

Browse    Live **118**    Search    Social

Jiri Lehecka vs Alexander
Blockx: Exact Match
Score

Luciano Darderi vs
Juncheng Shang: Exact
Match Score

**Show more**

## Kalshi

X  ⓘ  ♪  ⊙  ⊙  in

| PRODUCT | COMPANY | HELP |
|---|---|---|
| Perpetual Futures | About | Help Center |
| Markets | Kalshi Research | FAQ |
| Incentive program | Blog | Fee schedule |
| Institutions | Careers | Trading hours |
| API & developers | Policy Center | Regulatory |
| | Brand Kit | |

© 2026 Kalshi Inc. · All rights reserved     Privacy    Data Terms of Service     Trading Prohibitions     FAQ for Finance Professionals

Trading on Kalshi involves risk and may not be appropriate for all. Members risk losing their cost to enter any transaction, including fees. You should carefully consider whether trading on Kalshi is appropriate for you in light of your investment experience and financial resources. Any trading decisions you make are solely your responsibility and at your own risk. Information is provided for convenience only on an "AS IS" basis. Past performance is not necessarily indicative of future results. Kalshi is subject to U.S. regulatory oversight by the CFTC.

Browse        Live **118**        Search        Social

# EXHIBIT 24

# BartlitBeck LLP

Jason L. Peltz
Jason.Peltz@BartlitBeck.com

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4438

BartlitBeck.com

July 15, 2026

**By Email**

Neal Katyal
Counsel for KalshiEX LLC
MILBANK LLP
1101 New York Avenue NW
Washington, DC 20005
nkatyal@milbank.com

Xavier Sottile
Head of Markets
KalshiEX LLC
xsottile@kalshi.com

### Re: Cease & Desist—Violation of Terms of Use and Infringement of Trademarks

Dear Messrs. Katyal and Sottile,

We are counsel for FlightAware, LLC (FlightAware), a Texas limited liability company, a part of Collins Aerospace, and a wholly owned subsidiary of RTX Corporation (RTX).

### Violation of Terms of Use

On July 14, 2026, Kalshi filed a self-certification with the U.S. Commodity Futures Trading Commission (CFTC) for a new product that would allow predictive market betting on airport delays, specifically citing FlightAware as a primary Source Agency. *See* AIRPORTDELAY-2.

Furthermore, Kalshi has publicly and repeatedly stated that it currently relies on FlightAware Data for event contracts related to flight delays. *See, e.g., id.* Such information is also being disseminated in the news and in social media posts. *See, e.g., Kalshi Wants You to Make Money Off of Canceled Flights: Inside the Prediction Market's Wild New 'Sky Trading' Plan*; Kalshi to Offer Contracts Predicting Flight Cancellations - WSJ.

Kalshi's use of FlightAware Data in the above stated manner is in clear violation of the license grant related to its AeroAPI Personal Account. Under the terms of the Personal Use License (Version – January 2025), Kalshi is prohibited from: "us[ing] AeroAPI and AeroAPI Data in furtherance of any business, whether for profit or otherwise, including by employee(s), representatives, or contractors of any business, corporation, company, startup venture, trust, or other juridical entity." As such, FlightAware is providing this as written notice that Kalshi's

**BartlitBeck** LLP

account has been suspended indefinitely until Kalshi confirms in writing it is not using the data for commercial purposes. We further demand that Kalshi cease the use of any FlightAware data in its possession.

**Trademark Infringement**

In connection with the above activity, Kalshi is using federally registered FlightAware trademarks, specifically FLIGHTAWARE, in connection with these goods/services. FlightAware has gained global success and recognition through the quality of its products and services. As a result of our client's longstanding use of the FLIGHTAWARE mark and the eminence of its products and services, the mark has become widely known throughout the United States, is closely identified with FlightAware, and represents substantial, valuable goodwill.

Kalshi is not authorized, permitted or licensed to use such marks. Its unauthorized use misleads consumers and violates our exclusive rights and constitutes trademark infringement under the Lanham Act (*see, e.g.,* 15 U.S.C. §§ 1114 and 1125). We demand that Kalshi immediately cease all use of FLIGHTAWARE or any similar designation.

The above is not an exhaustive statement of all the relevant facts and law. FlightAware expressly reserves all of its legal and equitable rights and remedies, including the right to seek injunctive relief and recover monetary damages.

Sincerely,

Jason L. Peltz

# EXHIBIT 25



416 W. 13<sup>th</sup> St.
New York, NY 10014

**BY EMAIL**

July 17, 2026

Jason L. Peltz
BartlitBeck LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654

Re: Cease and Desist Letter

Mr. Peltz,

I write on behalf of Kalshi Inc. ("Kalshi") with respect to your July 15, 2026 cease and desist letter on behalf of FlightAware, LLC ("FlightAware").

Your letter alleges that Kalshi's use of FlightAware data is in "violation of the license granted related to its AeroAPI Personal Account" and that Kalshi has infringed FlightAware's trademark.

At the outset, Kalshi categorically denies your claims that it has violated any FlightAware user license or is engaging in trademark infringement or any violation of any other law.

Kalshi respects the rights of others and takes seriously any allegation that it may have violated any rights of FlightAware. Kalshi provides this preliminary response as a showing of good faith, without prejudice, to welcome the opportunity to discuss a potential commercial arrangement with FlightAware. Kalshi believes such an arrangement could resolve FlightAware's concerns while establishing a mutually beneficial commercial relationship going forward.

AeroAPI Personal Account License

Notwithstanding your claims to the contrary, Kalshi has not used FlightAware's API or data in violation of the AeroAPI Personal Account License Agreement.  Kalshi has not established or operated any account under FlightAware's AeroAPI Personal Account License for business purposes, and therefore Kalshi could not have breached, and has not breached, the terms of that license.  To the extent Kalshi or any of its personnel maintain a separate, individual account unrelated to Kalshi's official exchange activities, such account has not been used in connection with Kalshi's business, and any suspension of that account is similarly unrelated to the matters addressed in your letter.

FlightAware Mark

Kalshi's use of "FlightAware" is fair use. Nominative fair use exists when (1) a party has a real need to use a third-party's trademark, (2) the trademark is not used more than necessary, and (3) there is no false suggestion of an endorsement of the user by the third party. U.S. law regarding nominative fair use permits



416 W. 13th St.
New York, NY 10014

Kalshi to use trademarks as is reasonably necessary to identify the subject of Kalshi's federally regulated markets and sources to its own customers.

As an initial matter, the notification to the CFTC referenced in your letter[1] concerns markets that are not currently open. To the extent any active Kalshi markets list FlightAware as a primary source, FlightAware is identified as the primary source agency because Kalshi is required to clearly identify the data source that would be used to determine and verify a market's outcome. Kalshi's use of "FlightAware" in the notification to the CFTC is limited to *plain text*, solely to identify that source, and uses no more of FlightAware's marked material than necessary for that purpose. Kalshi does not use any language suggesting that FlightAware sponsors or endorses Kalshi's product and includes prominent disclosure language stating the non-affiliation between FlightAware and Kalshi. Any references to FlightAware on Kalshi's markets are and continue to be descriptive only.

Further, Kalshi's use of "FlightAware" would not infringe FlightAware's trademark rights because it is not likely to cause consumer confusion. No reasonable consumer would believe that a listed source agency is sponsoring, affiliated with, or endorsing Kalshi based solely on Kalshi's reference to that source. Users of a trading platform like Kalshi routinely encounter numerous third-party sources cited as the basis for verifying market outcomes and a reasonable consumer understands that such references identify the underlying data source for a given market, not a business relationship between Kalshi and such source. It follows that there is no actionable claim for trademark infringement on this basis either.

Kalshi takes great strides to respect the rights of others, and, for at least the reasons set forth above, we disagree that it has violated any user license or intellectual property of FlightAware. Kalshi is open to establishing commercial licensing relationships with trademark holders who wish to formalize the use of their marks in connection with our markets. We welcome the opportunity to discuss mutually beneficial terms, including licensing fees and brand guidelines. We welcome your further response and would be happy to discuss this matter on a call.

This letter is being sent without prejudice or waiver, and all rights are hereby reserved.

Sincerely,

Richard Heaslip
General Counsel
Kalshi Inc.
rheaslip@kalshi.com

cc:  Alexander Holtan, Holland Knight LLP
    *Alexander.Holtan@hklaw.com*

---

[1] https://www.cftc.gov/filings/ptc/ptc0714269602.pdf

# EXHIBIT 26

**BartlitBeck** LLP

Jason L. Peltz
Jason.Peltz@BartlitBeck.com

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4438

BartlitBeck.com

July 21, 2026

**By Email**

Richard Heaslip
General Counsel
Kalshi Inc.
rheaslip@kalshi.com

<div align="center">

**Re: Cease & Desist—Violation of Terms of Use and Infringement of Trademarks**

</div>

Dear Mr. Heaslip,

I write in reply to your July 17, 2026 letter, responding to my July 15, 2026 cease and desist letter. Although we appreciate your prompt response to this matter and the additional information you provided, we reiterate that Kalshi's use of FlightAware data, regardless of the manner in which Kalshi accesses it, is in clear violation of the limited license FlightAware grants users under its terms of use, as detailed further below. Kalshi's continued use of the FLIGHTAWARE mark also constitutes trademark infringement.

**Violation of Terms of Use**

First, although Kalshi insists that it has "not established or operated any account under FlightAware's AeroAPI Personal Account License for business purposes," our records indicate that a Kalshi agent has opened a FlightAware AeroAPI Personal Account, and in doing so, consented to the terms of the Personal Use license that must be accepted before the account can be activated. Kalshi therefore has explicitly accepted FlightAware's terms of use, which include a prohibition from "us[ing] AeroAPI and AeroAPI Data in furtherance of any business, whether for profit or otherwise, including by employee(s), representatives, or contractors of any business, corporation, company, startup venture, trust, or other juridical entity." Kalshi's use of FlightAware's data violates these terms.

Second, access to FlightAware's website and the data therein is provided to users subject to the limited license set forth in the "Terms of Use" link provided on FlightAware's homepage. *See* https://www.flightaware.com/about/terms-of-use. This limited license applies to *all* users, regardless of whether they also access the website with an AeroAPI account. Kalshi's use of and reference to FlightAware's data violates at least paragraphs 9, 11, 19 and 20 of these Terms of Use. "When a benefit," like FlightAware's data, "is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com Inc. v. Verio, Inc.*, 356 F.3d 393, 401–02 (2d Cir. 2004). Indeed, courts consistently enforce such terms against "sophisticated parties" like Kalshi. *See Int'l Council of*

**BartlitBeck** LLP

Richard Heaslip
July 21, 2026
Page 2 of 3

*Shopping Ctrs v. Info Quarter, LLC*, 2018 WL 4284279, at *3 (S.D.N.Y. Sept. 7, 2018).  Kalshi, a sophisticated actor whose own website includes very similar terms of use, is bound by the limited license set forth in FlightAware's general terms of use.  And even if Kalshi takes the position that it was previously unaware of FlightAware's terms of use, Kalshi is certainly aware of the terms now and must accordingly comply with them.

**Trademark Infringement**

Your July 17 letter suggests that Kalshi has not operated markets using the FLIGHTAWARE mark.  That is incorrect.  Our investigation uncovered that Kalshi operated a market that opened July 11 and resolved on July 17, 2026—the same day you sent your response—which used the FLIGHTAWARE mark, including stating that the market's "Outcome [is] verified from FlightAware," with "FlightAware" hyperlinked to FlightAware's website.  Undeterred by FlightAware's cease and desist letter, Kalshi opened yet another market using the FLIGHTAWARE mark on July 20, which remains ongoing as of the date of this letter.

Your letter states that Kalshi "does not use any language suggesting that FlightAware sponsors or endorses Kalshi's product."  We disagree.  "Verified from FlightAware" is not a neutral, descriptive reference to a data source.  This language misleadingly implies that FlightAware played a role in confirming the outcome of Kalshi's market.  That language, and the surrounding context, create a likelihood of confusing consumers into believing that FlightAware sponsored, is affiliated with, or endorsed Kalshi's market, and thus constitutes trademark infringement under the Lanham Act.  *See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 161 (2d Cir. 2016).

Your letter also contends that the doctrine of nominative fair use insulates Kalshi from liability.  It does not.  In the Second Circuit, nominative fair use is not an affirmative defense to trademark infringement.  *Id.* at 167–68.  It merely triggers an additional set of considerations in the assessment of whether consumers are likely to be confused.  *See id.* at 167–69.  Here, there is already reason to believe that consumers are, in fact, confused by Kalshi's unauthorized use of the FLIGHTAWARE mark.  By way of example, FlightAware's ongoing investigation has uncovered social media activity in which a consumer publicly attributed to FlightAware a data-supply relationship with Kalshi that does not exist.  *See* https://x.com/mrnuu/status/2077451418320113679?s=46.

Your letter also points to the disclaimer Kalshi added *after* receiving our July 15 cease-and-desist letter.  Courts have repeatedly found that "the use of such disclaimers has been found to constitute express acknowledgment that a party is 'knowingly and intentionally capitalizing on plaintiff's name, reputation and goodwill and that there is indeed a strong likelihood of consumer confusion.'"  *City of New York v. Blue Rage, Inc.*, 435 F. Supp. 3d 472, 490 (E.D.N.Y. 2020) (collecting cases); *see also Chanel, Inc. v. Xiao Feng Ye*, No. CV-06-3372, 2007 WL 2693850, at *3 (E.D.N.Y. Sept. 12, 2007), judgment entered, No. CV-06-3372, 2007 WL 2932773 (E.D.N.Y. Oct. 5, 2007); *Chanel, Inc. v. Schwartz*, No. CV-06-3371, 2007 WL 4180615, at *5

**BartlitBeck** LLP

<div align="right">

Richard Heaslip
July 21, 2026
Page 3 of 3

</div>

(E.D.N.Y. Nov. 19, 2007); *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 493 (E.D. Tex. 2020) ("[A] voluntary disclaimer, as here, is an acknowledgment of likely confusion among consumers."). In any event, the disclaimer does not cure the confusion. It states among other things that FlightAware has not "endorsed" Kalshi and is not "affiliated with" Kalshi, but it does not address the overall misimpression the page, and Kalshi's use of the FLIGHTAWARE mark, creates—e.g., the implication that FlightAware verified the data underlying Kalshi's market. Courts in the Second Circuit have rejected attempts to cure infringement through disclaimers that, like this one, fail to address the actual sources of confusion. *See, e.g.*, *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 448 (S.D.N.Y. 2017).

Kalshi's misuse of the FLIGHTAWARE mark is especially egregious given that Kalshi is expressly using FLIGHTAWARE's mark, service, and reputation for veracity for Kalshi's own commercial gain to sell Kalshi's product—a wager whose result is determined by using FLIGHTAWARE.

We again demand that Kalshi immediately cease all use of FLIGHTAWARE or any similar designation. Kalshi is not authorized, permitted, or licensed to use the mark, and its continued use constitutes trademark infringement under the Lanham Act. *See* 15 U.S.C. §§ 1114, 1125.

The above is not an exhaustive statement of all the relevant facts and law. FlightAware expressly reserves all of its legal and equitable rights and remedies, including the right to seek injunctive relief and recover monetary damages.

Sincerely,

Jason L. Peltz

cc: Jovalin Dedaj (jdedaj@kalshi.com)
   Alexander Holtan (alexander.holtan@hklaw.com)

# EXHIBIT 27



416 W. 13<sup>th</sup> St.
New York, NY 10014

**BY EMAIL**

July 30, 2026

Jason L. Peltz
BartlitBeck LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654

**Re: Cease and Desist Letter**

Mr. Peltz,

I write on behalf of Kalshi Inc. ("Kalshi") in response to your July 21, 2026 letter on behalf of FlightAware, LLC ("FlightAware"), replying to our July 17, 2026 correspondence.

Kalshi continues to dispute your claim that it has violated FlightAware's Terms of Use or the AeroAPI Personal Account License terms, or that its references to the FLIGHTAWARE mark constitute trademark infringement.

Kalshi has concluded its internal investigation into FlightAware's allegations that a Kalshi agent opened a FlightAware AeroAPI Personal Account. Kalshi has identified one employee who, on or about July 14, 2026, opened a free FlightAware account via Google's third-party sign-in using a corporate email account. That employee has confirmed the account was used strictly for travel information and was not created for the purposes of resolving any contracts or settling any related markets. The mere creation of this account, therefore, is not evidence of FlightAware's claim that Kalshi used AeroAPI or AeroAPI Data in furtherance of any exchange-related activity.

Further, Kalshi reiterates, as set forth in its July 17 letter, that its use of "FlightAware" is nominative fair use. That use is limited to plain-text identification of a source agency underlying Kalshi's CFTC-regulated markets, and Kalshi maintains prominent disclosure language and non-affiliation disclaimers on the relevant market pages. No reasonable consumer would infer sponsorship, affiliation, or endorsement from Kalshi's identification of FlightAware as a data source. Accordingly, no viable claim of misappropriation or infringement can be made to restrain Kalshi from identifying a source agency. Neither the Lanham Act nor the Copyright Act grant the ability to prevent derivative financial products that reference public events or entities, nor does the law create a licensable right for the referenced party. To the contrary, the practice of listing derivatives that reference identified third parties (including source agencies) is a well-established feature of every regulated derivatives market.

Rather than to engage in further legal argument, I write principally to reiterate Kalshi's interest in exploring a commercial relationship with FlightAware, as mentioned in our July 17 letter and during our conversation



416 W. 13th St.
New York, NY 10014

with Mr. Holtan on July 16, 2026.  Kalshi has a genuine, continuing interest in resolving this matter through a commercial arrangement with FlightAware and believes that outcome would serve both parties' interests far better than a protracted legal dispute.  To that end, I propose representatives of Kalshi and FlightAware meet to discuss commercial terms at their earliest convenience.  Please advise as to your client's availability, and I will coordinate accordingly on our end.

This letter is sent without prejudice or waiver, and all rights are reserved.  Nothing herein shall be construed as an admission of liability or wrongdoing.  This letter does not constitute an exhaustive statement of all relevant facts or law.

Sincerely,

Jovalin Dedaj

Jovalin Dedaj
Head of Litigation | Kalshi
New York, New York
jdedaj@kalshi.com

cc:    Alexander Holtan, Holland Knight LLP
       *Alexander.Holtan@hklaw.com*